Marc J. Randazza, NV Bar No. 12265
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Defendants
Spencer Cornelia, Cornelia Media LLC,
and Cornelia Education LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WEALTHY INC. and DALE BUCZKOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC,<br><br>Defendants. | Case No. 2:21-cv-01173-JCM-EJY<br><br>**DEFENDANTS' MOTION TO COMPEL** |

Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC (collectively, "Defendants") move to compel Plaintiff Dale Buczkowski to continue his suspended deposition and to provide full responses to Defendants' questions regarding information about Plaintiffs' customers and other information about which his testimony was evasive to a point that would have been comical if it was not such a serious impediment to the administration of justice in this case. Specifically, Defendants seek an order requiring Buczkowski to continue his suspended deposition in the conference room in the Courthouse, so

that a magistrate can be readily available if Plaintiff continues his contumacious deposition conduct.[1]

During this deposition, he should be specifically compelled to provide all information requested from him regarding his customers, even if he chooses to designate such information as attorneys' eyes only. Buczkowski should also be required to pay all costs for the second session of his suspended deposition, as well as all costs and fees incurred in connection with this Motion.

Counsel for the parties met and conferred regarding this dispute in-person during Dale Buczkowski's deposition on August 13, 2022. Despite a sincere effort to resolve or narrow the dispute during the meet-and-confer conference, the parties were unable to resolve or narrow the dispute without court intervention. (*See* Declaration of Marc J. Randazza ["Randazza Decl."], attached as **Exhibit 1**, at ¶ 10.)

## 1.0    INTRODUCTION AND FACTUAL BACKGROUND

This is a defamation and Lanham Act case based on statements that Plaintiffs claim caused them financial losses in the form of fewer customers purchasing Plaintiffs' financial and lifestyle coaching packages.   Plaintiffs claim that some of these coaching packages are sold for a staggering $75,000 or more. (ECF No. 1 at ¶¶ 19, 102.)

Plaintiffs provided an expert report attempting to substantiate these alleged losses, as well as documents that their expert allegedly relied upon. Some of these documents contained information about a large number of Plaintiffs' customers, including their names and billing addresses.[2] Plaintiffs never asserted that identifying information about their customers was so confidential that they could not produce it even under an AEO designation.   Plaintiff Dale Buczkowski only became "concerned" about this information being revealed when it became

---

[1]    Defendants would have filed this motion earlier, but they were unable to obtain the transcript of Buczkowski's deposition until August 26, 2022.

[2]    These documents were produced on an attorneys' eyes only basis, and thus they are not be attached to this Motion. If the Court would like to review these documents in deciding this Motion, Defendants would be happy to file them under seal.

Motion to Compel
2:21-cv-01173-JCM-EJY

apparent that refusing to answer questions or pretending that he could not understand basic principles was to his advantage.

On August 13, 2022, Defendants deposed Plaintiff Dale Buczkowski. He testified during his deposition that some of his highest-paying clients paid him not a mere $75,000 for his coaching, but hundreds of thousands of dollars. (*See* transcript of deposition of Buczkowski, attached as **Exhibit 2**, at 156:25-157:5.) This testimony was consistent with the documents Plaintiffs had produced on an AEO basis. Curious as to what kind of person would spend so much money on Plaintiffs' coaching services, Defendants' counsel asked for further information about these high-paying customers, such as their names, their professions, and where they lived, as well as details on the services he provides. (*Id*. at 134:13-136:10, 137:24-139:13, 149:18-150:1, 154:10-160:21.) However, Plaintiff Dale Buczkowski would answer literally no specifics about any of these services, what they were for, what they contained, to whom they were sold, and he even refused to say which states his clients were in – even when offered "attorneys' eyes only" designations for this information.[3] (*Id*. at 154:10-160:21.)

The only argument Buczkowski provided for refusing to answer these questions was that this information constituted a trade secret and Defendants would use such information to harm him (despite Defendants not having access to such information). (*Id*. at 149:18-150:1, 154:10-160:21.) Without being able to explore these issues or any avenues of questioning that would open up from learning this information, Defendants had no choice but to suspend Buczkowski's deposition. (*Id*. at 154:10-160:21.)

Information regarding Buczkowski's customers is highly relevant to Plaintiffs' claims for damages, as this information would assist a jury in determining the plausibility of Plaintiffs' alleged damages. For example, these customers may never have even heard of Defendants' allegedly defamatory videos or, even if they had, they may not have changed their consuming habits at all in relation to Plaintiffs. Plaintiffs have provided no reasonable basis for withholding

---

[3] If Buczkowski continues to refuse to provide these categories of information, the Court should preclude him from providing any evidence on these issues at trial or summary judgment.

Motion to Compel
2:21-cv-01173-JCM-EJY

such information, as there is no evidence that Defendants or third parties could learn of this information if it is provided on an AEO basis.

The Court should require Buczkowski to complete his deposition in the Courthouse so that the Magistrate Judge will be readily available, allowing Defendants to avoid another unwarranted suspension of questioning that would further delay discovery and prove prejudicial to the administration of justice. While this motion is brought very shortly before the close of discovery, this was the result of Buczkowski's allegedly extremely limited availability, which the undersigned believes was a dilatory tactic to run out the clock on discovery and then refuse to substantively answer questions during his deposition. (Randazza Decl. at ¶ 5.)

## 2.0    LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) provides that the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *Acosta v. Wellfleet Commc'ns, LLC*, No. 2:16-cv-02353-GMN-GWF, 2018 U.S. Dist. LEXIS 16289, \*20 (D. Nev. Feb. 1, 2018). The information need not be admissible to be discoverable. *Id*.

"The party who resists discovery has the burden to show that discovery should not be allowed and has the burden of clarifying, explaining, and supporting its objections." *Interface Grp. – Nevada, Inc. v. Men's Apparel Guild in Ca.*, No. CV-S-04-0330-JCM-GWF, 2005 U.S. Dist. LEXIS 59280, \*13 (D. Nev. Dec. 8, 2005); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

A party taking a deposition may seek an order under Fed. R. Civ. P. 30(a)(3)(B)(i) compelling an answer to a question asked under Fed. R. Civ. P. 30 that the deponent fails to answer.

## 3.0 LEGAL ARGUMENT

Plaintiffs provided two bases for not providing information about their customers: (1) the information constituted a trade secret; and (2) Defendants would abuse such information. These issues are related, and neither has any merit.

Plaintiffs' argument regarding trade secret status does not require an analysis of whether information regarding their customers actually does enjoy such protection. Perhaps it does, but the existence of a stipulated protective order that allows for information to be produced on an AEO basis resolves any concerns about the sensitive nature of such information. *See Monster Cable Prods. v. Di Ve Rsified Rpackaging Corp.*, No. C-10-05673-RS (DMR), 2011 U.S. Dist. LEXIS 90263, *5-6 (N.D. Cal. Aug. 12, 2011) (after finding that defendants' supplier names were protectable trade secrets, finding that such information should be produced on an AEO basis); *Capsugel Belgium NV v. Bright Pharma Caps, Inc.*, No. 3:15-cv-321-PK, 2015 U.S. Dist. LEXIS 130071, *17-18 (D. Or. Sept. 8, 2015) (citing out-of-circuit cases with approval finding that protective orders with AEO designations available provided sufficient protection for trade secret information); *Janix, Inc. v. Wrhel*, 2012 U.S. Dist. LEXIS 65443, *5 (D. Nev. May 8, 2012) (requiring plaintiff to produce trade secret information under AEO designation). The protective order on file in this case allows AEO designations, and thus its existence precludes any argument that information regarding Plaintiffs' customers is so sensitive that it cannot be produced. Indeed, Buczkowski's position during his deposition is contrary to his position earlier in this case, when he produced documents containing some of this information on an AEO basis.

Relatedly, there is no basis for Plaintiffs' alleged concern that Defendants will somehow gain access to customer information provided on an AEO basis. Plaintiffs have already produced a large volume of information under this designation without issue. Plaintiffs cannot articulate any valid concern that Defendants' will provide such information to Defendants or third parties, or that such information will somehow end up in the hands of Defendants or third parties through

Motion to Compel
2:21-cv-01173-JCM-EJY

some other means. Plaintiffs' stated concern is nothing more than mere speculation that cannot excuse them from complying with their discovery obligations.

**4.0    CONCLUSION**

For the foregoing reasons, the Court should enter an order compelling Plaintiff Dale Buczkowski to complete his deposition and to answer questions regarding Plaintiffs' customers. Additionally, the subject matter of the continued deposition should not be limited, as Defendants have other areas to explore in this deposition, but the foundations would not be properly laid without this information.  Plaintiff Dale Buczkowski's deposition transcript shows the nature of the games that he was playing during the deposition, and it is Defendants' firm belief that if he is under the eye of the Magistrate while his play-acting takes place, he will either have a greater appreciation for his duty of candor, or the Magistrate will be in a position to rule on oral motions to compel.

The Court should require that this continuation take place at the Courthouse, and should also award Defendants' costs and attorneys' fees in connection both with this Motion and Buczkowski's second deposition.

Dated: August 30, 2022.

Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, NV Bar No. 12265
Alex J. Shepard, NV Bar No. 13582
Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

Attorneys for Defendants
Spencer Cornelia, Cornelia Media LLC,
and Cornelia Education LLC

Case No. 2:21-cv-01173-JCM-EJY

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 30th, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza
Randazza Legal Group, PLLC