# EXHIBIT 2

Transcript of Buczkowski Deposition

**WEALTHY INC. ET AL. vs SPENCER CORNELIA ET AL.**
**Dale Buczkowski, Vol 1 on 08/13/2022**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

WEALTHY INC. and DALE          )Case No.
BUCZKOWSKI,                    )2:21-cv-01173-JCM-EJY
                               )
              Plaintiffs,      )
                               )
vs.                            )
                               )
SPENCER CORNELIA, CORNELIA     )
MEDIA LLC, and CORNELIA        )
EDUCATION LLC,                 )
                               )
              Defendants.      )
_____ )

DEPOSITION OF DALE BUCZKOWSKI

Taken on Saturday, August 13, 2022

By a Certified Court Reporter

Volume I

At 12:05 p.m.

At 400 South Seventh Street, Third Floor

Las Vegas, Nevada

Reported by:  Carla N. Bywaters, CCR 866

circumstances.

Q    And your attorney tells you what your desire and what you don't?

MR. VOCKRODT:  Objection.  Attorney-client privilege.

BY MR. RANDAZZA:

Q    You don't decide for yourself what you desire and what you don't desire?

A    I can't recall an emotion, a desire or an emotion or a whim from years ago, and I discussed with my attorneys what is the best way to handle the circumstances that I was put in.

Q    Can you list one person that has paid you $75,000 for one-on-one coaching?

A    There are several people that have paid me more than that.  I would say it's a trade secret to say those people's names.  I'm not saying --

Q    I don't care if it's a trade secret.  It's not privileged, and it's not subject to a protective order. Answer the question.

MS. PETERSON:  Well, it is privileged, and under Nevada law, it is trade secret information.

BY MR. RANDAZZA:

Q    You can answer the question.

MR. RANDAZZA:  You can maybe designate it

Confidential, but I get to ask him.

BY MR. RANDAZZA:

Q    **Name one person who spent more than $75,000 with you.**

A    I'd be happy to answer the question if I knew the law better in this area.  I feel like you're asking me to divulge trade secrets, and I don't know that I'm legally required to do that.  I don't believe that I am, and my Counsel has advised me as much under Nevada law that I'm not required to do that.

Q    **When did your counsel advise you of that?**

MR. VOCKRODT:  Attorney-client privilege. Objection.

MR. RANDAZZA:  No, he just broke the privilege.  He just waived it.  Your counsel advised you.  Tell me when that advice was given to you.

MS. PETERSON:  I just said it out loud.

BY MR. RANDAZZA:

Q    **Oh, so that's the only time?**

MR. VOCKRODT:  All right.  We're going to move for a protective order on that particular question.

MR. RANDAZZA:  Okay.

MR. VOCKRODT:  If you have any other questions today, we ought to get to those.

/ / /

BY MR. RANDAZZA:

Q    Yeah.  So you are not willing to put anything on the record of anyone who spent more than 75,000 with you?

A    Several people have spent more money than that.  I'm not going to divulge the names of my top clients.  I don't believe that, given the way that your client has attacked me in the past, I don't trust to share that information.  I don't believe I'm required to share that information under Nevada law, either.

Q    Where did you attend law school?

A    I don't have to be an attorney to have a belief about what the law is.

Q    Do you remember my client saying -- and this is my client, not me -- "Your hair is hideous -- and you don't -- "he does not present himself as what he's trying to be the image he's trying to portray"?

A    Is that --

Q    Yeah, you have the Complaint.  You spent some time reviewing it.  It's in paragraph 102.

A    Paragraph 102.  I see those words here from your client in paragraph 102.

Q    So these statements -- "SC" means my client?

A    That's my understanding, Spencer Cornelia; is that correct?

Q    Sure.  So how much do you think these comments damaged you?

A    I'd have to read the series of them, but I don't think they helped me in any way.

Q    But nobody refused to do business with you because of it, did they?

A    There's a collection of numerous comments that it's impossible for me to discern why somebody made their precise decision to do something whether numerous comments made that were intended to be harmful and defamatory and were clearly untrue or unclear.

Q    So it's untrue that you have like hideous -- "like hideous" hair?

MR. VOCKRODT:  Objection.  Form.

THE WITNESS:  These are ad hominem attacks that it seems that your client has made to support his other untrue attacks.

MR. RANDAZZA:  All right.  Are we on 4?

MR. VOCKRODT:  Can we take a break?  Is this a good time?

MR. RANDAZZA:  Sure.

(Recess taken.)

BY MR. RANDAZZA:

Q    All right, sir.  So we had a little bit of discussion about your clients, and you're not willing to

disclose any of them; is that correct?

MR. VOCKRODT:  Objection.  Form.

THE WITNESS:  What's your question specifically?

BY MR. RANDAZZA:

Q    Disclose your client list.

A    It's trade secret, and I don't believe I'm required to do that.

MR. RANDAZZA:  All right.  Well, we might have to just suspend this and get a ruling on that, which we're not going to get on a Saturday.

MR. VOCKRODT:  Right.

MR. RANDAZZA:  I don't want to drag him back here for another day.

MR. VOCKRODT:  So we should do everything else that you might ask, and then we can separately brief that issue.  If we need to come back and do a deposition upon court order, we can go ahead and do that, but --

MR. RANDAZZA:  Yeah.

MR. VOCKRODT:  I think that's the way to approach this issue.

MR. RANDAZZA:  Yeah, I agree.  I just have a whole spider web of questions that come out of that.

MR. VOCKRODT:  Fair enough.

MR. RANDAZZA:  And, of course, having done

this on a Saturday, we wouldn't get anything on the same day, anyway.

All right.  Alex, why don't you grab those docs there.

BY MR. RANDAZZA:

Q    I'm going to ask a question about your client list that you may maintain the same objection to or not, but do you have different categories of clients?  Do you have some who are one-offs for a few hundred bucks and then others who pay you hundreds of thousands of dollars?

A    I think that's fair.  There's different price points of programs or services that I provide, yes.

Q    Do you have names for those categories or is just sort of, "This guy's a whale; this guy's a minnow"?

MR. VOCKRODT:  Objection.  Form.

THE WITNESS:  I don't think of it in that context at all.

BY MR. RANDAZZA:

Q    Tell me the context you think of it in.

A    You find somebody that -- or somebody finds you that they want to do better.  They think that I'm the right person to help them, and some people -- you can buy $1,000 digital course from me.

Or some people, after they get to know me and

When was it made?

A    The page was created April 25, 2013.  That's the information that you're showing here.  The information you're showing is from April 25th, 2013.

Q    So, if I directed you to look at that website today, would it show newer -- I'm sorry -- that Facebook page today, would it show newer content?

A    I'm not sure.  I told you that.  I never managed the page.

Q    So how does Larson Consulting get clients?

A    Most of that -- any new clients would be word-of-mouth from my other business, I suppose.

Q    And which businesses are you referring to?

A    From Wealthy Inc. or from people that I know from the past that I've done business with or helped with things or some people that I might meet in the future.

Q    But you're not prepared to identify any of those people today?

A    Am I willing to divulge trade secrets to someone who has already disparaged my name and gone out of their way to harm me badly?

Q    Have I ever disparaged you?

A    I don't think it would be wise for me to do that, and I don't think I'm legally required to divulge

trade secrets.

MR. RANDAZZA:  6.

(Exhibit 6 was marked for

identification.)

BY MR. RANDAZZA:

Q    Does that look like a true and correct copy of your Moneyberg.com home page?

A    It says this is about four and a half months old.  It was printed about four and a half months ago, but this is, I believe -- I have no reason to think that this is not what the page looked like at that time.

MR. RANDAZZA:  7.

(Exhibit 7 was marked for

identification.)

BY MR. RANDAZZA:

Q    Okay.  Now, unfortunately, as I look at the printing here, but is that a reasonable facsimile of your YouTube page at least as of the date it was created?

A    It says here this was printed April 4th -- or documented on April 4th, '22, and it's multiple pages. I'm just going to glance at it for one moment.  There's a lot of thumbnails missing, so that might just be a technology glitch of some kind, because there's literally blank pages.  But I'm willing to believe it's

Q    One of the two girls is now deceased, correct, from that evening?

MR. VOCKRODT:  Objection.  Form.

THE WITNESS:  The only information I have along those lines is the accusations being made there, and I don't know if there's a media anything, but yeah, I don't know anything about that girl.  I'm not aware of anything about that.

BY MR. RANDAZZA:

Q    Okay.  All right.  Well, given that we're sort of at an impasse on the client names issue --

MR. VOCKRODT:  And I want to be specific, that we're objecting to the disclosure of specific names or identifying information of --

MR. RANDAZZA:  Sure.

MR. VOCKRODT:  -- clients of his, and that I assume that you had a bunch of questions that related specifically to those issues that couldn't be asked apart from revealing the identity of those people and that's what we're talking about.

BY MR. RANDAZZA:

Q    Why don't we try it this way?  Think of your biggest client right now.

MR. VOCKRODT:  Objection.  Form.

/ / /

BY MR. RANDAZZA:

Q    Can we give him a nickname that wouldn't identify him or her?

A    I'll --

Q    You know what?  Don't, because then I'm going to ask you:  Where do they work?  What do they do?  What is their -- why are they hiring you?  There's a whole lot of questions here that -- I mean, I would be willing to designate this Confidential, AEO even, without other -- you know, unless we overcame the ability to use it.  I would be comfortable doing that, and that way we don't have to come back.

MR. VOCKRODT:  I mean, I can think of a lot of questions that could be asked without disclosing the names and identifying or personally identifying information.  We're big people.  We can understand like what kind of question would reveal that about somebody, but I don't know specifically what you're going to ask.

I would only have a problem with questions that would reveal the identity of these individuals, and we're willing to work around just about anything else about that, but we will move for a protective order if you want to pursue this.

MR. RANDAZZA:  I do.

MR. VOCKRODT:  By the way, we made the

objection in response to your interrogatories and

document requests previously, so we have made that

objection before.  We're going to continue making that

objection.  If you would like to move to compel, we can

work with that.

        MR. RANDAZZA:  So an AEO designation would not

resolve it for you?

        MR. VOCKRODT:  No.  Not on that one specific

issue of the identified --

        MR. RANDAZZA:  Right.

        MR. VOCKRODT:  -- identities of the clients.

BY MR. RANDAZZA:

    **Q    What line of business is your largest client**

**in?**

    A    I actually --

        MR. VOCKRODT:  I'm going to object to that

question, just form.

        THE WITNESS:  I have to think of a cluster of

a few people, because I don't have a rank order in my

head of --

BY MR. RANDAZZA:

    **Q    Okay.**

    A    So I have to think of a cluster of a few

people, so.

    **Q    Your top five clients, how much do they pay**

you monthly each?

A    That's not what the business's revenue model looks like.  It's not a monthly fee or something.  So over time, cumulatively, some of them have paid over a quarter million dollars, $300,000ish.

Q    Each?

A    Uh-huh.

Q    So let's just call them A, B, C, D, and E, your top five.  Can we do that?

A    I'll go along to this point.  On the record or off, my main objection is simply I'm not going to say names to someone who is going to use them to harass my clients or further cause harm to my business.  And I'm not going to say personal identifiers of specifically anything that could go back to that person's name or cause them harm in their business or in their career.

MR. RANDAZZA:  Sure.  I agree --

(Simultaneous speakers.)

MR. RANDAZZA:  -- where even Mr. Cornelia wouldn't get that.

MR. VOCKRODT:  It's a trade secret issue, and we're pursuing it as that.

BY MR. RANDAZZA:

Q    But Mr. A, what is their profession?

A    Off the top of my head, there's a few

people -- and I'm not going to be able to keep track of A, B, C, D, E.  But if we talk as a generality of my top five or 10 clients, then a couple of those people are in technology-related professions that they are employees in large tech companies.  Several are small business owners of a various kind.

Q    So just think of one of these small business owners, what kind of business do they own?

A    I'm trying to be cooperative, but as I said, the two things that I object to that I believe are trade secrets that I don't have to answer, I'm not going to say specific things about -- that would identify a client.

Q    What kind of business?

A    Oh, that's fine, but then the next 17 questions after that, then we start to draw in the Venn diagrams, "Oh, that person works at this company" or "That person is from this place and runs this type of business."  You know, that doesn't -- I'm not going to identify specific clients.

Q    Okay.  So you won't even tell me what kind of business they operate in?

MR. VOCKRODT:  Objection.  Form.

THE WITNESS:  I did tell you that some of them are -- several are small business owners.  Two or more

work in high-paid, technology-related jobs.

BY MR. RANDAZZA:

Q    In Illinois?

THE WITNESS:  I think you guys are going to have to get a protective order that -- I can imagine the next number of comments trying to bing, bing, bing, bing.

MR. VOCKRODT:  Yeah.

THE WITNESS:  These are trade secrets that could be harmful to my clients.

BY MR. RANDAZZA:

Q    So the state in which your client is is not something you're willing to reveal in this deposition?

A    You're not being reasonable at the moment.

MR. VOCKRODT: Objection.  Form.

BY MR. RANDAZZA:

Q    So you won't even disclose what state they're in?

A    Numerous states, different people from different states.

Q    Are they all in the United States?

A    No.

Q    How many are in California?

MR. VOCKRODT:  Objection.  Form.

THE WITNESS:  I don't know.

BY MR. RANDAZZA:

Q    Are any of them in California?

A    I'd have to research that.

MR. RANDAZZA:  All right.  Well, I think if we're not even going to be able to find out what state somebody's in, we'll have to have a motion to compel and continue the deposition after we've dealt with that.

MR. VOCKRODT:  Okay.

MR. RANDAZZA:  So why don't we all take the rest of the day off.

MS. PETERSON:  Do you have anything else that you can or are you representing that everything --

MR. RANDAZZA:  Everything is going to splinter out from that.

MS. PETERSON:  Okay.

MR. RANDAZZA:  You know, I'm not hiding the ball here.  I think he's lying about how much he's lost.  I can't explore that without exploring who his clients are, what they pay him for, so I'm at a dead end here.  So maybe it's clever; maybe it's not.  We'll see how the magistrate will rule.  All right?

MR. VOCKRODT:  All right.  So we're done with questions?

MR. RANDAZZA:  I'll ask one more.

/ / /

MR. VOCKRODT:  Yeah, and we can work around those issues on --

MR. RANDAZZA:  We don't need to disclose her name to the public that I can think of right now.

MR. VOCKRODT:  Okay.

MR. RANDAZZA:  If I need to, we'll argue about that later.

MR. VOCKRODT:  Okay.  And then also we'd just like to reserve our right under Rule 30(e) -- I think it is -- to correct anything in the transcript once it's available within 30 days.

MR. RANDAZZA:  Sounds fair.

(Deposition was recessed at 4:45 p.m.)