UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WEALTHY INC. and DALE BUCZKOWSKI,

Plaintiffs,

v.

SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC,

Defendants.

Case No. 2:21-cv-01173-JCM-EJY

**ORDER**

Pending before the Court is Defendants' Motion to Compel, the Response, and Reply (ECF Nos. 45, 54, and 58), as well as Defendants' Motion for Extension of Discovery, the Opposition, and Reply (ECF Nos. 44, 50, and 55).

**I.    Background**

  A.    <u>The Motion to Compel</u>.

The Motion to Compel arises from Plaintiff Buczkowski's deposition at which Defendants sought information about Plaintiffs' customers beyond names and billing addresses previously produced under the Protective Order as "Attorneys Eyes Only" information.[1]  During the deposition, and by way of example only, Defendants asked Buczkowski to name a client who paid $75,000 for one-on-one coaching.  ECF No. 45-2 at 3.  Buczkowski responded: "There are several people that have paid me more than that.  I would say it's a trade secret to say those people's names."[2]  This response led to the following exchange:

> **Q:**    I don't care if it's a trade secret.  It's not privileged, and its not subject to a protective order.  Answer the question.
>
> Objection by Plaintiff's Counsel:  Well, it is privileged, and under Nevada law, it is trade secret information.
>
> **Q:**    You can answer the question.
> You can maybe designate it confidential, but I get to ask him.

---

[1]    Going forward, Plaintiff Dale Buczkowski is referred to as "Buczkowski" while Buczkowski and Wealthy, Inc. are referred to as "Plaintiffs."

[2]    It is unclear to the Court if the name of such client would be one already disclosed.

1

1

**Q;**   Name one person who spent more than $75,000 with you.

2

**A:**   I'd be happy to answer the question if I knew the law better in this area.  I feel like
you're asking me to divulge trade secrets, and I don't know that I'm legally required
to do that.  I don't believe that I am, and my Counsel has advised me as much under
Nevada law that I'm not required to do that.

3

4

5  *Id*. at 4.   After this exchange, and with confirmation that Buczkowski would not provide the

6  information requested, Counsel for Plaintiffs stated that he would seek a protective order regarding

7  the above question, but that Defendants should ask any other questions they had.  *Id*. at 4, 7.[3]

8  Defendants then asked questions about an allegation pertaining to Buczkowski's hair and how much

9  those comments damaged Plaintiffs—responses were provided.  *Id*. at 5-6.   Defendants also asked

10  questions regarding: (i) how Plaintiffs categorized their clients; (ii) what would be reflected on a

11  particular Facebook page; (3) the Moneyberg.com home page; (iv) Plaintiffs' YouTube page; and

12  (v) a deceased woman, all of which were answered.  *Id*. at 8-10.   Defendants then returned to

13  questions regarding Plaintiffs' client information including names, what such individuals do for a

14  living, and why these clients hired Plaintiffs.  *Id*. at 12.   Defendants also stated they had "a whole

15  lot of questions" they were willing to designate as Attorneys Eyes Only.  *Id*.

16       More exchanges took place leading Defendants to ask Buczkowski to identify information

17  about Plaintiffs' top five clients, labeling them only as "A" through "E."   When asked for Mr. A's

18  profession, Buczkowski said he "was not going to be able to keep track of A, B, C, D, E," but in

19  general of his "top five or 10 clients, … a couple … are in technology related professions … they

20  are employees in large tech companies.  Some are small business owners of various kinds."  *Id*. at

21  14-15.   When asked what type of small business Plaintiffs' clients own, Buczkowski refused to

22  answer claiming he would not say "specific things … that would identify a client."  *Id*. at 15.

23  Buczkowski also would not identify what kind of small business any client was in.  *Id*.

24       When Defendants asked if Plaintiffs have a client in Illinois, Buczkowski responded: "I think

25  you guys are going to have to get a protective order that – I can imagine the next number of comments

26  trying to bing, bing, bing, bing."  *Id*. at 16.   Plaintiffs' counsel then said "Yeah," and Buczkowski

27  said "These are trade secrets that could be harmful to my clients."   Defendants asked if Plaintiffs

28

---

[3]       While it may be obvious, the Court notes Plaintiffs did not seek a protective order.

1   would disclose what state someone was in, to which Buczkowski responded Defendants "were not

2   being reasonable at the moment," but then shared that Plaintiffs' clients are in numerous states.  *Id*.

3   Buczkowski could not answer if he had any clients in California, after which Defendants decided to

4   suspend the deposition and stated they would file a motion to compel.  *Id*. at 17.  Defendants' counsel

5   explained to Plaintiffs' counsel that he did not believe Buczkowski was being candid about his

6   damages and that Defendants could not test that "without exploring who … [Plaintiffs'] clients are

7   [and] what they pay … for.  *Id*. at 17.

8          In their Motion, Defendants explain they must be able to test Plaintiffs' damages claim by

9   finding out if Plaintiffs' customers have ever heard of Defendants' allegedly defamatory videos.

10  ECF No. 45 at 3.  Defendants further argue that the Attorneys Eyes Only designation available under

11  the Protective Order demonstrates Plaintiffs have no basis for concern that any third party or the

12  Defendants themselves would learn of the information provided.  *Id*. at 4.  Defendants cite to

13  numerous cases holding that trade secret information is properly produced when given appropriate

14  protections by a court, such as an Attorneys Eyes Only designation.  *Id*. at 5.  Defendants state, that

15  in this case, Plaintiffs have previously produced a large volume of documents pursuant to this

16  designation without issue.  *Id*.

17         Plaintiffs argue that its objections at deposition are a reiteration of objections made to

18  document requests regarding client names.  ECF No. 54 at 3 *citing* Ex. 2.[4]  Plaintiffs further rely on

19  NRS 49.325, which Plaintiffs reiterate creates a bar to production of privileged information.  In

20  addition, Plaintiffs contend that the Protective Order in place "cannot adequately protect Plaintiffs'

21  significant confidentiality and proprietary business interests."  *Id*. at 3 *citing* ECF No. 54-2 at 6.

22  Plaintiffs argue that their "client lists and client identities are trade secrets because" Buczkowski has

23  "gone to great lengths to maintain the secrecy of that information which is not readily available to

24  the public or to competitors."  *Id*. at 5.  Plaintiffs state that because Defendants did not object to the

25  non-disclosure of client names when Plaintiffs responded to Defendants' document requests,

26  Defendants were precluded from seeking this information at deposition.  *Id*. at 5-6.  Plaintiffs also

27

28  _____

    [4]      Exhibit 2, or ECF No. 54-2, is Plaintiffs' Responses to Defendants' Third Set of Requests for Production of
    Documents.

claim Defendants' Motion is untimely and their request is "unreasonable" because Defendants seek discovery on "an unlimited subject matter."  *Id*. at 6-7.

In their Reply, Defendants argue Plaintiffs' boilerplate objection asserting trade secret was ineffective and the Nevada trade secret privilege is inapplicable.  ECF No. 58 at 3.  Defendants point to NRS 49.325(b) which states that "[w]hen disclosure is directed, the judge shall take such protective measure as the interest of the holder of the privilege and of the other parties and the furtherance of justice may require."  Defendants reiterate that Plaintiffs produced other information for Attorneys Eyes Only "that contained names and other information about individual customers" without objection.  *Id*.  Defendants argue their Motion is timely and that their request is narrowly tailored, but that answers to one question may lead to others and Defendants do not want Plaintiffs to be able to refuse to answer questions related to the client information sought.

B.    The Motion for Extension of Discovery.

Defendants ask the Court for additional time to conduct discovery, including the deposition of John Mulvehill who is alleged to live in Brazil.  Mr. Mulvehill is said to be unavailable before the close of discovery, but willing to sit for deposition some time later.  Defendants further seek to complete Buczkowski's deposition and respond to written discovery requests.  Defendants point to information regarding Buczkowski's state of residence as of particular interest because it will impact jurisdiction if Plaintiffs' Lanham Act claim is dismissed on summary judgment.  Defendants seek to extend the discovery period to October 31, 2022, the dispositive motion cut off to November 30, 2022, and the joint pretrial order due date to December 30, 2022.

After taking issue with a few assertions regarding the status of discovery, Plaintiffs mainly argue that Defendants have not met the good cause standard for the extension they seek.  Plaintiffs state Defendants have not been diligent.  Plaintiffs contend that Defendants have been aware of Mr. Mulvehill and the role he plays in this case since Plaintiffs filed their Complaint in June 2021, but waited until August 23, 2022 to notice his deposition for August 30, 2022.  Plaintiffs offer that the delay in seeking Mr. Mulvehill's deposition is especially concerning because "Defendant Cornelia published a YouTube video interview of Mr. Mulvehill in December 2021 while discovery was

1    ongoing …" ECF No. 50 at 6.  Mr. Mulvehill also recently appeared in this matter for purposes of

2    filing a Motion to Quash.

3           With respect to questions regarding Buczkowski's place of residence, Plaintiffs complain

4    that Defendants waited until three weeks before the close of discovery to investigate this issue.

5    Plaintiffs state that Buczkowski's residence in Incline Village, Nevada, was asserted in their June

6    2021 Complaint.  Plaintiffs argue Defendants knew of Buczkowski's alleged Chicago residence as

7    early as December 2020.

8           With respect to Defendants' request to extend discovery to continue Buczkowski's

9    deposition, Plaintiffs return to the theme that they asserted trade secret protection for client identities

10   when responding to Defendants' written discovery in March 2022.  Plaintiffs contend Defendants'

11   failure to raise the issue of Plaintiffs' refusal to provide client information then, and Defendants'

12   choice to attack the quality of the information provided through an expert, belies good cause.[5]

13          On Reply, Defendants argue they seek a short extension of time to flesh out discrete issues.

14   ECF No. 55.  Defendants state they did not know "Plaintiffs considered *all information* about their

15   clients to be so confidential that they would not provide it on even an attorneys-eye-only basis" until

16   they took Buczkowski's deposition.  *Id*. at 2 (emphasis in original).  Defendants contend that

17   Buczkowski "won't say what he gets paid for, nor who pays him, yet he wants the Defendants to

18   pay him for loss." *Id*.  Defendants distinguish information regarding Plaintiffs' social media

19   analytics from client information. *Id*.; *see also* ECF No. 54 at 3 (Plaintiffs' Opposition to the Motion

20   to Compel) referring the Court ECF No. 54-2 (in which Defendants sought YouTube Analytics,

21   conversion data, and website analytics reports).

22          Defendants also contend "there can be no greater issue" than determining Buczkowski's

23   credibility.  ECF No. 55 at 3.  Defendants "took it on faith" that Buczkowski lived in Nevada as

24   alleged in the Complaint, and it was only when Defendants investigated this allegation that they

25   learned this may not be true. *Id*. at 4.  Defendants do not say why they waited so long to do the

26   investigation they did.  However, Defendants point to a declaration offered by Plaintiffs in which

27

28   _____

     [5]     Plaintiffs also responds to allegations and deposition testimony regarding Buczkowski's weight and body fat
     index that the Court does not summarize.

Buczkowski says: (i) "Having spent much time and paid taxes multiple years in Nevada, I thought it proper to identify Nevada as my state of residence in the Complaint"; (ii) "I have done numerous real estate transactions with Mr. Huerta and have the right to use various properties controlled by Mr. Huerta in Nevada, including the 275 Glen Way, Incline Village, NV 89451"; (iii) "I regularly receive mail at the Incline Village address as indicated by the below tax refund check, bank statements, and the package received at this address, 275 Glen Way, Incline Village, NV"; and (iv) "Mr. Huerta will confirm that I have access to 275 Glen Way, Incline Village, NV 89451, and regularly use this and other Nevada addresses." ECF No. 50-9 ¶¶ 24, 25, 26. As Defendants note, Buczkowski's declaration does not state that his legal residence is Nevada.

With respect to the Mr. Mulvehill, Defendants reiterate his importance to this dispute and that he lives outside the U.S. thereby creating "distinct … challenges." ECF No. 55 at 3. Defendants place the delay for seeking Mulvehill's deposition on Plaintiffs because Plaintiffs waited to file a separate case against Mulvehill until the discovery period in the instant matter was almost closed. *Id*. Defendants say "[n]ow that Mulvehill has been sued by Plaintiffs, … [he] has been forced into this litigation and is willing and able to give voluntary testimony in this case." *Id*.

## II.   Discussion

### A.   The Motion to Compel.

Fed. R. Civ. P. 26(b)(1) defines the scope of permissible discovery as including relevant matters that are proportional to the needs of the case. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). To determine proportionality, courts examine "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C) further requires courts to limit the frequency or extent of discovery if the court determines that the discovery sought is (1) "unreasonably cumulative or

duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; and (3), as particularly pertinent to the discovery requests propounded by Plaintiff, "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." When deciding whether to restrict discovery under Fed. R. Civ. P. 26(b)(2)(C), courts "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 602 (D. Nev. 2016) (quoting *Smith v. Steinkamp*, 2002 WL 1364161, at *6 (S.D. Ind. May 22, 2002)).

Under Rule 26(c)(1), the Court may, for good cause, issue an order to protect a party from "annoyance, embarrassment, oppression, or undue expense or burden, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." "[T]he party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Aut. Ins. Co*., 331 F.3d 1122, 1130 (9th Cir. 2003) (internal citation omitted). "Board allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test." *Id. quoting Beckman Indus. Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (further citations omitted). "Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of harm." *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005) (citation omitted); *see also Beckman Indus.*, 966 F.2d at 476 (citation omitted). Ultimately, this Court is vested with broad discretion to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Here, Plaintiffs claim a Nevada Revised Statute precludes the disclosure of client names and other identifying information that might lead to client identities because the information is protected as trade secrets and cannot be adequately protected by the Attorneys Eyes Only provision in the Protective Order entered in this case. To qualify as a trade secret under Nevada law a customer list

must constitute information that "[d]erives independent economic value ... from not being generally known" or ascertainable to the public.  NRS § 600A.030(5)(A).  Next, this information—customer identities—must be subject to reasonable efforts to maintain their secrecy.  NRS § 600A.030(5)(b).  Some courts hold that the most important consideration is whether the information is readily accessible to a reasonably diligent competitor.  Where the plaintiff's customers are known to competitors as potential customers, the customer's list is not a trade secret.  *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F.Supp. 1301, 1307 (D. Nev. 1982) *citing Mathews Paint Co. v. Seaside Paint & Lacquer Co.*, 306 P.2d 113, 116 (Cal. App. 2d 1957)

While Plaintiffs assert the identities of their customers is a trade secret, Buczkowski's Declaration, offered in support of the Opposition to the Motion for Extension of Discovery (ECF No. 50-9), is silent with respect to trade secrets and steps taken to maintain the secrecy of client identities.  Of course, the Court recognizes this Declaration was submitted for a purpose other than responding to the Motion to Compel.  However, no declaration was offered by Plaintiffs in response to the Defendants' request to compel; thus, the Court reviewed the one Declaration before it to determine if something contained therein might support the trade secret moniker Plaintiffs assert.

Further, looking to the three arguments made in Plaintiffs' Opposition, two are not compelling, and one is poorly argued.  First, Plaintiffs say trade secrets are "privileged."  A review of the law shows there is no "privilege" that provides an absolute protection from disclosure of trade secrets.  While NRS 49.325(a) refers to a person claiming a privilege to protect a trade secret he or she owns, NRS 49.325(b) makes clear that disclosure may be ordered so long as protective measures to protect the trade secret are taken.

Here, a Protective Order is in place (ECF No. 30) and Plaintiffs' bald contention that the Order, which includes an Attorneys Eyes Only provision, is insufficient to protect such trade secrets, is itself insufficient to overcome clear case law holding to the contrary.  *Michael Kors (USA), Inc. et al. v. Costco Wholesale Corp.*, 13 Civ. 4832 (LTS)(JCF), ECF No. 24 (S.D.N.Y. April 18, 2014) ("[Supplier information shall be treated as Highly Confidential under the Protective Order and, in addition, shall not be disclosed to in-house counsel."); *Janix, Inc. v. Wrhel*, Case No. 2:11–cv–01502–LDG–PAL , 2012 U.S. Dist. LEXIS 65443, at \*5 (D. Nev May 8, 2012); *Monster Cable*

*Prods., Inc. v. Di Ve Rsified Repackaging Corp.*, Case No. C-10-05673-RS (DMR), 2011 U.S. Dist. LEXIS 90263, at \*6 (N.D. Cal. Aug. 12, 2011) ("the supplier names should be protected through an appropriate protective order that … limits their disclosure to outside counsels' attorneys' eyes only"); *Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780, 789 (S.D. Tex. 2010) (limiting access to outside counsel only); *Kia Motors Am., Inc. v. Autoworks Distrib.*, Case No. 06-156 (DWF/JJG), 2007 U.S. Dist. LEXIS 19366, at \*6 (D. Minn. Mar. 19, 2007) (restricting access to named outside counsel and admonishing such counsel that sanctions would issue should "those sources suddenly cease doing business with Defendants or substantially change the manner in which they do business with Defendants"); *Omega S.A. v. Costco Wholesale Corp.*, Case No. CV 04-5443-TJH(RCx), 2005 U.S. Dist. LEXIS 47014, at \*6 (C.D. Cal. June 8, 2005) (limiting access to outside counsel only).  Hence, even assuming, but not deciding, that Plaintiffs' customer lists are trade secrets, the Court finds defense counsel's offer that disclosure of client identification information be protected by the Attorneys Eyes Only provision in the Protective Order is sufficient on its face to protect such information from harmful disclosure to Defendants themselves or outside this case.

Second, Plaintiffs contend the Motion to Compel was "unduly delayed."  ECF No. 54 at 5. The Motion arises from Buczkowski's deposition taken on August 13, 2022, and was filed on August 30, 2022.  This timing does not support undue delay.  While the responses to Defendants' Third Set of Document Requests, to which Plaintiffs repeatedly point, were made on March 28, 2022, these Requests are not at issue in the present Motion.  Moreover, the Third Set of Document Requests ask Plaintiffs for YouTube analytics, conversion data, profit and loss statements, and moneyberg.com analytics.  ECF No. 54-2 at 5-6.  Plaintiffs objected to the analytics and conversion data requests asserting "privilege" and "trade secrets."  *Id*.  The Court's review of these requests shows that none sought customer identities.  *Id*.  And, the objections do not indicate that Buczkowski would ignore NRS 49.325(b), requiring disclosure of trade secrets when protection for such information was expressly offered.

Third and finally, the Court considers Plaintiffs' assertion that Defendants' request is unreasonable.  While Plaintiffs mention Rule 26 in this section of their Opposition, they discuss

neither relevance nor proportionality in any detail.[6]   Nonetheless, the Court notes that it is Defendants who seek to compel information and, therefore, have the burden to demonstrate "why [Plaintiffs'] objection is not justified." *Volvo Construction Equipment Rents, Inc. v. NRL Rentals, LLC*, Case No. 2:09-cv-00032-JCM-LRL, 2010 WL 11492734, at *1 (D. Nev. Apr. 22, 2010).  Said slightly differently, "[g]enerally, the party seeking to compel discovery has the initial burden of establishing that a request satisfies the relevancy [and proportionality] requirements" of the federal rules. *Krause v. Nevada Mutual Ins. Co.*, Case No. 2:12-cv-00342-JCM-CWH, 2014 WL 117572, at *3 (D. Nev. Jan. 10, 2014).

Looking at the test applicable to proportionality, the Court reviewed Plaintiffs' Complaint. ECF No. 1.  The Complaint shows the allegations against Defendants, and John Mulvehill against whom Plaintiffs filed a separate complaint, are personal, sensational, and serious.  Plaintiffs assert claims for Unfair Competition and False Advertising Under 15 U.S.C. § 1125 et seq. (the Lanham Act), Defamation, Intentional Infliction of Emotional Distress, and Business Disparagement. *Id*. Plaintiffs seek $2,000,000 in compensatory, consequential, and/or incidental damages, punitive damages, and permanent injunctive relief. *Id*.  While there are aspects of this case, including parts of Buczkowski's deposition (such as those related to his body fat percentage) the Court finds lacks a modicum of seriousness, the overall issues at stake in this action are without doubt important to the litigating parties.  The damages sought are substantial.  Exploring the basis for Plaintiffs' damages claim is reasonable, relevant, and proportionate.

Plaintiffs produced "a full list of customers, identified by … identification numbers rather than names" on March 28, 2022.  ECF No. 54 at 3.  Defendants also state names and addresses of clients have been produced.  Thus, it is unclear whether Defendants seek additional customer names or to test names already in their possession against the use or cessation of use of Plaintiffs' services and, for those customers who stopped using Plaintiffs' services, when and why they did so.  It is also unclear to the Court whether Plaintiffs have produced any evidence (i) regarding an alleged decline

---

[6]     Plaintiffs mention the word "proportionality" once in a single sentence identifying the general standard applicable to all discovery.  ECF No. 54 at 4:5.  No lack of proportionality is offered by Plaintiffs.  The same is true as to relevance.  *Id*.  Plaintiffs also make no argument in response to Defendants contention that Plaintiffs' customers may have not heard of Defendants' videos or, if they have, changed their consumer habits with respect to Plaintiffs' products.

in Plaintiffs' business since events at issue in this case occurred, or (ii) tying a decline in business to Defendants' conduct.  It is unclear to the Court if documents provided include information regarding the services purchased or the price paid for services by Plaintiffs' customers.   Nonetheless, Defendants want to test Plaintiffs' claim for damages and seek customer names tied to occupations and locations, as well as to "explore" unidentified "other areas" for which the client information is allegedly the foundation.  ECF No. 45 at 6.

On balance, and under the totality of the circumstances, the Court finds allowing deposition questions regarding a sample of Plaintiffs' customers is appropriate for purposes of testing Plaintiffs' damages claims.  What a sample of customers do for a living, what services they purchased, whether they continue as customers, if not why not, and other questions reasonably calculated to develop information necessary for Defendants to assess the claimed damages will be allowed.  However, a wholesale and indiscriminate inquiry, including unidentified areas of questioning, is unjustified. Defendants have had substantial time to investigate damages through various means, which they may or may not have adequately done.  What Defendants may now do at deposition is test what they learned from production of documents and other discovery means through depositions.  The specifics of what Defendants may do is detailed below in the Court's Order.

B.    Defendants' Motion for Extension of Discovery.

Based on the above, Defendants' request for an extension to the discovery period is granted in part.  Defendants may continue Buczkowski's deposition for purposes of exploring Plaintiffs' claimed damages.  Defendants may also ask questions pertaining to Buczkowski's legal residence in Nevada.  Without regard to when information was learned, testing Buczkowski's Nevada legal residency is a relevant and proportionate inquiry.  The Court will not allow additional document requests or interrogatories to be propounded for any purpose including, but not limited to, Buczkowski's physical appearance or health.

With respect Mr. Mulvehill, the Court requires the parties to meet and confer regarding scheduling his deposition so that Mr. Mulvehill appears only once (even if for more than seven hours) at which time all subject matters alleged in the two cases in which Mr. Mulvehill's conduct is relevant may be covered.  Taking Mr. Mulvehill's deposition once supports the "just, speedy, and

inexpensive determination" of the pending actions.  Fed. R. Civ. P. 1.  If, after the meet and confer regarding Mr. Mulvehill's deposition, the parties cannot come to agreement, the parties may raise the issue of Mr. Mulvehill's deposition in a status report.

**III.    Order**

IT IS HEREBY ORDERED that Defendants' Motion for Extension of Discovery (ECF No. 44) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants' Motion to Compel (ECF No. 45) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the discovery period is extended to **October 31, 2022** for purposes of continuing and concluding the deposition of Dale Buczkowski.  No written discovery may be propounded during this extended discovery period.  No third party discovery is to occur during this extended discovery period.

IT IS FURTHER ORDERED that the continued deposition of Dale Buczkowski **must** take place no later than **October 31, 2022**.

IT IS FURTHER ORDERED that Mr. Buczkowski **must** identify no less than four separate dates between the date of this Order and October 31st on which he is available to continue his deposition.  Mr. Buczkowski must provide those dates to his counsel no later than **October 10, 2022**, and counsel must provide those dates to Defendants' counsel no later than **October 11, 2022**. Defense counsel must select a date and provide an amended notice of deposition for Mr. Buczkowski no later than **October 13, 2022**.

IT IS FURTHER ORDERED that the continued deposition of Mr. Buczkowski must take place in Clark County, Nevada, commence no later than 10 a.m. and conclude no later than 4:00 p.m. with no more than two fifteen minute breaks and one 30 minute meal break thereby giving Defendants five additional hours of deposition time.  If additional breaks are agreed upon, the deposition may conclude after 4 p.m.

IT IS FURTHER ORDERED that Defendants' deposition inquiries must be reasonably calculated to test issues relating to the damages claimed by Plaintiffs and Mr. Buczkowski's legal residence.

IT IS FURTHER ORDERED that Defendants may ask questions regarding a sample of Plaintiffs' clients that includes, but is not necessarily limited to tying names to occupations and services purchased, cessation of services and other loss of business. Questions and responses regarding Plaintiffs' clients are designated Attorneys Eyes Only under the Protective Order.  Mr. Buczkowski must answer questions, even if the information sought is believed to be protected by NRS 49.325.

IT IS FURTHER ORDERED that because the Court does not know the size of Plaintiffs' customer/client base, the Court requires the parties to meet and confer regarding the size of the sample about whom questions may be asked.  The Court finds questions regarding as many as 10 clients, but no more than 20 clients should be sufficient for Defendants' purposes.  Defendants are entitled to select the clients about whom questions are asked.

The Court advises and warns that this the continued deposition is not a wholesale reopening of Mr. Buczkowski's deposition as Defendants had an opportunity to ask question on August 13, 2022.

IT IS FURTHER ORDERED that the parties are to meet and confer no later than **October 14, 2022** regarding the deposition of Mr. Mulvehill.  The parties are to discuss the possibility and preference to depose Mr. Mulvehill once, even if for more than seven hours on consecutive days, for purposes of obtaining information and evidence relevant and proportional to the needs of this matter and the claims raised against Mr. Mulvehill in the separate case pending before the Court.  If the parties are unable to agree on the parameters for taking Mr. Mulvehill's deposition, the parties **must** bring the issue back before the Court without delay through the filing of a status report regarding the same.

IT IS FURTHER ORDERED that the dispositive motion cut off is extended to **November 30, 2022**.  The proposed joint pretrial order due date shall be **December 30, 2022** unless dispositive motions are pending on that date.  If dispositive motions are pending on December 30, 2022, the due date for the proposed joint pretrial order is automatically vacated and extended to thirty days after the Court issues its ruling on such motions.

Dated this 4th day of October, 2022.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE