Marc J. Randazza, NV Bar No. 12265
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, NV 89117
Telephone: 702-420-2001
Facsimile: 305-437-7662
ecf@randazza.com

Attorneys for Defendants
Spencer Cornelia, Cornelia Media LLC,
and Cornelia Education LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WEALTHY INC., and DALE BUCZKOWSKI, | Case No. 2:21-cv-01173-JCM-EJY |
| Plaintiffs, | |
| v. | **MOTION FOR LEAVE TO CONDUCT ADDITIONAL DISCOVERY PURSUANT TO FED. R. CIV. P. 56(d)** |
| SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC, | |
| Defendants. | |

Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC ("Defendants") respectfully move this Court for leave to conduct additional discovery pursuant to Fed. R. Civ. P. 56(d) prior to responding to Plaintiffs' Motion for Partial Summary Judgment (ECF No. 60). The discovery sought is limited and targeted and is largely necessary because Plaintiff Dale Buczkowski was so utterly uncooperative with "selective amnesia" as well as apparent perjury during the first part of his deposition, that it is his fault and his fault alone that additional queries are required.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0     Introduction**

Plaintiffs Wealthy, Inc. ("Wealthy") and Dale Buczkowski ("Buczkowski") (together, "Plaintiffs") would prefer that this Court enter summary judgment in their favor on their claim of defamation without allowing any real interrogation into a number of issues, including (1) Buczkowski's public figure status (voluntary or involuntary), (2) whether Plaintiffs suffered any damages as a result of the alleged defamation, and (3) further inquiry into areas where Buczkowski appears to have committed perjury.

In his deposition, Buczkowski provided evasive and non-responsive answers to nearly every question to subvert the truth-finding process of discovery. Now, Plaintiffs attempt to use this artificial dearth of contradictory information to score an unearned victory – summary judgment on a core issue of his Complaint. For the reasons stated in this Motion, Defendants ask this Court to summarily deny Plaintiffs' Motion for Partial Summary Judgment or otherwise order that additional discovery be granted before these issues can be adjudicated.

**2.0     Factual Background and Procedural History**

This case concerns Plaintiffs' claims against Defendants related to statements made by a third party, John Mulvehill, in two videos, as well as obvious statements of opinion by Cornelia in a third video. Plaintiffs' Complaint includes a claim for defamation and pleads that Buczkowski is neither a public figure nor a limited-purpose public figure. On September 30, 2022, Plaintiffs filed their Motion for Partial Summary Judgment, asking the Court to find that Buczkowski is a private figure, that Defendants are liable for defamation, and that Plaintiffs suffered damages because of Defendants' alleged defamation.

Prior to filing cross-motions for summary judgment, the Parties conducted discovery into the facts underlying Plaintiffs' Complaint. Although Defendants participated transparently in the discovery process, Plaintiffs attempted to stonewall Defendants at every turn. This subversion eventually culminated in a deposition of Buczkowski, where he answered each question posed by

Defendants' counsel with vague, non-responsive, and contradictory answers. Among other topics, Buczkowski's evasions included a refusal to answer any questions whatsoever regarding his clients and a feigned failure of memory regarding his appearances in print, online, and televised media.

Even worse, Buczkowski committed demonstrable perjury in the course of providing evasive responses. First, he demonstrably lied about his place of residence. Buczkowski testified unambiguously that his primary address was 275 Glen Way, Incline Village, Nevada. The following exchange took place:

Q: Where is your primary residence?

A: Lake Tahoe area, Incline Village, Nevada … Incline Village, Nevada.

Q: So that's where you spend the majority of your time?

A: Yes.

(ECF No. 62-1 at 127, transcript page 101:4-10). On October 13, 2022, the deposition of Carlos Huerta, the actual owner of this residence, took place in the related case of *Wealthy Inc. v. Mulvehill*, No. 2:22-cv-00740. (Transcript of deposition of Carlos Huerta ["Huerta Trans."], attached as **Exhibit 1**).

Huerta testified to the following. For the past four years, only Huerta and his family lived at this address. (*Id*. at 21:16-23:10). Buczkowski does not have a lease agreement for the residence. (*Id*. at 28:4-10). Huerta occasionally had overnight guests, including Buczkowski, stay at his home for typically 4-10 days. (*Id*. at 24:1-14). Huerta did not know how many days in 2022 Buczkowski had stayed at the Incline Village residence in 2022 because he was never at that residence at the same time as Buczkowski (*id*. at 25:22-26:8 & 41:2-7), but Buczkowski had only stayed approximately 15 days in 2020 and not at all in 2021. (*Id*. at 41:22-42:19). Buczkowski has never officially moved into the Incline Village residence, furnished it, painted any of its walls, or framed any pictures or personal effects in it. (*Id*. at 26:23-27:25). Buczkowski does not have a designated room at the residence. (*Id*. at 39:22-25). Buczkowski had his mail forwarded to the Incline Village address because it is a "stable address," not because he spends significant time there. (*Id*. at 29:15-

32:7). Buczkowski does not receive personal mail or keep a vehicle at the Incline Village residence. (*Id*. at 32:2-10). Buczkowski has never had a moving truck come to the Incline Village residence to drop off his personal belongings. (*Id*. at 39:14-20).

To put it clearly, in the opinion of Mr. Huerta, the owner of the Incline Village property, Buczkowski does not live there. (*Id*. at 28:1-3). Buczkowski was thus lying when he testified that he lived at the Incline Village residence and spent most of his time there. It is inconceivable that Buczkowski believed in good faith that he lived and spent most of his time there in light of Huerta's deposition testimony.

Other areas of Huerta's testimony also calls into question other areas of Buczkowski's deposition testimony that deserve further exploration. Huerta testified that, rather than staying at a place he owned in Nevada, Buczkowski would often couch surf while in the state. Huerta testified that Buczkowski would often stay at Huerta's guest houses, primarily in Las Vegas (*id*. at 24:15-25:20 & 42:21-44:8), though he never rented any property from Huerta (*id*. at 46:8-11), and that he would often stay at his girlfriend's residence in Las Vegas (*id*. at 34:19-35:8). During his deposition, Buczkowski made no mention of these primarily Las Vegas-based residency practices which conveniently would not leave a paper trail.

Huerta also testified that Buczkowski has a residence in Illinois. (*Id*. at 35:9-12). This either contradicts Buczkowski's deposition testimony that he does not have a residence in Chicago (despite purchasing multiple properties in the city) or further shows the evasive nature of his answers. (ECF No. 62-1 at 127, transcript page 101:4-17).

Finally, Huerta confirmed that neither he nor his Incline Village residence have any involvement in the operation of Buczkowski's business, Larson Consulting, despite Larson claiming to be located at this address. (*Compare* Huerta Trans. at 38:4-39:12 and ECF No. 62-3 at 126-127). This further calls into question the legitimacy of Larson Consulting, a central issue to Buczkowski's defamation claim, and the veracity of Buczkowski's testimony about it.

In addition to Buczkowski's dishonesty shown by Mr. Huerta's deposition, Defendants have recently come into possession of evidence showing that Buczkowski was misleading about his relationship with Real Social Dynamics ("RSD"), the dating coach and "pick-up artist" company for which Buczkowski worked until 2020. During his deposition, Buczkowski testified that he was affiliated with RSD from 2014 to 2020. (Transcript of deposition of Dale Buczkowski ["Buczkowski Trans"], attached as **Exhibit 2**, at 47:5-49:21). However, in a May 9, 2018 promotional email to one of Buczkowski's RSD customers, Buczkowski stated that "I've been involved with 'pick-up' since 2002, RSD since 2003, and have been on its board of directors since 2007. I have personally trained several of RSD's executive coaches and influenced them all." (May 9, 2018 email from "RSD Derek," attached as **Exhibit 3**; Declaration of Spencer Cornelia, attached as **Exhibit 4**). Upon receiving this email, Defendants reviewed archived versions of Buczkowsk's RSD website, <rsdderek.com>, which is mentioned in the email, and discovered that as of October 27, 2017, Buczkowski stated on this site that "I've been involved with RSD the past 14 years and have been on its board of directors for 10 of them. I have personally trained several of RSD's executive coaches and influenced them all." (October 27, 2017 archived version of <rsdderek.com>, attached as **Exhibit 5**).[2]

If Buczkowski had been off by a year or two regarding when he started as an RSD coach, that might be understandable. But being off by more than a decade shows that something else is afoot. This raises the question of why he misled the Defense about his date of affiliation with RSD. The only reasonable explanation that comes to mind is an excuse to feign ignorance regarding questions about Buczkowski's knowledge of allegations of sexual abuse by Julien Blanc, another RSD dating coach, which received significant international media attention starting in November 2014.[3] (*See, e.g.,* Gail Sullivan, "'Dating coach' Julien Blanc kicked out of Australia for crude

_____

[2] Available at: https://web.archive.org/web/20171027111257/http://www.rsdderek.com/ (last accessed Oct. 18, 2022).
[3] As explained in Defendants' prior motion to extend discovery, Buczkowski persistently dodged questions about Julien Blanc before finally admitting that he may have had some awareness of this controversy. (ECF No. 44-1 at transcript pages 39-47).

'pick-up' schtick," THE WASHINGTON POST (Nov. 10, 2014), attached as **Exhibit 6**;[4] Megan Gibson, "Is This the Most Hated Man in the World?", TIME (Nov. 12, 2014), attached as **Exhibit 7**;[5] Nicholas Watt and Rowena Mason, "Home Office minister calls for 'pickup artist' Julien Blanc to be denied UK visa," THE GUARDIAN (Nov. 14, 2014), attached as **Exhibit 8**;[6] Andy J. Semotiuk, "Julien Blanc Should Be Allowed To Speak Anywhere," FORBES (Nov. 12, 2014), attached as **Exhibit 9**;[7] Rachel Browne, "Pick-up artist Julien Blanc forced out of Australia after Scott Morrison cancels visa," THE SYDNEY MORNING HERALD (Nov. 7, 2014), attached as **Exhibit 10**).[8]

Buczkowski's claims of ignorance of this controvesy during his deposition seemed implausible to Defendants' counsel, but it was least conceivable given Buczkowski's testimony that he did not become affiliated with RSD until 2014. If he was actually associated with RSD starting in 2003 and had been a board member for 7 years prior to this controversy, however, then he was clearly offering misleading testimony so that he would not have to answer questions about how he contributed to a company that fostered a culture in which its coaches felt it appropriate to grab Japanese women and shove their faces in their crotch and yell "'Pikachu' or 'Pokemon' or "Tamagotchi' or something" because "'If you're a white male, you can do what you want.'" (**Exhibit 6**).

This level of mendacity should allow Defendants to completely redo the deposition of Buczkowski on all subjects, but at the very least it shows that further discovery is warranted to refute arguments in Plaintiffs' partial motion for summary judgment.

---

[4] Available at: https://www.washingtonpost.com/news/morning-mix/wp/2014/11/10/dating-coach-julien-blanc-kicked-out-of-australia-for-his-controversial-tactics/ (last accessed Oct. 18, 2022).

[5] Available at: https://time.com/3578387/julien-blanc-feminism-real-social-dynamics/ (last accessed Oct. 18, 2022).

[6] Available at: https://www.theguardian.com/politics/2014/nov/14/home-office-minister-julien-blanc-visa (last accessed Oct. 18, 2022).

[7] Available at: https://www.forbes.com/sites/andyjsemotiuk/2014/11/12/julien-blanc-should-be-allowed-to-speak-anywhere/?sh=537ef0f921a7 (last accessed Oct. 18, 2022).

[8] Available at: https://www.smh.com.au/national/pickup-artist-julien-blanc-forced-out-of-australia-after-scott-morrison-cancels-visa-20141107-11iuxf.html (last accessed Oct. 18, 2022).

Motion for Leave to Conduct Additional Discovery
2:21-cv-01173-JCM-EJY

### 3.0 Legal Standard

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, however, a party opposing a motion for summary judgment shows that, for specified reasons, it cannot present facts essential to justify its opposition, a district court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d); *Swoger v. Rare Coin Wholesalers*, 803 F.3d 1045, 1048 (9th Cir. 2015). The party moving for discovery must specify the "specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).

### 4.0 Argument

Plaintiffs' Motion for Summary Judgment raises issues of fact that require additional discovery to fully oppose. Defendants request that the Court either deny Plaintiffs' Motion on these grounds or otherwise grant Defendants leave to conduct additional discovery into these topics.

#### 4.1 Public Figure Status

Plaintiffs' Motion summarily posits, without evidence, that Plaintiff Buczkowski is neither a public figure nor a limited-purpose public figure. A general public figure is a person who "achieve such pervasive fame or notoriety that [they] become[] a public figure for all purposes and in all contexts." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 719 (2002) (quoting *Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974)). A limited-purpose public figure is a person who voluntarily injects himself or is thrust into a particular public controversy or public concern, and thereby becomes a public figure for a limited range of issues. *Pegasus*, 118 Nev. at 720. The test for determining whether someone is a limited public figure includes examining whether a person's role in a matter of public concern is voluntary and prominent. *Id*. A person may also become an involuntary public figure, though this requires "that the plaintiff, while perhaps not voluntarily publicizing his views on the controversy, nonetheless assumed the risk of publicity, and has taken

RANDAZZA | LEGAL GROUP

some action, or failed to act when action was required, in circumstances in which a reasonable person would understand that publicity would likely inhere." *Blaine Larsen Processing, Inc. v. Hapco Farms, Inc.*, No. 97-0212-E-BLW, 1999 U.S. Dist. LEXIS 23519, *20 n.7 (D. Idaho Oct. 18, 1999) (citing *Wells v. Liddy*, 186 F.3d 505 (4th Cir. 1999)).

A public figure must meet a higher burden to sustain a claim for defamation and show that the defendant acted with actual malice, *i.e.*, "with knowledge that [the statement] was false or with reckless disregard for its veracity." *Pegasus*, 118 Nev. at 722.

Without elaboration or support, Plaintiffs' Motion claims that "Mr. Buczkowski is a private individual, not a public figure, engaged in the business of wealth coaching and cannot be said to have 'pervasive fame or notoriety,'" and that "Mr. Buczkowski is not involved in any issues of public controversy or public concern." *See* Motion at 12:15-13:2.

Existing discovery has shown that Buczkowski has been the subject of significant coverage by national media outlets. *See* ECF No. 62-2 at Exhibits 5-A to 5-AT; ECF No. 62-3 at Exhibits 5-AU to 5-AV. However, when asked questions relating to this media coverage, Buczkowski gave evasive answers relating to the source and scope of their coverage. As argued in Defendants' cross-motion for summary judgment, existing evidence supports a finding that Buczkowski is at least a limited-purpose public figure. In his Motion, however, Buczkowski attempts to manufacture an issue of fact by claiming that he is not. In the event that the Court agrees with Plaintiffs that such a factual dispute exists, Defendants seek the following discovery to aid the Court in addressing whether Buczkowski is a limited-purpose public figure, whether voluntary or involuntary:

- Which media outlets have covered Buczkowski in relation to his advising career and/or wealth
- Whether those media outlets initiated contact with Buczkowski
- Whether Buczkowski and/or his agents pitched the media outlets to cover him
- Whether Buczkowski paid for coverage by the media outlets
- Which media outlets Buczkowski paid for coverage

Motion for Leave to Conduct Additional Discovery
2:21-cv-01173-JCM-EJY

- How much Buczkowski paid those media outlets for coverage
- Whether *any* media coverage of Buczkowski was actually organic
- Whether all of the media coverage was paid for by Buczkowski

Defendants attempted to elicit this information from Buczkowski at his deposition. Their questions, however, were met with vague and evasive answers. For example, when asked specifically whether Buczkowski paid to be featured in *Playboy Magazine,* Buczkowski responded:

Q:      So you don't recall if Playboy called you of their own accord or if you paid to be featured in it?

A:      I've been in a few publications, as I said. Do I recall off the top of my head which is which? No, I don't recall specifically which is which. Did I pay for some? I already said that, yes. Did I pay for all? No.

Q:      So you couldn't tell me a single one that you paid for sitting here today?

A:      I answered your question as clear as – perfectly clearly and perfectly directly that some of them are paid. That's how that business works.

…

Q:      Can you tell me any publication that you recall paying for the placement in?

A:      I'd have to go through the list, so you can ask me the same question 20 more times, and I'll just – I'm happy to give you that accurate and honest answer. But I was in some paid publications. I was in some organic publications.

And I would have to go review to – I would have to try to look back or think back or look at – you know, I don't know how I would construct that history, but I don't know off the top of my head which is which. It's not something that I kept a record of or committed to my memory.

ECF No. 62-1 at Exhibit 2, 96:6-17; 99:2-14. This back-and-forth lasted nearly 6 pages of deposition transcript, without Buczkowski identifying a single instance in which he received organic media coverage or in which he paid for that coverage. *See id*. at 94:10-100:4. Meanwhile, Buczkowski testified that he is the only person that could have paid for such coverage. *See id*. at 100:5-19.

It strains credulity to believe that Buczkowski is not aware of the extent to which his media profile is entirely voluntary, in that he sought out and paid for prominent media coverage in

Motion for Leave to Conduct Additional Discovery
2:21-cv-01173-JCM-EJY

popular, national publications such as *Playboy*, *Maxim*, and *Entrepreneur* magazines. Either Buczkowski is suffering from significant memory loss to the point of impairment or he is simply being knowingly misleading when he says that he does not recall. Furthermore, Buczkowski clearly stated that he could "go review" the issue and give a truthful answer.  He should have to.

It is likewise worth noting that Buczkowski's deposition contains many instances where he claims that he does not recall a simple fact or otherwise refuses to provide any specific details relating to a factual issue that does not benefit him. Here, evidence or testimony showing that Buczkowski did seek out such media coverage weighs in favor of finding that he is a voluntary public figure.

If Buczkowski is willing to stipulate to being a public figure, the Court need not order this discovery. Likewise, if the Court wishes to enter an "other appropriate order" pursuant to Fed. R. Civ. P. 56(d) finding that Buczkowski is a public figure as a matter of law (as certainly *seems* appropriate), this discovery will not be needed. Absent either of these two options, however, discovery is needed to properly fill in the gaps of Buczkowski's memory.

An appropriate alternate remedy would be to either compel Buczkowski to testify to these topics, completely and truthfully, providing any receipts or communications pertaining to this coverage, or that he be compelled to at least produce written answers on this topic – subject to continued questioning if the written answers are as evasive as his answers during the first session of his deposition.

### 4.2    Damages Discovery

As further described in Defendants' Motion to Compel (ECF No. 45), Buczkowski argued at his deposition, without basis, that he should be excused from answering questions relating to his clients. Plaintiff's Motion, however, relies on the dearth of testimony to argue that Plaintiffs suffered damages despite providing no evidence of such damages. Although the Court entered an order granting Defendants' Motion to Compel, ordering Buczkowski to provide further testimony on this subject (ECF No. 63), limited third party discovery is needed to investigate whether

Defendants' alleged statements had any bearing on those clients' decisions to continue or discontinue their engagement of Plaintiffs' services. Specifically, Defendants seek leave to conduct discovery into:

- Whether Plaintiffs' customers are aware of Defendants' statements, and how they became aware of them
- Whether those customers believed Defendants' statements to be assertions of fact
- Whether those customers believed Defendants' statements to be true
- Whether Defendants' statements affected their perception of Plaintiffs
- Whether Defendants' statements caused them to stop their use of Plaintiffs' services

This evidence is directly relevant to an essential element of Plaintiffs' defamation claim – whether Defendants' statements actually harmed Plaintiffs' business. Rather than provide any examples of scenarios where Defendants' statement influenced Plaintiffs' customers' association with their business, Buczkowski generally averred at his deposition that he had no knowledge of these facts. *See, e.g.,* ECF No. 62-1 at Exhibit 2, 137:5-11.

Alternatively, Defendants propose that the Court grant them leave to take a deposition of Plaintiff Wealthy Inc. pursuant to Fed. R. Civ. P. 30(b)(6) on the specific topics of:

- Whether any customers cancelled their memberships with Plaintiffs because of Defendants' statements
- How many customers cancelled their memberships between December 19, 2020 (the date of publication for the First Video) and January 1, 2022 (the date of service of Plaintiffs' expert report on damages, which miraculously claims a perfectly linear trend of damages, even after Cornelia's videos were removed).
- Any statements by former customers citing Defendants' statements in ending their relationship with Plaintiffs

Motion for Leave to Conduct Additional Discovery
2:21-cv-01173-JCM-EJY

- Whether any customers referred to Defendants' statements in communications with Plaintiffs

In support of their Motion, Plaintiffs cite unreliable and speculative evidence to establish that they were harmed by Defendants' statements. Additional discovery is needed to establish whether any harm actually occurred.

Of course, the Court could also issue an order that since Buczkowski was unable to provide any evidence of these facts, that neither he nor Wealthy, Inc. be permitted to introduce such evidence, and they are estopped from arguing that any such damages occurred. This would be more than appropriate, should the Court not be inclined to permit additional discovery.

## 5.0 Conclusion

Plaintiffs' Motion for Partial Summary Judgment raises factual issues that could be resolved in Defendants' favor but for the evasive and incomplete discovery provided by Plaintiffs. Defendants therefore ask the Court to enter an Order pursuant to Fed. R. Civ. P. 56(d) denying Plaintiffs' Motion or granting additional discovery for use by Defendants in responding to Plaintiffs' Motion. Such discovery can be accomplished with a brief 30-day extension of discovery for this limited information.

Dated: October 18, 2022.

Respectfully Submitted,
/s/ Marc J. Randazza
Marc J. Randazza, NV Bar No. 12265
Alex J. Shepard, NV Bar No. 13582
Randazza Legal Group, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

Attorneys for Defendants
Spencer Cornelia, Cornelia Media LLC,
and Cornelia Education LLC

Motion for Leave to Conduct Additional Discovery
2:21-cv-01173-JCM-EJY

Case No. 2:21-cv-01173-JCM-EJY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/Marc J. Randazza
Employee,
Randazza Legal Group, PLLC