TRANSCRIBED FROM DIGITAL RECORDING
2:21-cv-01173-JCM-EJY - Monday, October 24, 2022    1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

WEALTHY INC., et al.,            )   CASE NO. 2:21-cv-01173-JCM-EJY
                                 )
              Plaintiffs,        )   Las Vegas, Nevada
                                 )   Monday, October 24, 2022
      vs.                        )   Courtroom 3C
                                 )
SPENCER CORNELIA, et al.,        )   Recording method:  Liberty/ECRO
                                 )   10:57 a.m. - 11:59 a.m.
              Defendants.        )   MOTION HEARING
_____ )

*C E R T I F I E D   C O P Y*

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE ELAYNA J. YOUCHAH,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:  (See next page)

Recorded by:  Elvia Garcia

Transcribed by:     PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
                    United States District Court
                    333 Las Vegas Boulevard South
                    Las Vegas, Nevada  89101

Proceedings recorded by electronic sound recording.
Transcript produced by mechanical stenography and computer.

**APPEARANCES:**

For Plaintiffs:

> **TAMARA BEATTY PETERSON, ESQ.**
> *PETERSON BAKER, PLLC*
> 701 S. 7th Street
> Las Vegas, NV 89101
> (702) 786-1001
> E-mail: tpeterson@petersonbaker.com

  *--AND--*

> **DAVID EDWARD ASTUR, ESQ.**
> *PETERSON BAKER, PLLC*
> 701 S. 7th Street
> Las Vegas, NV 89101
> (702) 786-1001
> E-mail: dastur@petersonbaker.com

For Defendant Spencer Cornelia:

> **MARC RANDAZZA, ESQ.**
> Randazza Legal Group, PLLC
> 2764 Lake Sahara Drive
> Suite 109
> Las Vegas, NV 89117
> (702) 420-2001
> E-mail: mjr@randazza.com

  *--AND--*

> **ALEX J. SHEPARD, ESQ.**
> *RANDAZZA LEGAL GROUP, PLLC*
> 2764 Lake Sahara Drive
> Suite 109
> Las Vegas, NV 89117
> (702) 420-2001
> E-mail: ajs@randazza.com

TRANSCRIBED FROM DIGITAL RECORDING
2:21-cv-01173-JCM-EJY - Monday, October 24, 2022    3

LAS VEGAS, NEVADA; MONDAY, OCTOBER 24, 2022; 10:57 A.M.

--o0o--

P R O C E E D I N G S

**COURTROOM ADMINISTRATOR:**  This is the time set in the case of 2:21-cv-01173-JCM-EJY, Wealthy Inc. vs. Spencer Cornelia.

Counsel, please enter your appearance for the record.

**MS. PETERSON:**  Good morning, Your Honor.  Tammy Peterson for the plaintiffs.  Present with me this morning is my associate, David Astur.

**THE COURT:**  Thank you.

**MR. RANDAZZA:**  Good morning, Your Honor.  Marc Randazza on behalf of the defense with my associate, Alex Shepard, and our client, Spencer Cornelia.

**THE COURT:**  Thank you.  Thank you for being here.

I set this for hearing because I was disappointed, I guess, might be the best word, in the contents of the motion, not from the perspective of how it was presented, but the subject matter, just to be clear.

I do want to let everybody know that I read the opposition.  I read the reply.  I looked through the numerous pages that were attached to the opposition.  I think the opposition was a total about 135 pages long, which is sad given the issue in this case.

I -- when I entered my order trying to be very specific about completing the deposition of Mr. Buczkowski, I

didn't include in the order that the four days that had to be offered had to be weekdays.  And I suppose I did that because after many, many years of civil practice, I presumed that that would be clear, because while it's not that depositions never occur on weekends, it is extremely rare.  It is the exception, not the rule, that depositions occur during working days, which are weekdays.

I do see that two of the four days that were offered were Sundays.  I don't object to those being among days that are offered if the parties agreed to Sundays, but certainly, my intent, which I did not state, was that it should be weekdays.  And the amount of litigation that arose from essentially that disagreement was surprising to me.

I wanted to reiterate to everybody, defense and plaintiff, that Rule 1 requires you all to cooperate with each other, and while the tone of the e-mails and the text messages that I read were certainly, for the most part, cordial, they didn't end terribly cordially, and then the motions were not cordial at all.  But what is more surprising is that you have to be here at all for this.

The compromise is a basic tenet of civil litigation.  Without it, we'd need a lot more magistrate judges and district judges.  It requires parties to be rational, not just reasonable.  And rationality here would have required either weekdays or, as offered, an extension to find more weekdays if Mr. Buczkowski

wasn't available, which I find surprising given the Court's order.  But I am going to today find out when we're going to do the rest of this deposition.

If that means you need to get your client on the phone, Ms. Peterson, I'd ask you to do so.  And we are going to find a day that he can come on a weekday and be available.

**MS. PETERSON:**  Your Honor, I'm told by my client that he is not -- he's relied on this order, and he has booked his November out.

**THE COURT:**  Well, he will have to unbook a day in November, because it's going to be a court order.

Do you want to get him on the phone, or do we just want to pick a day without him?

**MS. PETERSON:**  Well, I don't know that I can get him on the phone.  If you order me, I will make every attempt to do so --

**THE COURT:**  I understand.  I would ask you to try so that he can pick the best days that are available.  But we're going to find a weekday.

I -- we are all busy.  Every single one of us has commitments.  Certainly, I do.  But there are times when parties come before me, and there is something that needs to get done, and I will move things around to accommodate their needs.  There is just no reason between October 24th and November 30th that I believe that Mr. -- the plaintiff -- and I hope I'm saying his

name right -- Mr. Buczkowski can't find one or two days that he is available --

**MS. PETERSON:**  He's still available this Friday.

**THE COURT:**  This Friday --

**MS. PETERSON:**  Yeah.

**THE COURT:**  -- the 29th.  But I think Mr. Randazza, who I understand didn't tell you until the 3rd or 4th communication that he was not available certain days this week, that's when he offered additional time.  He -- I believe it was a subsequent text message after that communication and a little back and forth, he came forward and said, I have another idea. Why don't we continue this, I think he said, 10 or 15 days -- I did pull it up.  I did look at it -- so that we can schedule it during a weekday.  And plaintiffs didn't agree to that is my understanding from reading everything.

**MS. PETERSON:**  That's correct, Your Honor.  We relied on your order.

**THE COURT:**  Right.  So, yes.  Without me saying weekends.  So that's precluding weekends, which I guess I've learned my lesson, certainly in this case.  I will be more specific going forward if I need to be so there can be no misunderstanding, but I still find that misunderstanding surprising.

Do you want to try to get him on the phone, or do you simply want to try and find dates while you're sitting here --

**MS. PETERSON:** Yeah. I guess, my first question is, I saw some dates in a reply brief and a footnote.

**THE COURT:** Okay.

**MS. PETERSON:** I don't know if I'm supposed to start with those, but I can tell you --

**THE COURT:** No, no. We are doing this. You are not leaving until we have a date --

**MS. PETERSON:** Okay. So -- so --

**THE COURT:** -- none of you are.

**MS. PETERSON:** -- that's -- that's fine. But what I wanted to do was address the footnote --

**THE COURT:** Okay.

**MS. PETERSON:** -- because I need to know from Your Honor if I'm supposed to move my schedule, as well, because I have a deposition I'm taking on November 2nd --

**THE COURT:** No.

**MS. PETERSON:** -- I have a court hearing on November 3rd, which is the other -- I have a lengthy court hearing on November 4th that's scheduled now for four hours in state court. November 14th is frankly passable for me, but I'm told my client's not available.

If you tell me I need to go find out if he can drop his clients and be here on November 14th, I will. But I -- the other two dates, November 15th and November 16th, I'm in depositions in two other cases.

It said November -- he said counsel's available November 2 or 3 in person or the 31st.  I think that meant October 31st.  I think that's what he meant.  I'm not available that day, so -- so I need instructions from you so I can figure out what I'm supposed to do.  And then I need to know if I should ask out for December or even further.

THE COURT:  Tell me what other dates in November after the 14th you are available, Mr. Randazza.

MR. RANDAZZA:  Your Honor, I can -- the 15th or the 16th.

THE COURT:  I think Ms. Peterson just said she's not available those two days.

MR. RANDAZZA:  I'm terribly sorry.  I spaced out --

THE COURT:  And I didn't say that, so --

MR. RANDAZZA:  Okay.  Is the -- did anybody say anything about the -- so the 2nd is out?

THE COURT:  Right.  We have to go later in November.  21, 22, 23 -- I would recommend against the 23rd.  21, 22, 28, 29, 30.

Are you available any of those dates?

MR. RANDAZZA:  Your Honor, no.  I am traveling for Thanksgiving.  Would the 20 -- I'm sorry.

Would the 29th be acceptable?

THE COURT:  29 is available for you.

MR. RANDAZZA:  Or 30th.

**THE COURT:** Or 30th.

So let's see.  And I'm not asking him to cancel anything.  I'm asking him to reschedule, Ms. Peterson.  So why don't we see if Mr. Buczkowski is available November 14, November 29, or November 30th.  Let's start with those three.  If you're able to reach him, don't hang up in case he's not.  Then we can look at December.  I just want to get a date.

**MS. PETERSON:**  I understand.

**THE COURT:**  That's what I want to do.

**MS. PETERSON:**  I understand.

**THE COURT:**  So if you can give -- give him a call, that would be great.  And let me know.  We will --

**MS. PETERSON:**  May I be excused to make the call?

**THE COURT:**  Yes, yes --

**MS. PETERSON:**  Thank you very much.

**THE COURT:**  -- absolutely.

**MR. RANDAZZA:**  It was my understanding from the order that he had to be here today.  Our client came in.

**THE COURT:**  I don't believe I required any of the parties to be here today, but I didn't --

**MR. RANDAZZA:**  Then I misread the ruling.

**THE COURT:**  -- look -- look at the order, so --

**MS. PETERSON:**  I will tell you, Your Honor, that when my office received the minute order, they actually asked, called your chambers, and said, Do parties have to be here?  The -- my

office left a message with the courtroom administrator, Elvia --

**THE COURT:**  Yeah.

**MS. PETERSON:**  -- I'm not sure if I'm saying that name correctly.  And then Emily, I think, called back and said only counsel needed to attend.

**THE COURT:**  I'm sure she asked me, so I -- yeah.  I didn't intend for parties to be here.  I appreciate that Mr. Cornelia's here.  And if that wasn't clear, I will make that more clear in the future, as well, if there should be another occasion for me to issue an order.

**MS. PETERSON:**  Very good.  Please give me a moment.

**THE COURT:**  We will.

And while she does that, Mr. Randazza, why don't you just look at December dates --

**MR. RANDAZZA:**  Okay.

**THE COURT:**  -- and we'll wait a minute.

**MR. RANDAZZA:**  Yeah.  December 1st or 2nd would be fine, as well.

*(Pause.)*

**MS. PETERSON:**  Good morning, Your Honor.  I have my client on the phone right now.  He can't do November 29th or 30th.

Can you do November 28th?

**MR. RANDAZZA:**  Cannot.

**THE COURT:**  And what do you have on the 28th,

Mr. Randazza?

MR. RANDAZZA:  I am traveling to Italy with my daughter.

THE COURT:  Oh, I see.  Okay.

MR. RANDAZZA:  We're not -- we're expecting to come back on the 28th.

THE COURT:  Understood.

What about December 1?

MR. RANDAZZA:  December 1, yes.

THE COURT:  Hold on a second.  Let Ms. Peterson check.

MS. PETERSON:  I just lost him.  This is like a vortex in here.

THE COURT:  Yes, it is.

MS. PETERSON:  I can't even believe this.

THE COURT:  Try working in the building.

MS. PETERSON:  I just -- it's just been a nightmare trying to get -- I can't even load up my e-mails to -- I don't have the number memorized, so I should have --

THE COURT:  Oh, that's okay.

MS. PETERSON:  -- put this on a piece of paper.

THE COURT:  Do you want us to try and contact him through the court, and you can advise him that he's on a speakerphone and just to tell you dates?

MS. PETERSON:  Let me try this again.

THE COURT:  Okay.

MS. PETERSON:  I really --

THE COURT:  No, no.  It's all right.

MS. PETERSON:  -- prefer not to because he would not be expecting that.

THE COURT:  Yes.  I understand that.

MS. PETERSON:  Derek, it's Tammy.  Okay.  Good.  All right.

So what about -- what's the last date -- December 1st or --

THE COURT:  1 or 2.

MS. PETERSON:  Can you do December 1st or 2nd?

I need another date in December, Marc.

MR. RANDAZZA:  What about 5, 6, 7 --

MS. PETERSON:  Hold on.  I'm hearing two things.

What about November 21st, 25th, 26th -- that might be Thanksgiving.  I don't know.  21st --

MR. RANDAZZA:  That's Thanksgiving.

MS. PETERSON:  -- can you do 21st?

THE COURT:  21st is the Tuesday -- is Monday before Thanksgiving.

Are you traveling already?

MR. RANDAZZA:  We're traveling -- we plan to travel that week, Your Honor.

THE COURT:  Are you traveling on the 21st,

Mr. Randazza?

MR. RANDAZZA:  No.  I should be in Italy on that day.

THE COURT:  You should be in Italy on that day.  All right.

The 26th is the Saturday, and that's the Thanksgiving weekend.  Mr. Randazza is out of the country.

MS. PETERSON:  So November 21st will not work, and the 25th and 26th is around Thanksgiving.  So we need to -- and you can't -- and I offered the 28th, and he couldn't do that, so...

MR. RANDAZZA:  I have the entire week of December 5th.

MS. PETERSON:  Okay.  So you have -- I'm sorry. Mr. Randazza, when two people are talking, I can't hear.

THE COURT:  It's December 5th, the week of December 5th, which is a Monday.  That entire week he's available, Monday through Friday --

MS. PETERSON:  How about anytime the week of December 5th?  How about the week of the 12th?

THE COURT:  I'm going to order a date if he's not available.

MS. PETERSON:  Can you do November 14th?

That was the date that was in the reply brief.

My client's in Florida on November 14th.

THE COURT:  Understood.  We're talking December now.

**MS. PETERSON:**  The judge wants me to give -- get a date in December.

**THE COURT:**  The week of the 5th.  He's got to have a date the week of the 5th, or he can file with the court what's on his schedule that -- that week.

**MS. PETERSON:**  Did you -- did you hear that?

Okay.  The judge says you can find a date on the 5th, or you can file with the court what your schedule is for the 5th for the week --

**THE COURT:**  The week -- the whole week I'm talking about.

**MS. PETERSON:**  The whole week.  Find a --

**THE COURT:**  Date.

**MS. PETERSON:**  -- by the week on the 5th.  I'm just repeating what the judge said.

**THE COURT:**  All right.  A date during that week.

**MS. PETERSON:**  The judge has now asked for December. The judge is no longer interested in November.

December 9th.

**THE COURT:**  December 9th is a Friday.  That will do.

**MS. PETERSON:**  We're all good.  Can I disconnect my client?

He stepped out of a meeting.

**THE COURT:**  You may.  Thank you.

**MS. PETERSON:**  Thank you, Your Honor.

**THE COURT:**  The deposition of Mr. -- of plaintiff Mr. Buczkowski is set for December 9th, 2022.  The parameters set forth in my prior e-mail still -- excuse me, my prior order still stand.

Are there any questions about those parameters, Mr. Randazza?

**MR. RANDAZZA:**  Yes, Your Honor.

**THE COURT:**  All right.

**MR. RANDAZZA:**  And I'm sorry.  Given the kind of confusion we got, I want to make sure everything's clear and ask perhaps a little bit of grace from Your Honor with this pause.

Your Honor mentions the continued deposition is not a wholesale reopening.

**THE COURT:**  That's correct.

**MR. RANDAZZA:**  However, if you review the transcript, if you wish to --

**THE COURT:**  I did.

**MR. RANDAZZA:**  -- you may have noticed that he may have had some amnesia during his deposition, and I'd like to revisit things that he couldn't remember that he said he could look up without having a specific list of those.

In addition -- well, perhaps we could deal with that first, and then the second issue.

**THE COURT:**  I need to know what those subject matters are.  If he doesn't remember in a deposition and suddenly

remembers a year or two from now at trial, that's something that you can raise, of course, in an opposition or in a brief or however it works.  That's generally how it works.  So just because --

MR. RANDAZZA:  Yes.

THE COURT:  -- people don't remember things doesn't mean you get to ask them a second time at a second deposition.

I think part of what he couldn't remember was the name of any specific individual who had paid him an extraordinary amount of money for his services.  And so, I have said that you can pick -- I think it was up to ten individuals about whom you could ask.  You can pick an individual who has paid him an extraordinary amount of money --

MR. RANDAZZA:  Yes.

THE COURT:  -- and then you can ask about that individual.

But otherwise, no.  You don't get to go back and ask him -- re-ask him all the questions that he said he doesn't remember the answers to.

MR. RANDAZZA:  Well, one important question that I had in mind was in -- and we did put this in our 56(d) motion was he couldn't remember if, for example, he had paid to be in Playboy, Maxim, Forbes, other publications --

THE COURT:  Unfortunately, I don't think that was briefed before me, and the 56(d) is not before me, and I would be

ruling on a motion that is pending before Judge Mahan.  And I -- I don't think I can do that for you today.

MR. RANDAZZA:  All right.  Well, that would simply be the -- that is what I had in mind was his inability to recall if Forbes had called him or he called Forbes.  Those are issues that I -- I did intend to raise at that continued deposition.

And then, the issue of how many of his clients. It's -- it seems, on its surface, imminently reasonable to say you can ask about 20.  My concern is I don't know which ones he claims had any influence by anything that might -- was said on my client's show.  He's the one that knows who's relevant, not me, so I'm just shooting in the dark.  I mean, I could list his clients and throw him -- throw darts at it, and I might do better than him telling me who's relevant.

So if there could be some latitude for us to explore that in the deposition rather than a strict, You've asked about 20.  Now we're done.  That might make it a more effective deposition.

THE COURT:  I -- I understand, but I --

MR. RANDAZZA:  The answer may be none.

THE COURT:  -- that's not what I ordered.  Let me hear from Ms. Peterson.

And first, Ms. Peterson, with respect to whether he paid to be in Forbes or Playboy or Maxim.  I'm not sure if Forbes was one of them, Maxim, or Playboy.

Do you wish your client to re-answer those questions?

**MS. PETERSON:**  Judge, I'm in a bit of a difficulty here because I don't specifically recall what the testimony was at deposition.  I heard what Mr. Randazza --

**THE COURT:**  Right.

**MS. PETERSON:**  -- said, but I would agree with you that if there is a different answer later, I think that is proper impeachment evidence.  That is typically how it works.

**THE COURT:**  I -- I agree.  With respect to -- and that is -- was my instinct.

With respect to the identity of the clients about whom Mr. Randazza wants to ask, I did think about this.  Of course, having done a great deal of class-action work, there's -- there's always the problem that the defendant -- if the defendant is picking who the deponents are, they're going to pick the people who are most favorable to them.  And -- and I was a defense lawyer, so I'm saying that from the perspective of a defense lawyer prior to my time on the bench.  And for that reason, I didn't suggest that Mr. Buczkowski be the person who selected.

Of course, here he is the plaintiff, I understand that, but I did not want to have another motion about who he selected being those people who would be most favorable to him.  So that's why I left the selection up to you.

I do not -- Mr. Randazza, I do not have the

information that has previously been provided about clients.  I know there was a great deal of information in spreadsheets provided, and there seems to be, from what I've read, although the -- the clarity is not a hundred percent, that it included some names.

So it seems to me, if you have names, you could spend time researching those individuals to the extent you can find anything on them such as available publicly so that you could make somewhat of an informed decision.  But if you want to turn the selection over to Ms. Peterson and her client, I'm sure they'll be happy to select them.  And I certainly would order them not to select people who are clearly going to provide only one side of the story, but I have no way of knowing who those people are or if even when you start deposing Mr. Buczkowski about them and you find information that is not favorable to you, that that means that they have done so, right?

There's no way for me to know that.  And there's no way for you to know that.  And I would not expect Ms. Peterson to do that.  But I can certainly leave it -- I would leave it to the two of you to figure out how to select the people about whom you can ask, but I just don't think that's going to work.  So I -- I just don't want to be here with another 135-page opposition and a motion and reply from you that takes time and energy.

So I don't know if you have any ideas.

**MS. PETERSON:**  Well, I did have one thought.

Mr. Randazza and I did speak about this issue because we -- we were trying to -- to meet and confer about the sample size.  And I was -- the last thing that we had asked was, Do you have some sort of proposal for us about how you wanted to approach that?

And we were waiting on that.

I will tell you the other thing that we did discuss on the call was we did ask that we have this worked out in advance, because if there were, like -- I don't -- I don't know how he was going to refer to them or what he was going to do.  But if he was going to ask specific questions, we wanted to at least see if we could explore whether or not we could have that information in advance so that we could actually prepare our client for the deposition.

And that would be helpful, obviously, for a continued deposition if -- if we knew what -- what all that entailed, because I really didn't want my client walking in blind, having 20 -- 20 clients, and then saying it was insufficient and being back here.  So we were -- we were trying to, I think, work that out, but I -- I was waiting for Mr. Randazza for a proposal.

Obviously, one more thing that we discussed, we had not really resolved this on the call, but I'm very familiar with the -- with the Ninth Circuit's opinion in *Kamakana*, and I was concerned that if we had client names used throughout the deposition, that any sort of confidentiality may be sort of subsumed at some point by the -- by a potential motion,

TRANSCRIBED FROM DIGITAL RECORDING
2:21-cv-01173-JCM-EJY - Monday, October 24, 2022    21

dispositive motion, before the court.  And I was trying to explore whether or not we could either, you know -- and this was just an exploration -- could we have a list?  Could we identify people by number or something?

And we had discussed all these things very generally, and I think we were waiting for Mr. Randazza.

THE COURT:  So if the deposition -- second day of deposition is -- the transcript is sealed and I order now that any reference to it can be filed redacted and the deposition transcript itself could be sealed on a filing, would that -- just starting from the end, would that resolve the confidentiality problem?

MS. PETERSON:  Yes.  I think that would, Your Honor.

THE COURT:  Okay.  So I will do that --

MS. PETERSON:  Okay.

THE COURT:  -- so that you don't have to come back and do that.  And you can refer -- it will be the transcript of the court, but you can get the transcript, and I don't think Judge Mahan would question that I have done so if you indicate that at the -- at the hearing on today's date, that the Court ordered that the second day of depositions shall be sealed as confidential, and any reference to that deposition transcript and any reference to any name shall be redacted from a subsequent filing, and any exhibit that is either part of the deposition or if there's subsequent communication about an individual whose

PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
United States District Court

name comes up in that deposition can be filed under seal. Anything that refers to those people can be filed -- is ordered such that it can be filed under seal so that you don't have to worry about that.

As far as, therefore, not needing numbers, I think that takes care of numbers as opposed to names.  But I think that Ms. Beatty's point is correct.  So you picked 20 people, John Smith 1 through 20, and Mr. Buczkowski comes and he doesn't remember No. 15 or 17 or 12, you're not going to get what you want.

MR. RANDAZZA:  Sure.

THE COURT:  So I think there has to be some way of identifying an appropriate cross-reference.  I don't know how many -- I don't know how many clients there are.

You know, if somebody has 20 clients, they're going to remember their 20 clients.  If they have 200 clients, they may not remember them all, and if they have 2,000, they're certainly not going to remember them all.

MR. RANDAZZA:  I do have an idea.

THE COURT:  Okay.

MR. RANDAZZA:  Because, you know, remember, at its core what this is, it's a defamation case.

THE COURT:  I know exactly what this is.

MR. RANDAZZA:  So if I simply say, I don't know how many clients you have, but I'm going to randomly grab 20, I'm

just fishing, possibly bothering him about things that have nothing to do with this case.

I would not be surprised if I said -- if perhaps you order that prior to selecting these 20, we get the prelist of how many people are actually in -- or clients that he competes with Mr. Spencer for, because I think that number is zero, and how many of these people were affected by these comments, I suspect that number is zero. And if those are zero, I don't need to ask about any clients.

**THE COURT:** Well, I -- I don't -- you know, whether you think they're affected by them or Mr. Buczkowski thinks they're affected by them are going to be two different things --

**MR. RANDAZZA:** Of course.

**THE COURT:** -- I suspect. So while I understand the point, I don't think that will really work.

I do believe -- you don't -- you have a list of people.

Does it include an identification of people who are now former clients? Do -- does the list identify former rather than current?

**MR. RANDAZZA:** I don't have that -- no, we don't believe it does.

**THE COURT:** All right.

Ms. Beatty, could that piece of information be provided before December 9th in sufficient time? because it seems

to me former clients would at least be potentially more relevant than current clients if somebody -- and by "current," I mean we'd have to start with a reasonable time period around when the events that are alleged to be defamatory occurred, right, because presumably -- well, I guess, somebody could be searching now and find the same information, but anything before and they remained clients.

So I'm a client of Mr. -- I shouldn't say me.

A person is a client of Mr. Buczkowski before the events that occurred that are the subject matter of the -- of the litigation and remains a client, seems to me, are less likely to be people who are affected by whatever is alleged to be defamatory than somebody who was a client and then soon after ceased being a client or --

MS. PETERSON:  How would we determine that?  Would that be because they hadn't purchased any services after that?

They -- I mean, I guess that's where I'm sort of struggling --

THE COURT:  Okay.

MS. PETERSON:  -- how do I know what is a current client or former client?

I will tell you it's not my understanding that -- that everybody sent in letters saying, We are no longer your client, so -- right?  So that's part of the problem.

THE COURT:  So there's not an ongoing relationship.

It's not an on- -- I don't -- this, I don't know, so you could contact Mr. Buczkowski's company and get a single package of some kind and get the training, whatever.  If I'm not using the right words, I don't mean any disrespect, but you couldn't get what you purchased -- excuse me.  You could get what you purchased on a particular day or discrete number of days, and then you would have -- the contract would be fulfilled between customer and company, and then you might never contact them again.  And it would have nothing to do with anything other than, I bought something; I got what I paid for; and I'm moving on.

**MS. PETERSON:**  That is my understanding.

**THE COURT:**  I see.

**MS. PETERSON:**  Right.

**THE COURT:**  Okay.  That makes it more difficult.  I thought there was some ongoing, sort of, coaching relationship, so I didn't know that.  Okay.

I don't know how you do this, Mr. Randazza, that becomes meaningful for you.

I do think it is reasonable, Ms. Peterson, and I will hear you tell me otherwise, for Mr. Buczkowski to be able to identify the number of clients he had signing up on an approximate weekly, monthly, however often he captures that information pre-defamatory, alleged defamatory content, post-defamatory content.

I would presume, however, Mr. Randazza, if you have a

list of clients and when they became clients or when they purchased, you could almost do that yourself.  But I don't know what you have.  I'm somewhat in the dark.

And I understand.  I'm not sure how you select people other than based on timing, right, if -- and I apologize.  I don't remember when the events occurred, and I should having read numerous motions in this and the related case.  But if the -- I'll just pick dates as an example.  If events occurred -- okay.  And just give me one second, and then you guys can talk about that.

You know, if the events allegedly occurred on June 1 of this year, you know, and you had somebody who you saw had purchased Mr. Buczkowski's services on June 8th, you might want to ask about that person.  If they purchased on June 2nd, you might want to ask about that person.  Did you hear this?  Have you ever heard this?  Or June 30th, something near in time.

I mean, I am -- I understand, but I don't -- I'm not sure how you get to -- and whether Mr. Buczkowski would even know why somebody didn't continue to purchase services if they had multiple times before.  I mean, we don't always tell somebody, right?  You go to, you know, a doctor and you suddenly become dissatisfied, you don't always write them a letter and say, I no longer like your services.  I'm finding a different doctor or different lawyer, for that matter.  Although, if there's some tension, you do have to fire your lawyer.  You don't have to fire

your doctor.  But you don't even say why.  I've retained somebody new.  Please, you know, do the substitution.  We don't always know why.  So I'm not sure.

What was -- do you want to share what your --

MS. PETERSON:  Well --

THE COURT:  -- suggestion was, Ms. Peterson?

MS. PETERSON:  Well, what I had suggested to Mr. Randazza was perhaps we could discuss this further in our meet and confer that we frankly didn't conclude.  My -- my -- and then come back before your court, whether -- it could be telephonically or in person.  Your preference.

But I'm looking at the order, and it says that defendants are entitled to select the clients about who questions are asked.  And so we had, frankly --

THE COURT:  Right.

MS. PETERSON:  -- asked for a proposal from him, and I don't -- I don't know -- I don't know how else to say what do you want to do.

THE COURT:  Right.  I mean, you could add information that might be helpful on how to do it, but, you know -- and I know what we did in class actions, typically, is you took every 20th person, or you took every 15th person until you ran out of your number, or you took the -- you know, you take Nos. 5, 10, 17, 22, and you pick random numbers.  And you -- and you, to a certain extent -- and it's not a great word for the law -- you

hope that some of those people are going to provide information that you're looking for.  But when you have a class action of, for example, 6,000 employees, you just got to take a shot.

I don't know here that that is reasonable, but I don't know how I can definitely help you.  I am willing, obviously, to allow the parties, because it appears that there are times -- and I'm going to strongly recommend that you do so, going forward, act rationally and reasonably with one another to figure this out.

And we don't need briefing again.  You can call chambers and say, We've come to a stalemate.  We have two different proposals.  And I'll set it between -- I have time between now and December 9th for a telephonic hearing.  I don't need to drag you back in.

I did want to see you today to tell you how much I really want you to work together to the extent possible, keeping your -- I know this case is not personal to the lawyers, so try to remember that, although I know it's personal for your clients. I understand that.  And see if you can work it out.

That's the best I can do today, Mr. Randazza.

**MR. RANDAZZA:**  I think we can do it.  I mean --

**THE COURT:**  Okay.

**MR. RANDAZZA:**  -- we've worked pretty -- everything out except Sunday depositions so far, so I think we can do it.

**THE COURT:**  Well, I'll hope that's true.  I did see

that you came to agreement on Mr. Mulvehill, so I was very happy to see that.

All right.  So if there is --

MS. PETERSON:  Actually, I think, under your -- we have agreed.  That is correct.  I -- but we don't have his deposition scheduled right now.  I don't know if the -- if the Court wants to address that Mulvehill issue --

THE COURT:  Oh, okay.

MS. PETERSON:  -- at all or not right now, but --

THE COURT:  Yeah.  If you want to.

MS. PETERSON:  -- we have agreed --

MR. RANDAZZA:  I would jointly move with her --

MS. PETERSON:  Yeah.  We --

MR. RANDAZZA:  -- that the Court encourage him to give us a date.

MS. PETERSON:  Yeah.  I mean, we have agreed that -- that at least from my client's perspective, we'll do this Mulvehill deposition once.  I --

THE COURT:  What is that case number so that I can call that case number? because I believe -- the MJ.  We can put it on the record.

MS. PETERSON:  Yeah.  We don't have Mr. Mulvehill here.

THE COURT:  Right.  We don't have his counsel here.

MS. PETERSON:  I had sent his counsel a copy of the

order that was issued in this case, and I think we need to all three of us need to speak to coordinate that.  So I just really wanted to say we don't have it on calendar, but we've agreed we need to coordinate with Mulvehill's counsel.

I would just like some direction from the Court about -- I think, at one point, you wanted to have everything done by December 31st, which all I can do is tell you what Mulvehill's counsel said, which was he's not available in October.  I mean, so I don't know what I'm supposed to do because he wanted -- and Mr. Randazza wanted to take that deposition, and nothing has -- has occurred since then.

**THE COURT:**  Okay.  So that case is 22-00740-JCM-EJY.  *Wealthy Inc. v. Mulvehill, et al.*  I can enter a minute order after we are done today, indicating the lengthy discussion about depositions and deposition scheduling, and order Mr. Mulvehill to provide dates within 15 days, approximately, of today's date, something like that, to you that don't include weekends.  And I'll just make it clear so that there's no question and that he has to provide, you know, series of dates.

Do we need to extend discovery in this case in order to accomplish the deposition on the 9th and then any -- I don't -- I don't have the -- I had it, but I don't have the --

**MS. PETERSON:**  In the *Mulvehill* case, I believe we just submitted a -- a stip -- an extension to extend discovery, I believe, to February 5th or 6th, somewhere around there, so --

THE COURT:  I think that one's good.

What about this case?

MS. PETERSON:  This case, you would, because discovery's closed in this case but for your order --

THE COURT:  Okay.

MS. PETERSON:  -- that extended discovery just for the very limited purpose of --

THE COURT:  And you're --

MS. PETERSON:  Hold on.  I was just trying to find the --

THE COURT:  Yeah.

MS. PETERSON:  -- the line.  Yeah.  Okay.  So it's on page 12 of 14, line 9.  The discovery period is extended to October 31st, 2022, for purposes of continuing and concluding the deposition of Dale Buczkowski.  No written discovery may be propounded.  No third-party discovery is to occur during this extended discovery period.

That's actually ambiguous, then, with the order, too, because I did understand from the order that you -- that you were allowing Mr. Mulvehill's deposition be taken in two cases, so --

THE COURT:  Yes.  Combined.  True.  Fair enough.

So -- so do you want -- I can extend discovery through the end of January for purposes of the two depositions, the one that's now scheduled December 9th and the Mulvehill deposition, and then extend dispositive motions 30 days after

that, joint pretrial after that.  I don't remember what dates I gave in the other case, and I was just looking at -- I'd do the same dates, actually.

Would that make sense?  You're still waiting for an order on consolidation, correct?

**MR. RANDAZZA:**  Correct, Your Honor.

**MS. PETERSON:**  I would ask, Your Honor, we are interested in getting this case --

**THE COURT:**  Done.

**MS. PETERSON:**  -- completed.  Yes.  So I understand that we need to allow Mr. Buczkowski's deposition to go forward on the date we just set, December 9th.

So can we just say be done by December 9th in this case for -- for the purpose of those two things and that's it?

**THE COURT:**  Yes.  But if -- if Mulvehill's deposition plays into any dispositive motion or opposition to a dispositive motion, you're going to want that before the dispositive motion due date.  That's what I was thinking --

**MS. PETERSON:**  Yes --

**THE COURT:**  -- and I don't know if dispositive motions are planned.  It's a difficult case.

**MS. PETERSON:**  You have --

**MR. RANDAZZA:**  Actually, we have filed.

**MS. PETERSON:**  -- we have -- both sides have filed dispositive motions.

PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
United States District Court

THE COURT:  Already.

MS. PETERSON:  You also had extended the dispositive motion cutoff date to November 30th, 2022.  But I think that -- that -- I mean, in candor to the Court, I think that you had done that with the idea that Mr. Buczkowski and Mr. Mulvehill's deposition would be completed by then.  But the point is both parties have already filed motions in --

THE COURT:  But there's a 56(d) --

MS. PETERSON:  -- in the case.

THE COURT:  -- with one of them --

MS. PETERSON:  That he just filed after the deadline.  Correct.

THE COURT:  Okay.  That's after the deadline.  Okay.

Oh, dear.  Oh, dear.  Okay.  All right.

I will, without prejudice, extend discovery further in this case for purposes of completing Mr. Buczkowski's deposition, getting the transcript, and filing anything in addition that the parties wish to file -- I can't promise that Judge Mahan will agree to consider it -- to December 30th, 2022, with -- that's the close of discovery.  That's for purposes of getting the deposition and -- and filing any supplement.  And you will have to ask for the deposition transcript to be expedited.

That will be the due date for any supplement.  And again, please do not take that as an order that the supplement will be accepted by Judge Mahan.  It's the due date by which any

supplement that is sought must be filed.

He will decide whether to consider anything that is supplemental to any pending dispositive motion.  That will be his decision.  I'm just giving you more time to do it, not agreeing that it is -- it will be an accepted filing.  And then the joint pretrial order would be due 30 days after the decision on any dispositive motions.

As far as Mr. Mulvehill's deposition goes, because his counsel is not here and there's nothing noted, I would simply do a minute order in that case that asks that he provide dates; that I was advised in the course of the hearing in a related matter that dates have not yet been provided and order the dates be provided within 15 days and that those dates be weekdays and that dates be available in the month of December as well as January.  I'll give some parameters.  And that's the best I can do for you in that -- in that matter, I think.

And then, if you all want to agree, if Judge Mahan orders the cases consolidated and that changes things and you want to agree, you can, obviously, submit a stipulation that changes any of the due dates.  In you all agree on it, I am -- given the complexity of the history of what's gone on, I'm more than likely to grant it.  Until I see it, I won't know.

If you don't agree, you can always file another motion.  Keep them brief.  You can call chambers.  I could try to get back on the bench if you think it's helpful.  But if you want

to write it out without doing filings, I'm happy to try to help that way, too.

I know this is complicated.  I will put in the minute order the December 30th date and be specific on what it means.  I will put the December 9th date for Mr. Buczkowski's deposition.  And I will, again, issue a separate minute order in the *Mulvehill* case.

Mr. Randazza.

**MR. RANDAZZA:**  I just -- did I hear Your Honor correctly that it was limited to that, so if -- it just occurs to me that if we're talking about some of these clients, I may wish to follow up with them, and I don't want to be foreclosed from that.

**THE COURT:**  Well, discovery is closed.  I -- you know, the deposition was taken very late.  I remember the history around that, when it was asked.  There was a -- you know, nobody here is -- no client is -- here is free from certain amount of responsibility for the late nature of Mr. Buczkowski's deposition.  So I have not reopened discovery generally.

What you can go out and find out on your own, obviously, I can't stop you from doing that.  No one can.

If you want to reopen discovery, you're going to have to make a separate motion, because Ms. Peterson would not have had an opportunity to consider or respond.  The feeling, she will object --

MR. RANDAZZA:  Thank you, Your Honor.

THE COURT:  Okay.  All right.  The transcript of the proceeding is the -- is the order of the Court.  Again, a minute order will follow with specific dates.

Are there any remaining questions?

Mr. Randazza.

MR. RANDAZZA:  Not from me, Your Honor.  Thank you.

THE COURT:  Ms. Peterson.

MS. PETERSON:  I don't believe so.  Thank you, Your Honor.

THE COURT:  All right.  Sorry this was such a difficult process, but I appreciate your cooperation.  We are adjourned.  I will be a minute before I get off the bench.  You are all free to go.  Thank you.

(*Proceedings adjourned at 11:59 a.m.*)

--o0o--

I, Paige M. Christian, a court-appointed transcriber, certify that the foregoing is a correct transcript transcribed from the official electronic sound recording of the proceedings in the above-entitled matter.


Date:  November 6, 2022

/s/ Paige M. Christian_____
Paige M. Christian, RPR, CRR, CCR #955
Official Court Reporter
United States District Court
District of Nevada