TRANSCRIBED FROM DIGITAL RECORDING

2:21-cv-01173-JCM-EJY - Monday, November 14, 2022    1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| WEALTHY INC., et al., | ) | CASE NO. 2:21-cv-01173-JCM-EJY |
| | ) | |
|         Plaintiffs, | ) | Las Vegas, Nevada |
| | ) | Monday, November 14, 2022 |
|   vs. | ) | Courtroom 3A |
| | ) | |
| CORNELIA, et al., | ) | Recording Method:  Liberty/ECRO |
| | ) | 11:06 a.m. - 12:25 p.m. |
|       Defendants. | ) | MOTION HEARING |
| _____ | ) | |

*C E R T I F I E D   C O P Y*

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE ELAYNA J. YOUCHAH,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:  (See next page)

Recorded by:  Araceli Bareng

Transcribed by:     PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
United States District Court
333 Las Vegas Boulevard South
Las Vegas, Nevada  89101

Proceedings recorded by electronic sound recording.
Transcript produced by mechanical stenography and computer.

**APPEARANCES:**


For Plaintiffs:

**TAMARA BEATTY PETERSON, ESQ.**
*PETERSON BAKER, PLLC*
701 S. 7th Street
Las Vegas, NV 89101
(702) 786-1001
E-mail: tpeterson@petersonbaker.com

  *--AND--*

**JEFFREY VOCKRODT, ESQ.**  (*Pro Hac Vice*)
*CULHANE MEADOWS PLLC*
13101 Preston Road
Suite 110-1510
Dallas, TX 75240
(202) 615-9886
E-mail: Jvockrodt@cm.law


For Defendant Spencer Cornelia:

**MARC RANDAZZA, ESQ.**
*RANDAZZA LEGAL GROUP, PLLC*
4974 S. Rainbow Boulevard
Suite 100
Las Vegas, NV 89118
(702) 420-2001
E-mail: mjr@randazza.com

  *--AND--*

**ALEX J. SHEPARD, ESQ.**
*RANDAZZA LEGAL GROUP*
4974 S. Rainbow Boulevard
Suite 100
Las Vegas, NV 89118
(702) 420-2001
E-mail: ajs@randazza.com

*///*

**APPEARANCES CONTINUED:**

For Defendants John Anthony Lifestyle LLC and John Mulvehill:

    **L. RENEE GREEN, ESQ.**
    *KRAVITZ SCHNITZER JOHNSON & WATSON, CHTD.*
    8985 S. Eastern Avenue
    Suite 200
    Las Vegas, NV 89123
    (702) 222-4148
    E-mail: rgreen@ksjattorneys.com

For Defendant Optimized Lifestyle LLC:

    **JOANNA MYERS, ESQ.**
    *HOWARD & HOWARD PLLC*
    3800 Howard Hughes Parkway
    Suite 1000
    Las Vegas, NV 89169
    (702) 257-1483
    E-mail: jmm@h2law.com

                 * * * * *

LAS VEGAS, NEVADA; MONDAY, NOVEMBER 14, 2022; 11:03 A.M.

--o0o--

P R O C E E D I N G S

**COURTROOM ADMINISTRATOR:**  This is the time set in the case of 2:21-CV-01173-JCM-EJY, consolidated with Case No. 2:22-cv-00740-JCM-EJC, Wealthy Inc., et al, vs. Spencer Cornelia, et al.

Plaintiffs' counsel, please enter your appearance for the record.

**MS. PETERSON:**  Good morning, Your Honor.  Tammy Peterson present here for the plaintiffs in both cases this morning.  Also present with me on our Zoom hearing is Jeff Vockrodt, who's admitted pro hac vice in this case.

**THE COURT:**  Thank you.

**COURTROOM ADMINISTRATOR:**  Defendants' counsel --

**MR. RANDAZZA:**  Hi, Your Honor --

**COURTROOM ADMINISTRATOR:**  -- please enter your --

**MR. RANDAZZA:**  -- Marc Randazza for defense, Spencer Cornelia, here with Alex Shepard from my firm, as well.

**THE COURT:**  Thank you.  What I note is that I don't have counsel for Mr. Mulvehill here.

**MS. GREEN:**  Good morning, Your Honor.  This is Renee Green on behalf of defendants John Anthony Lifestyle LLC and John Mulvehill in the partnering case, *Wealthy Inc. v. Mulvehill.*

**THE COURT:**  Thank you, Ms. Green.  I'm glad you are

here because I was concerned about proceeding without counsel for Mr. Mulvehill being present, and I wasn't sure that I had such person.  Thank you.

MS. MYERS:  And, Your Honor, this is Joanna Myers, counsel for Optimized Lifestyle.

THE COURT:  Okay.  Thank you.  Sorry.  Here we go.

So, Ms. Green is here.

Ms. Green, you're here for Mr. Mulvehill as well as John Anthony Lifestyle; is that correct?

MS. GREEN:  Correct.

THE COURT:  Okay.

MS. GREEN:  Correct, Your Honor.

THE COURT:  Thank you.  And then, Joanna Myers, you are here for Optimized?

MS. MYERS:  Yes, Your Honor.

THE COURT:  Okay.  Thank you.  I'm just making notes to try and keep things clear for me.

Just so everybody knows, this hearing was prompted initially just by discovery issues that overlapped between the two cases and was set before the Court ordered consolidation.  So I think the hearing is more pressing than it was even when I set it.

I have, just so that you know, reviewed -- gone back and reviewed the status of the discovery deadlines in what was the 740 case against Mr. Mulvehill, the Lifestyle, and Optimized,

and, of course, I went back and looked at my last order with respect to the case against Cornelia defendants so that I would refamiliarize myself with dates and prior orders of the Court.

I, of course, have also reviewed ECF No. 69, which is the motion for leave to conduct additional discovery filed by the Cornelia defendants.  I have reviewed the opposition and the reply and errata to the motion itself.

Over the weekend, in preparing for this, I also looked at the docket and noted ECF No. 6 -- excuse me, 90, which was a motion that was filed in the Cornelia matter to conduct the deposition of Mr. Mulvehill and -- and extend dates to respond to the pending plaintiffs' motion for summary judgment, reached out to Judge Mahan, because that motion was not technically before me, asked him if it was appropriate for me to consider that today, because it's wound up in everything else we're doing, and he gave me the go ahead to do so.  I think this will also implicate ECF No. 77, which has been pending and not before me. That is a motion pertaining to discovery.

The purpose of today's hearing is to try and resolve, as best we can, the outstanding discovery issues that relate to these two now consolidated cases.  And the conundrum, if you will, for the Court, is that the discovery deadline in the -- I'll just -- I guess, I'll just call it the John Anthony matter, the -- or Mulvehill matter, is not until February 6th of this year and that any -- any requests regarding Mr. -- you know,

or any discovery regarding Mr. Mulvehill, to cut that off early would seem unfair given that there's no reason for that defendant to have anticipated a shortened discovery period, especially given the stipulation that's on record.  Whereas, in the Spencer Cornelia matter, of course, discovery is closed, has been extended multiple times, and I have those dates, and it is the Cornelia defendants who are seeking to extend discovery that impacts Mr. Mulvehill.  So I've got all that down, believe it or not.

And, in particular, just for the record, I note that discovery was first set in September of 2021 in the Cornelia matter, the 1173 matter, prior to consolidation, where now all matters should be referred to as under the Case No. 1173, and then extended on March -- February -- to February 9th, to March 11th, to April 11th, May 11th, May 18th, August 31st, and then, finally, October 31st.

And with respect to discovery pertaining to, or sought by, Cornelia, I see a very different set of facts than anything that would pertain to Mr. Mulvehill.  And I just -- I just want to lay that out as well as say that with 26 years of civil practice under my belt before taking the bench, I can say with certainty that motions for summary judgment are not the basis upon which discovery springs.

The purpose of a discovery period, in this case, over a year of discovery period is to gather all the facts and to seek

all the depositions and make the Rule 45 -- or issue the Rule 45 subpoenas, to gather evidence, so that you can get to summary judgment and either file or defend against it.  And by -- by and large, the case law would say -- or does say that Rule 56(d) is not meant to provide an individual the opportunity to reopen discovery when they figure out after a motion for summary judgment is filed that they have failed to gather discovery. They should have filed over the 13 months prior to that motion for summary judgment being filed.

That is a concern for the Court in the Spencer Cornelia matter that while I'm not unsympathetic to the desire, I don't know that 56(d) really provides the relief that is sought by the Cornelia defendants with respect to reopening discovery, except as has been already ordered with respect to reopening or taking the second day of deposition on December 9th of Mr. Buczkowski.  So those are my preliminary remarks.

It is defendants' motion.  That is No. 69.  So I will ask Mr. Randazza or whomever from your office would like to argue to make your arguments with respect to that motion, 56(d), and any other issues that you wish to raise with the Court.  And I'll hear from Mr. Mulvehill's counsel and then from plaintiffs' counsel.

Go ahead.

**MR. RANDAZZA:**  Thank you, Your Honor.  I -- I take what you say to heart, and I am going to point out that in our

motion, we have made it clear that we did ask during Mr. Buczkowski's abbreviated deposition for this information that we wanted.  Frankly, didn't think that he would be taking the position that he's a private figure.  We don't find that position to be very well taken.

But, you know, if you have 95 points out of a hundred, you want to get a hundred out of a hundred before you agree that you are done taking discovery.  And the issue of whether or not he's a voluntary or involuntary public figure may not push the entire case one way or the other, but it is an important issue.

Now, he claimed to be unable to know if, for example, he paid to be in *Playboy* or *Maxim* or *Entrepreneur*, and I don't find that very credible.  However, he did say in his deposition he can go back and look at that.  I think that him being -- I -- I'm not uncomfortable saying, but I think he was probably purposefully obfuscating the facts there.  But even if he simply had a lapse of memory, I don't think it's asking for a whole lot from him to go back and actually do what he said.  I think his exact quote was, "I would be happy to."

So if he's happy to and we're happy to have him do it, perhaps he can refresh his memory as to whether he got a call out of the blue from *Playboy Magazine* saying, We'd like to feature you, or if he called them.

With respect to his damages, there is -- he has been

unable so far to give us any articulation of damages absent his expert report.  However, he says in his motion he's going to dump that on us at trial.  And I understand that may be more appropriate for a motion in limine, but I think it's also appropriate at this point to be able to have some disclosure of that information rather than wait to see.  You know, we don't know how long a motion in limine is going to go, so I don't really want to say that we're going to forego the opportunity to ask for that.

Now, we have suggested alternate relief.  That alternate relief may seem -- I think, may seem a lot easier.  I think it would take a -- a very difficult analysis to say that somebody with millions of Instagram followers, two pages worth of media appearances, and all of the claim to fame that he has to say he's a private figure, but he is insisting that he is.  So I think that we should be able to poke through the very last piece of that information, unless either he wants to retreat from that position, which I think is the Rule 11 thing to do, or if this Court wants to simply make the finding that (indiscernible) one way or the other, he's a public figure.

As far as the damages go, again, he -- he should know at this point what his damages are.  And if he doesn't know at this point, he should either be barred from introducing them at all, or we should be able to grill him on that.  And that's really all we're asking for here.  And this is, I think, the

proper purpose of 56(d).

I -- I run into it an awful lot from -- from other -- from opposing attorneys who don't seem to want to articulate the alternate view or what they need or why they need it. We've been extremely specific about what we need, why we need it, and what the reasonable alternatives could be. And we'd be happy with either one.

THE COURT: Well, Mr. Randazza, I am not in a position -- it would not be appropriate for me to make any ruling regarding the public figure status of Mr. Buczkowski. That is something that either a jury will do or, perhaps, in response to summary judgment, Judge Mahan will do. But that is a dispositive issue that would not be appropriate for me to rule upon at this juncture. It's not referred to me for ruling, which would allow me to make a -- a recommendation, so I can't even go that far nor -- nor should I. And I'm comfortable with that. So that option is off the table as far as it goes today, and that has to be addressed in summary judgment, motions in limine, or at trial.

With respect to whether Mr. Buczkowski, if I'm saying his name right, is a public figure, I understand why that's important to the defamation claim. That's not lost on me. But that's not -- that's something that it seems defendant Cornelia should have anticipated, or known, to investigate. And if Mr. Buczkowski was unable and not believed to be the most credible of witnesses, you had plenty of time to investigate that

by subpoenaing records from *Playboy*, *Maxim*, or *Entrepreneur* or anyplace else you wanted to go, even to try and take depositions with respect to that evidence, person most knowledgeable, look at their records, what was the source of the -- of the articles. You could have been rather specific.  You didn't do that.

And that, to me, would seem to me to be a far better source of information than asking Mr. Buczkowski himself, who does seem to lack a certain amount of recollection about things, at least from his first day of deposition, when I read the portions of the transcript that were provided to me.

If -- so I -- I understand why you want the information.  I understand why it's important to your case.  What I don't understand is why you didn't do anything about it before you took his first day of deposition or after, before the close of discovery.  That's what I don't understand.

**MR. RANDAZZA:**  Well, Your Honor, before, you know, perhaps I -- I am a bit naive.  I expected him to be truthful at his deposition.  So I probably should be a little more skeptical of him.  And I will admit that is a failing of mine to have more faith in somebody that when they're under oath, they'll tell the truth --

**THE COURT:**  Fair enough.

**MR. RANDAZZA:**  -- as far as afterwards, you know, it was very jammed up at the time.  I think we were almost -- I think we were past the discovery deadline at the time, if I'm not

remembering that incorrectly.

THE COURT:  I guess, Mr. Randazza, and I don't want to beat this to a pulp.  But I would expect deponents to be honest, as well.  And I don't know that Mr. Buczkowski's lack of recollection is dishonest, and I'm not suggesting that.  But given the nature of the allegations, the fantastic nature of some of the allegations in this case, and that it is a defamation case where the allegation is people have lied, in essence, have made up facts, made up information, they're not facts, that some extra discovery would have been prudent here and easy to have conducted.

And you don't say that you did not know about *Playboy*, *Maxim*, or *Entrepreneur* before his deposition.  If that had come out at his deposition, there might be a reason for you to have not pursued -- you, defendants, not to have pursued the -- the information.  I just -- I don't know that -- that the crystallizing of the issue at summary judgment creates a basis for Rule 56 relief.  That is my concern.  That's what you're seeking.  That's what I -- I must rule upon, which is Rule 56(d) relief.

Were this some other source or form of relief sought and had there not been 13 months of discovery and did you not know of *Playboy*, *Maxim*, or *Entrepreneur* before the deposition, it might be a different set of circumstances, but I -- I just don't see that summary judgment -- the crystallizing of issues at

summary judgment creates a basis for Rule 56(d) relief.  The case law just doesn't support that.  That's my concern.  I'm happy to hear more on that issue.

With respect to damages, you are going to be able to ask him about specific clients, customer -- I'm not sure what the right word is -- based on my prior orders.  And I understand that I did put a limit on that, but it wasn't -- it wasn't a dramatic limit, in my opinion.  And so, you should be able to test his theory of damages somewhat further.  But, of course, if Mr. Buczkowski is unable to articulate the basis for the claim of damages, that's something that works to your advantage, ultimately, because either through limine or motion for summary judgment or however else it's addressed, you can't -- speculative damages -- I mean, it's black letter law.  Speculative damages simply don't exist.

And if he's not claiming public figure, then there's no -- there's no -- there's no, per se, award based on that basis.  And I don't know what other basis there would be a, per se, award of damages at the level that he's claiming.

So I -- I'm not sure I see the whole problem that you see here with respect to damages, but please explain further, and I'm happy to listen.

**MR. RANDAZZA:**  Well, I think this -- we were not certain we would be getting his -- a second shot at him when we filed this.  Again, I -- if I've got the timeline wrong, I'm sure

my associate will Skype me here and tell me.  But going from memory here on the ECFs, so if -- if we have a shot at him at deposition, we'll take that shot at him.  But it does -- you know, I hear what you're saying about the -- so I think that -- that is resolved happily for us.

I would say that, perhaps, if there could be any change to the order that we could re-ask him about these publication issues while he's sitting in the deponent chair, anyway, doesn't look like a whole lot of inconvenience for him.  And I do not recall that being within the scope of things that you did say we could take another run at him for.  So if he's sitting there and he has said he would be happy to research that, perhaps he could exercise that happiness between now and the 9th of December, and with a couple of questions, this issue could be resolved.

**THE COURT:**  Okay.  I will consider that and hear from Ms. Peterson in response to that request.

All right.  So, then, moving on to the issue of Mr. Mulvehill's deposition, I gave until January 18th, I believe was the date, and I know you're asking to extend that to January 31st.

Let me ask, Ms. Green, is Mr. Mulvehill -- given that that order was entered, I think, at the end of October, so it would have given almost two and a half months, is Mr. Mulvehill not available for deposition before January 18th?

**MS. GREEN:**  Your Honor, we have provided dates for Mr. Mulvehill's deposition as ordered by the Court.  However, we do -- must inform the Court that he does reside in Brazil, and that has been known since the inception of the lawsuit. Unfortunately, Brazilian law makes it illegal for any American lawyer to depose anyone in Brazil, so as he is residing in Brazil, coupled with the fact that we have -- you know, the defendants are maintaining that the court does lack personal jurisdiction, also due to the new facts in regards to us uncovering information, we waited to give Buczkowski's representations to the Court that he is not -- that he is a resident of Incline Village, Nevada, which we have recently learned that he is not.

And we have been going through meet-and-confer efforts with plaintiffs regarding that fact.  You know, it's burdensome and oppressive of Mr. Mulvehill -- Mulvehill to present for deposition, and he does reside in Brazil.  And also, for a videoconference for his deposition to take place is illegal for any American, either by -- either by video deposition or even with a Brazilian lawyer present to be deposed while he does reside in Brazil.

**THE COURT:**  So just -- I -- I think I'm repeating what you said, but I want to say it, anyway.

The law from -- in the country of Brazil is that if -- even if a person is sued in America and is an American

citizen, that person can't be deposed by videoconference by an American lawyer; is that correct?

MS. GREEN:  Correct, Your Honor.  Correct.  But the -- anybody who is in violation of that is subject to prosecution under Brazilian law.  Brazilian law considers itself a -- a separate kind of judicial entity and judicial forum, and what the person seeking the deposition of a person residing in Brazil or who's even in Brazil, period, what you have to do is go through the Brazilian courts and request permission to have the deposition taken of a resident of Brazil.

THE COURT:  So there is a relief process?  They could get relief from a Brazilian court, potentially?

MS. GREEN:  Potentially.  But an entire -- it is my understanding that an entire case has to be opened in order to seek the permission to depose somebody who is residing in and/or even visiting Brazil.

THE COURT:  So how is he going to defend against this case if he is not deposed, just by declaration that can't be challenged?

That -- I mean, I -- my concern would be that a court's going to reject his declaration if there is no opportunity, whatsoever, to challenge the assertions in such a declaration that one side -- you know, if you have somebody -- you have the dying declaration, those kinds of things.  But Mr. Mulvehill is not physically unavailable.  I

understand legally may be unavailable, so that's an interesting challenge.

Separate from that is the jurisdictional issue, and I understand that, and I read all that, with interest.  But there is --

**MS. GREEN:**  Yes, Your Honor.  And also, with the new founded facts that Mr. Buczkowski has represented to the Court multiple times both under oath and in his allegations to you in the complaint and the first amended complaint, which has not been filed yet.  We're still awaiting to file all of that.  After the court granted the filing of the first amended complaint on October 26, 2022, that he -- Mr. Buczkowski has continuously stated that he's a resident of Incline Village, Nevada.  We have found -- recently found facts and evidence that he is not, and so that also substantiates or further substantiates defendant's claim that the court does lack jurisdiction over --

**THE COURT:**  Isn't there a federal claim asserted, though?  Isn't there a (indiscernible) claim asserted, which would get you to -- would get rid of the defamation claims?  And then that could proceed in state court, so you'd have two court proceedings as opposed to one, and maybe the parties would prefer that?

That's up to you.  But there's still a federal claim, and I'm not going to -- you know, whether it's -- it's a claim that will prevail or not prevail, I don't know.

But jurisdiction wouldn't be lost in its entirety, would it?

MS. GREEN:  And with that, that's what the motion to dismiss does seek and, in essence, seeking to dismiss that, as well, on those grounds that it's not a valid claim.  So with that, coupled with the fact of the issues regarding Mr. Buczkowski's claim of residency, we were still seeking that motion to dismiss, which is currently pending before the Court.

It might be declared moot now, because as I stated earlier, we are still waiting for plaintiffs to file the first amended complaint that the Court granted, which would then require another motion to dismiss filing.

THE COURT:  All right.  Ms. Peterson, let me just start with a simple question, and -- which is, do you object to adding to the subject matter a brief inquiry regarding the source of the contact between your client and -- or clients and *Playboy*, *Maxim*, and *Entrepreneur* at his second day of deposition?

MS. PETERSON:  Yes, Judge.  I would object to adding that subject matter.  And, in fact, I want to alert the Court to -- to something about my client's deposition which took place last August.  I heard my colleagues say, Well, you know, he didn't answer these questions.  I want to read you the deposition.

And here's the question by Mr. Randazza.  And I'm -- I'm actually on -- because I know I reviewed the

transcript at some point, so I (indiscernible), so I don't forget.  I'm actually on page 95 of my client's deposition.

And -- and there's -- there's a question.  You know, what program were you interviewed on for television?

He said, A few of the major networks -- Fox, (indiscernible), a couple others.

And then he asked, And which magazines were you featured in?

My client said, *Playboy*, *Maxim*, *Forbes*, *Entrepreneur*, some others.

And they asked, Were they for (indiscernible) for pay?

There was an objection, and the question was asked again, Did you pay for any of those placements?

And the answer was, Yes.  There's some context and that's the way that media works.  Yes.

And then there's another question in here, What about *Playboy*?

And he said, I don't remember, specifically.  And he's saying, I don't remember specifically if I paid for *Playboy*, or if that was something they asked for.  And he was asked these questions by the time of the deposition.  There's no statement in here that says that, you know, he'll fill that in later.  I don't know what my colleague's referring to.  If he has a citation to the deposition, I'm happy to review it, but I don't see that.

And anyway, these questions were all asked and answered at his deposition previously, and it's interesting because, of course, Mr. Cornelia did file a motion to take a second deposition on this issue. If he thought there was something to compel an answer to, he should have added it in that original motion to compel that you already ruled on. And those topics that he asked for at the time, you did rule on, and you've allowed this second deposition to go forward in that limited manner.

So yes. I object to any further questions about media or anything else because he -- he asked those questions and he dropped it. And he knew this was an issue back when the complaint was filed.

**THE COURT:** Thank you. All right.

So then we move on to the issue around Mr. Mulvehill, I think, is the only other issue, and I -- to extend the deposition date to the end of January or any date seems somewhat futile for the Court if the parties cannot -- if either the Spencer Cornelia parties or the Wealthy Buczkowski parties are unable to take his deposition without a court order from the country of Brazil. I don't know that this -- you know, I can order him to appear, but I can't make him show up in Nevada. If he were a plaintiff, that would be different, but he is a defendant. And he didn't choose the forum --

**MS. MYERS:** Your Honor --

**THE COURT:**  -- and -- hold on a second.

**MS. MYERS:**  I apologize.

**THE COURT:**  He didn't choose the forum, and I don't know that there is any way to make him appear.

Now, what did you want to say, Ms. Myers?

**MS. MYERS:**  Your Honor, I just -- this is Joanna on behalf of Optimized Lifestyle.

I don't want there to be any misconception about his willingness to comply.  We actually -- plaintiff's counsel is the one that brought the Brazilian law issue to our attention during discussions on when Mr. Mulvehill could attend.  So Mr. Mulvehill is not digging his heels in, and in fact, there's discussion about perhaps, you know, if he's coming to the United States to visit family, things like that.  So I don't want the Court to believe that he's refusing to appear.  However, you know, obviously, we have some difficulties if he's not planning on traveling.

In the alternative, perhaps we could do a deposition on written questions.  I'm just throwing that as a possible solution, as well.

**THE COURT:**  All right.  Is there any plan for -- so you and Ms. Green took slightly different positions on where things stand with respect to Mr. Mulvehill, but I appreciate the clarification by counsel for Optimized.

Is there any plan for Mr. Mulvehill to travel to the

United States as of today's date?

MS. MYERS:  As of today, no.

THE COURT:  Okay.  Is there --

MR. RANDAZZA:  Your Honor, could I make a suggestion?

THE COURT:  Just let me ask my question and then you can.

Is there any reason to believe that he will be traveling to the United States in the near future?

We have a February --

MS. MYERS:  We have discussed --

THE COURT:  -- 6th deadline for his -- for discovery in the case in which he was named.  So that's a few months away, three months, two months away.

Go ahead.  I'm sorry, Ms. Myers.

MS. MYERS:  We have discussed that option with Mr. Mulvehill.  Obviously, it's a lot -- it's just -- it's a large trip for him to make, so we don't have any definite plans.

But, you know, certainly, he's very well aware that the Court has ordered his deposition, and he is -- we're in discussions about that.

THE COURT:  Okay.  Thank you.

Mr. Randazza, you wanted to make a suggestion?

MR. RANDAZZA:  Yes, Your Honor.  I -- I've looked at this, this question of whether it would be illegal to take his deposition in Brazil.  I am less convinced than the plaintiff and

Mr. Mulvehill seem to be.  And I do have the benefit of having had a -- a Brazilian lawyer that worked for me who I've consulted with, and I don't want you to take my word from her for it.  I would suggest some briefing on it.  But her -- her evaluation of it is that that is incorrect.  So perhaps --

THE COURT:  Okay.

MR. RANDAZZA:  -- we could brief this issue, because I think that if we could take his deposition, either by Zoom or -- I do like Attorney Myers' suggestion of written questions would probably do it, as well, but waiting for him to come to the United States just might be a little bit cumbersome.

THE COURT:  I agree with that.

All right.  Ms. Peterson, I didn't let you finish any argument or discussion you wanted, anything you wanted to present.  We had some interruptions.

So I don't know if you want to comment on the deposition and -- and briefing on the Brazilian issue or anything else, but please go ahead.

MS. PETERSON:  Thank you.  Yes, Your Honor.  I would like to speak particularly on the deposition of Mr. Mulvehill, that particular issue.  But, first, I want to advise the Court that -- that first of all, Ms. Green did give eight dates, including January 18th, 2023, where Mr. Mulvehill was available.  So in my mind, that part of the order was complied with.  I just want to make sure that that's clear for the Court.

The reason that you had ordered that previously, Judge, was that, again, Mr. Cornelia had filed a motion originally seeking to compel a -- a second deposition of Mr. Buczkowski and also seeking to extend discovery for the purpose of taking Mr. Mulvehill's deposition.  And in that filing -- and it's ECF No. 44 and it's on page 12, and it says that -- and this is what Mr. Cornelia represented.

Given that he lives in Brazil, deposing him earlier in the case was not feasible.  His counsel informed defendants' counsel on August 29th that he was unavailable to sit for a deposition by the current discovery cutoff, but that he'd be willing to sit through a deposition if this period was extended.  So that was the reason that we had originally allowed Mr. Mulvehill's deposition in the Cornelia case to go forward before January 18th.

But let me be clear about something.  And I know the Court's being interrupted, so I want to be sure.  But I want to be clear about something.  We did not ask in the Cornelia case to take Mr. Mulvehill's deposition.  We did not need Mr. Mulvehill's testimony in the case against Mr. Cornelia.

Now, right now, as the case stands against Mr. Mulvehill, we have some pending -- in fact, I need some guidance from the Court now that the case is consolidated, but we have some pending written discovery that we expect will go out to Mr. Mulvehill, to the Optimized Lifestyle entity, which is a

Wyoming entity, not a Brazilian entity, and to the John Anthony Lifestyle entity, which is also a Wyoming entity, not a Brazilian entity.

So we have some written discovery there. I just want to point that out because we did have a different proceeding and time frame with the Mulvehill case.

So candidly, I don't have the same level of urgency about resolving a Brazilian deposition right now because I have some other tools available to me. And -- and you were right. I don't know how Mr. Mulvehill eventually defends against this case, does -- if he does not appear here in the United States.

Regardless, though, regardless, I can tell you that I will not take a deposition that may subject me to criminal liability in the country of Brazil. So I won't do that.

I asked, actually, for some comfort from Mr. Mulvehill's counsel, and I didn't -- I don't have that answer in comfort. And including what was said, it is my general understanding that he can leave, and there are other countries where he might be able to go and take a video deposition.

But regardless, I think the Court also has some inherent authority to order a deposition in -- in other locations such as the United States. And I -- and I just -- I know that the context is not the same, but we did locate a Ninth Circuit case, and it's *Hyde & Drath v. Baker*, the 1994 case from the Ninth Circuit. And it -- the court here -- the district court

has wide discretion to establish the time and place of depositions.  And that was actually upholding the district court's decision to order the deposition of Hong Kong corporations to be held in San Francisco, and the reason was that the Court could better oversee the proceedings if they were held locally.

Now, that is -- again, in candor to the Court, that is not on all fours with this case, but it does stand for the proposition, in general, that a district court does have wide discretion.

Here's the bottom line.  I cannot agree -- for obvious reasons, because of the case that we are trying to prosecute against Mr. Cornelia whose case is closed in discovery, I cannot agree to keep Mr. Mulvehill's deposition open for some un- -- unclear time frame forever so that Mr. Cornelia can take his deposition when he should have taken acts much earlier in the case to try to secure this.

And -- and I want to be clear, too.  You know, it's my understanding Brazil is not a party to the Hague Convention, so we are in completely different territory with the country of Brazil.  And we did not need his independent testimony in the case against Mr. Cornelia, and Mr. Cornelia, frankly, should have taken action far before the time he did.

Now, again, I'm trying to be creative here.  It seems to me like Mr. Mulvehill has two companies that are based out of

Wyoming, and -- and he's -- he's sitting here in a case before the district court.  So -- but at the end of the day, Your Honor, I can't agree to -- to extend some date or -- and I'm not sure briefing is going to assist the Court.

And this is Mr. Cornelia's request, and he made his request based on information that he put in his brief, saying that Mr. Mulvehill would voluntarily appear at deposition.  And I don't know what the conversation was or what the -- the basis was, but that was the reason that this was originally raised and ordered by your -- by Your Honor.

**THE COURT:**  Fair enough.  And I -- I guess, I would note that given that you have two corporations that are defendants that are incorporated in Wyoming, that you could seek their depositions in Wyoming.  And somebody for the corporation would have to appear or would be defaulted and potentially sanctioned for not appearing at a deposition.

So, Ms. Green, Ms. Myers, you might want to keep that in mind.  I -- you know, I think Mr. Mulvehill has a problem given that those two entities are American entities.  And while we can't force him to come to Nevada, I'm sure there are flights that would take Ms. Peterson to Wyoming and allow her to appear there for a deposition of those two entities within the time frame that is currently set, which is February 6th, 2023, for discovery to close in this matter.

So I -- I don't want to prejudge anything, but

Mr. Mulvehill has a problem.  And I think that that is -- with setting aside Brazil residency and setting aside Brazilian law, which I would not presume to even begin to opine upon, that plaintiff doesn't need Brazil or Brazilian law or Mr. Mulvehill in Brazil in order to get information about the two other defendants.  And unless Mr. Mulvehill has partners or other people who are more knowledgeable than him about what happened with respect to John Anthony Lifestyle LLC and Optimized Lifestyle LLC, although I do understand there is motions pending, that could be a problem.

This case is a bit of a mess, candidly, because I think that Mr. -- the plaintiff, Mr. Buczkowski, has some issues with jurisdiction as it pertains to state law matters that are of significance and would change the tenor of the case dramatically if that issue is raised before either me or Judge Mahan for consideration in some manner that it is not -- not already pending, based on -- I believe the gentleman's name is Mr. Poitez's (phonetic) deposition, which is unequivocal in many respects.

And then we have, of course, the request from the Spencer Cornelia defendants to extend the deposition, and we have Mr. Mulvehill -- Mulvehill who's saying, You can't take my deposition in Brazil, but I might come to -- to the U.S.  And I might be here at some date unknown when to sit for a deposition.

And I appreciate that he's provided those eight

dates, and that is what I would call, you know -- what is it when you -- you apply -- you comply with the technicalities but not the spirit of the order.  The purpose of getting dates was so that his deposition could be taken, not simply to provide eight dates out of -- you know, out of a two-month period that somebody might be available, available for a deposition.

And what I'm hearing is that he's not available for deposition on any of those dates because he won't be in the U.S., and you can't take it the Brazil.  And I don't take issue with Ms. Peterson's position that she's not willing to subject herself to some form of prosecution or -- or any of the lawyers should be of malpractice or of violating the rules of Nevada professional responsibility because they've taken a deposition that they couldn't.  So this is a mess.

Here's what I am going to do.  Of course --

**MR. RANDAZZA:**  Your Honor?

**THE COURT:**  Yes.

**MR. RANDAZZA:**  Just as a point of order here --

**THE COURT:**  Yes.

**MR. RANDAZZA:**  -- I don't know it was Mr. Mulvehill that was raising the objection.  It was the plaintiffs, for some reason, that don't want his deposition taken.

And again, it is -- you know, I'm not licensed in Brazil, but my former associate literally wrote the common law text book in Brazil and has told me on no uncertain terms this

just isn't so.  It's not true, so --

THE COURT:  So, Mr. Randazza, you are free to file a motion --

MS. PETERSON:  May I correct -- I'm so sorry, Your Honor.

May I correct his statement, however?

He just said that -- that it was me that raised some issue.  I don't want to take Mr. Mulvehill's deposition.  That is not true.  That is not true.  And Mr. Randazza and I have spoken previously about Mr. Mulvehill's deposition.  In fact, we were before you, Your Honor, when -- at the last hearing, when we had filed a joint -- a status report and even asked you.

You said, Well, did you work this out?

I said, Well, we had worked it out.  We -- we want to take his deposition.  We'll take it jointly in both cases.

That is certainly something that I still would like to do.  I'd like to take Mr. Mulvehill's deposition in the case that we have pending against him.

What I'm saying is I cannot agree to -- to vacate his deposition for some lengthy period of time, unless I saw an issue that apparently none of the other parties saw that -- and I asked, what is his intention about his voluntarily appearing at a deposition?  Where will that be? because candidly, from the brief that Mr. Cornelia filed, I was led to believe that he was going to be here taking the deposition.  And -- and I don't know.

And then I learned from Ms. Green that it was going to be by videoconference. And I said, Well, with what -- what is the position, then, of Mr. Mulvehill appearing by videoconference?

And again, he could appear in other countries by videoconference, and we can avoid that. But I take issue with any statement that I don't want to have Mr. Mulvehill's deposition taken. That is -- that is not correct, and it misstates the record before the Court.

**THE COURT:** Thank you.

Mr. Randazza, did you want to complete what you were saying before I go forward?

**MR. RANDAZZA:** Simply that, Your Honor, we had always presumed this was going to be by video. And again, I just hope we're not relying on this based-on-nothing argument that that can't go forward. It's not indefinite. He's given us dates he's available. He's available those dates. We can do it by video.

And I -- I'm confident that I'm not going to be violating the rules of professional conduct nor subject to extradition to Brazil to be prosecuted for breaking the law for talking to somebody over Zoom. I'm sorry if I sound a little bit irreverent about that, but I find it ludicrous. And it's simply not true.

Now, perhaps --

**THE COURT:** So here's --

**MR. RANDAZZA:** -- the woman who wrote the common --

**THE COURT:** Mr. Randazza --

**MR. RANDAZZA:** -- perhaps --

**THE COURT:** -- this is what I'm going to --

**MR. RANDAZZA:** Yeah.

**THE COURT:** -- this is where we're standing.

You may, or anybody may, file a motion to compel Mr. Mulvehill or the persons most knowledgeable of the other entities or all three to appear for deposition either by Zoom in Brazil, presenting the Brazilian law on the issue.

You may try to compel him to appear in the United States on a given date given if he is person most knowledgeable for either the Optimized Lifestyle or John Anthony Lifestyle entities, which are Wyoming entities.

And anybody may seek a protective order if they want to prevent that deposition from going forward. I will not prejudge that, and I will not foreclose anybody making any motion to that extent.

However, if you are going to make that motion, you make it on shortened time with a proposed schedule for response and reply, even if there is motion and counter-motion, so that this can be decided long before February 6, because this case -- these cases have gone on. Even though Mulvehill is old -- is much newer than the Cornelia matter, they are inextricably intertwined.

And I -- you know, this case needs to conclude with respect to discovery so the Court can rule on issues of substance and of jurisdiction.  And that just needs to happen.  And that's my job is to -- is to manage the -- the case so it goes forward.

So the Rule 56(d) motion, which is ECF No. 69, is denied.  There's no basis for reopening discovery.  And given the deposition questions that were asked in August of 2022, which was before the close of discovery, or if there was follow-up that needed to be done from those questions with respect to Mr. Buczkowski, there was none until the motion was filed on October 18th, 2022, after the motion for summary judgment was filed and based, as stated right in the motion, that -- that defendant's motion, Cornelia's motion, was -- arises from statements in the motion for summary judgment.  That is not a basis for Rule 56(d) relief, and that motion is denied.

Mr. Mul- -- Mr. Cornelia -- I'm sorry.

Mr. Buczkowski's deposition will proceed on December 9th on the subject matters previously addressed by the Court in its order and only those subject matters.  However, with respect to reply or opposition to the motion for summary judgment, the problem is that the Court doesn't want -- I guarantee you Judge Mahan does not want to rule on this case piecemeal.  And it seems to me that if Mr. Mulvehill's deposition is going to take place, that whatever is said in that deposition may -- I'm not saying will, but may -- have some impact on the allegations against the

Cornelia defendants.  And it seems to me that to complete deposition -- excuse me, complete motion practice on the motion for summary judgment in *Cornelia* before Mulvehill's deposition is taken is not prudent, is not in line with Rule 1, which seeks efficiency, and efficiency sometimes does not necessarily mean speed.  It does seek efficiency.

So Mr. Mulvehill is -- is ordered to appear for deposition.  He -- if the parties agree that that deposition should take place after January 18th, then they may do so.  It just must take place before February 6 or by February 6, which is the discovery cutoff.  And I am not inclined at this juncture absent some extraordinary event to extend that deposition for Mr. Mulvehill or plaintiffs in that second case.

Then, once his deposition is taken, that date is set and concluded -- and the parties Wealthy and Cornelia have agreed that it may be multiple days, and the Court already believes that that may be necessary.  So you need days, sequential days, when he can appear for deposition so that those can be completed efficiently.

Then once that is completed, the supplement to any -- or opposition or supplement to any pending dispositive motion will be due 30 days thereafter.  And I'm not giving you a date because I don't know the dates on which Mr. Mulvehill will ultimately appear.  If it's February 6th, then the supplement to the motions for summary judgment or the refiling of summary

judgment motions would be due 30 days thereafter.  And any opposition would be due in accordance with the rules, local rules, of response dates for deposition -- for dispositive motions after that.

That is the best I can do at this time.  Discovery is otherwise closed in the *Cornelia* matter.  It is not closed in the *Mulvehill* matter.  Discovery may proceed in the ordinary course so long as it is completed by February 6th.  That includes written discovery, third-party discovery, whatever it is.

First-party discovery must occur such that it is completed by February 6th.  And then the supplement to dispositive motions that are pending or the filing of additional dispositive motions, oppositions, and reply will flow from there.

I think that's clear.  If there's anybody who has any questions, I'm happy to answer them.

ECF No. 90 is denied except as stated on the record.  So it's granted in part and denied in part as stated on the record; 69 is denied; and 77 is denied as moot.

Any questions, anybody?

I'll start with you, Mr. Randazza --

**MR. RANDAZZA:**  Your Honor, just the --

**THE COURT:**  I would appreciate if you all would let me finish speaking before you start talking over me, even if it is to finish a sentence.  If you were sitting here in court, you would do that.  It's no different on Zoom.

Go ahead, Mr. Randazza --

**MR. RANDAZZA:**  No.  I -- I heard my name.  I apologize.

**THE COURT:**  Go ahead.  It's -- everybody has done it today, not just you.  Everybody who has spoken.

Go ahead.

**MR. RANDAZZA:**  Well, I apologize, anyway.

**THE COURT:**  Thank you.

**MR. RANDAZZA:**  That -- that does also include our reply brief, which is otherwise due today, correct, Your Honor?

**THE COURT:**  Reply brief to what -- yes --

**MR. RANDAZZA:**  To our anti-slap motion.

**THE COURT:**  To your anti- -- everything is on hold until --

**MR. RANDAZZA:**  Great.

**THE COURT:**  -- the February -- every motion practice with respect to dispositive motions is on hold.  You're right.  I forgot about the Anti-SLAPP motion, Mr. Randazza, and thank you for raising it, because to the extent that Mr. Mulvehill's deposition or second day of Mr. Buczkowski's deposition can impact those motions, that should occur before additional briefing occurs.

And plaintiff in both cases and defendants have -- are granted now the right to supplement or file additional dispositive motions as it is appropriate once

Mulvehill's deposition is completed.  Don't do things in between. It will just muddy the case, the docket, what is pending, what Judge Mahan has to rule upon.  Let's complete discovery, get supplement or additional motion practice, oppositions, and replies as flows from Mulvehill's deposition 30 days after that is completed, whatever date that is, and it must be completed by February 6th.

And if he fails to appear, then the parties can -- you know, to -- can proceed as they deem appropriate based on that failure.  I can't make him come to -- from Brazil.  I can only say he's ordered to appear for deposition.  And if he doesn't, he doesn't.  I -- you know, and then the consequences flow.

So that answers Mr. Randazza's question.

Ms. Peterson, any questions from you?

**MS. PETERSON:**  I have no questions on your rulings. I do have some other housekeeping matters that I would like to address if we could.

**THE COURT:**  Okay.

**MS. PETERSON:**  The first, Ms. Green mentioned that our motion to amend complaint had been granted.  And she mentioned that the amended complaint hadn't been filed.  And, you know, and I -- I guess I just need some direction from the Court.

Typically, what has occurred is I've seen the Court order that the amended complaint -- because it has to be attached

as an exhibit to the motion in order to comply with local rules. I've seen the Court order that it shall be filed as of that date.

But Ms. Green also had asked about whoever's statement in the amended complaint, and -- and candidly, we had discussed a resolution of that statement within the amended complaint outside of the court, a potential stipulation. So I -- I guess there's a couple things that we can do.

If we need to file the amended complaint ourselves, we'll go ahead and submit that. But then, that is to let you know that we may be filing another motion to amend a stipulation to amend a -- a line in the complaint. And so that -- it should not affect jurisdiction, at all, as you have previously noted. There's still a federal claim.

But, in addition, our position is that Mr. Buczkowski is a Nevada resident, regardless of whether he was in Incline Village or somewhere else. He is still a Nevada resident, so it should not change jurisdiction issues, at all.

But I wanted to alert the Court to -- to that and kind of seek some guidance on how we should proceed.

**THE COURT:** I -- I was looking for the Court's order on the amended complaint, and I know you -- the motion was 44. But I don't believe that's the -- no. That's the stipulation. I'm sorry. There are a lot of -- motion to seal. So --

**MS. PETERSON:** I had -- I had it as document -- I'm sorry, to interrupt you, Your Honor.

I have it as Document ECF 52 --

THE COURT:  52.  Thank you.

MS. PETERSON:  -- in the *Mulvehill* case.

THE COURT:  Yeah.  No.  52 is a motion to seal.

In any event, if the Court did not order -- and I understand, yes, it is typical for courts in this jurisdiction to direct the clerk's office to separate an amended complaint from a motion for leave to file an amended complaint.  I don't recall if I did that in this case.

If I didn't, that's why it wasn't filed by the clerk's office because I must direct them to do that.  And I -- I can't find the order at the moment.

But if there is a stipulation that may result in a new amended complaint, whether it's the second or third to file this one and then prompt due dates doesn't make sense -- responsive due dates doesn't make sense if there's going to be a stipulation with respect to editing what is -- what was previously proposed.

So if I give you 15 days to either file the existing amended complaint because no stipulation is reached or to file a stipulation to file an amended, amended complaint -- whether it's the second or third, I don't know the number.  I don't mean to be cute -- then is that sufficient time, Ms. Peterson?  Then whenever that is filed, the responsive due date would flow from there.

Is 15 days sufficient time to resolve the stipulation -- the potential stipulation issue, from your perspective?

MS. PETERSON:  Yes.  That should be sufficient, Your Honor.  And frankly, we can file the amended complaint today if you -- if you order that.  And I would still proceed with some formal stipulation.  But as you pointed out, it might be more efficient in order to try to proceed with the stipulation and resolve both of those issues.  So I'm fine with that 15 days.

THE COURT:  Ms. Green, is that, from your perspective, sufficient?  Reasonable?  What?  Tell me.

MS. GREEN:  Yes, Your Honor.  Immediately after Carlos Wertz's (phonetic) deposition from which it was confirmed that Mr. Buczkowski was not a resident of Incline Village as he purported to be multiple times in both his -- his initial complaint and first amended complaint, I was the one who reached out to plaintiff's counsel and asked them if those representations were going to be continued to be made before the Court, which is likely why plaintiff's counsel is now seeking to amend the complaint once again since it is known that Mr. Buczkowski is not a resident of Incline Village, Nevada like he purports to be in both his responses to interrogatories under oath and in his complaint.

So we did have a meet and confer in regards to that in hopes that that would be cleared up, because what happened out

of that meet-and-confer conference was that plaintiff's counsel then sought to just say, Well, let's just say Mr. Buczkowski is a resident of Nevada.  I don't know where he's a resident -- he might not be a resident of Incline Village, but he's a resident of Nevada.

We've requested information confirming where he was a resident of Nevada since these representations were made already. We were never given that information.

So it is defendant's position that Mr. Buczkowski is not a resident of Nevada like he purports to be.  We have evidence that completely contradicts Mr. Buczkowski's statements made under oath before the Court.  And we have no reason to believe that Mr. Buczkowski now just genuinely claimed he is a resident of Nevada is true.

So based off of that, if that's the reason why plaintiff's counsel does want -- wants to stipulate to erase Incline Village from him being just only a resident of Nevada, we still have an issue with that and cannot stipulate to that based off of those circumstances.

So we would request that the Court, to move it -- to move it along and to put forth before the Court these misrepresentations -- because, Your Honor, you are right. It's -- these misrepresentations are not formally before the Court, and we do intend to file a motion to dismiss on those grounds.

We would request that the Court enter an order requiring the filing of the first amended complaint so that we can protect our client's interest and file a motion to dismiss this first amended complaint, which was granted by the Court almost a month ago.

**THE COURT:** Right. Understood.

And, Ms. Green, just tell me, have you taken -- did you participate in the deposition of Mr. Buczkowski, or -- or are you still intending to do that, potentially?

**MS. GREEN:** We do intend moving forward to participate in Mr. Buczkowski's deposition. However, we did not participate in the -- in the first time of Mr. Buczkowski's depo.

**THE COURT:** All right, all right. So based on what Ms. Green has stated, Ms. Peterson, go ahead and file your current first amended complaint today. And then if you want to seek leave to amend that, you -- you're free to do that, and the Court will rule upon it when it's fully briefed.

And then the defendant, Mr. Mulvehill, can move forward with his motion to dismiss, and hopefully, the parties can come to an agreement on a date for his deposition. And we will complete Mr. Buczkowski's deposition on December 9th.

If you don't agree, then you'll bring more motion practice before me. If you do agree, then you won't have motion practice before me. But all the other rulings stay the same; that we are going to complete all discovery for Mr. Mulvehill by

February 6th.  He is to appear for deposition by or before that date for multiple dates to be taking the deposition to cover all issues in the consolidated case.

Mr. Buczkowski is to appear on December 9th and answer questions as previously ordered by the Court.  And written discovery for the Cornelia defendants is closed.  Written discovery or third-party discovery is not foreclosed in the *Mulvehill* matter because February 6th remains that date.

Any supplement or new dispositive motions separate from the motion to dismiss based on the filing of the amended complaint are due 30 days after Mulvehill's deposition is due.  That includes the reply and the Anti-SLAPP or any supplement that wants to be made to the opposition.  All of that is 30 days after.  If the parties want to meet and confer and set a scheduling order, you can do that, and I'd be happy to entertain it.  Otherwise, that is the order of the Court.

Any further questions for clarification?

Ms. Myers, I didn't hear from you, but I know you and Ms. Green overlapped somewhat in your representation.

**MS. MYERS:**  Yes, Your Honor.  I have no -- no further comments on that.

**THE COURT:**  Okay.  And, Mr. Randazza, anything further from you?

**MR. RANDAZZA:**  Your Honor, I just -- a very good idea that my associate raised.  I wasn't smart enough to think of this

was that, may we ask Mr. Mulvehill for written discovery prior to his deposition? because frankly, we might get written responses from him that obviate the need for his deposition.  I realize that's not something we raised before now, but that could be very much in the spirit of Rule 1.

**THE COURT:**  Ms. Green, do you have --

**MS. GREEN:**  Your Honor, we do not know the context of the questions that Mr. Randazza seeks.  However, it is our understanding -- well, well, let's -- is it -- Mr. Randazza's -- well, discovery's closed, so the Court didn't order it.

Is it Mr. Randazza's position that if he does get those written questions, that he would -- does not desire to take Mr. Mulvehill's deposition?

**THE COURT:**  He's saying maybe, but, of course, that doesn't impact plaintiff, Ms. Peterson, right?

So you still have Mr. Buczkowski and Wealthy who may want to take his deposition.  So it doesn't necessarily resolve it.

Mr. Randazza, my problem is not so much with the idea as the timing of it, because two things.  One is -- unless everybody agrees, so I reached -- I asked Ms. Green.  But it sounds like she reasonably can't agree because she doesn't know the nature of what you're seeking.

And I haven't even asked Ms. Peterson, but it

certainly wouldn't foreclose their right to take his deposition. So even if you did not want to --

MR. RANDAZZA: Yeah.

THE COURT: -- it wouldn't foreclose their right.

So I think the parties have to meet and confer if they choose to about written questions potentially substituting for a deposition. And if they can't agree to that, Mr. Mulvehill is ordered to appear. There's no need to bring that back to me. If you don't agree that written deposition questions, written questions on deposition, substitute for deposition, then there's nothing to come back to because I've ordered him to appear.

Doesn't stop you from sending -- agreeing to try written deposition questions, but he's ordered to appear. And unless everybody agrees that he doesn't have to appear, he's ordered to appear, period. The end on that issue.

Anything --

MS. PETERSON: Thank you, Your Honor. And just to be clear --

THE COURT: Yes.

MS. PETERSON: -- is there a place where he is ordered to appear that the Court is entering at this time, or there's no place for his depo that the Court is ordering?

THE COURT: The reason I didn't enter a place is because I don't know what the parties are going to pursue with respect to depositions. If it were against -- if the deposition

was the person most knowledgeable of the Wyoming entities, then he -- if he is the person most knowledgeable, appearing in Wyoming would be logical, right?

I can't force those defendants to appear locally.  If he wants to appear in Nevada, if everybody agrees he can appear by Zoom from Venezuela or Columbia or some other country, Argentina.  Brazil is -- takes up three quarters of the southern continent.  He could appear in Chile.  He could appear anywhere that everybody agrees he could appear.  That is also fine with me.  And I -- I'm not going to presume where he has to appear.  It's -- it's a matter of for the parties to agree upon or to notice and for him to fail to appear as a result.  I just can't -- I can't prejudge that issue, either.

MS. GREEN:  Thank you, Your Honor.  I do have another question.

Will the Court -- if Mr. Mulvehill is able to do so, would the Court be willing to enter an order from which the deposing party -- or the party who seeks his deposition would be willing to -- would have to pay for his travel costs to go to another country to have his deposition taken? because it is burdensome and oppressive on my client already to do so, for him being deposed as an individual, and I do want to clarify that.

THE COURT:  Right.  So because he may choose -- if he is the person most knowledgeable for the Wyoming entities and is going to appear by Zoom for those entities and his -- and that

requires him to travel to a different country to do so, then I would not order the -- the costs to be incurred by the plaintiff.

As far as if he is not the person most knowledgeable or those depositions aren't noticed and only his individual deposition is noticed, I -- I just don't want to tell you that I would order it or I wouldn't.  I would need to first think about it, think more carefully, and look again at the law with respect to that issue and give the other parties the opportunity to oppose any requests for -- for monetary -- essentially, for -- for payment of his costs --

**MS. GREEN:**  Thank you, Your Honor.

**THE COURT:**  -- and I don't know what his -- you know, I don't know if Mr. Mulvehill travels otherwise, if -- you know, if his lifestyle takes him outside of Brazil, anyway.  I just don't have any of that information.  So I'm going to decline to rule on that.

Anything further, Ms. Green?

I'm happy to answer anything else.  I'll ask --

**MS. GREEN:**  And --

**THE COURT:**  Go ahead.

**MS. GREEN:**  Thank you, Your Honor.  And I think just one last thing, just to be clear.

So the Court order in the *Wealthy v. Mulvehill* matter, Documents No. 48, we no longer have to file the status report to the court by November 21st; is that correct?

**THE COURT:** That's correct. I'm sorry. I did have that on my list, but we got waylaid into a variety of things. That is correct. That's vacated. Thank you.

**MS. GREEN:** Thank you, Your Honor.

**THE COURT:** Ms. Peterson --

**MS. PETERSON:** Your Honor --

**THE COURT:** Yes.

**MS. PETERSON:** Thank you, Your Honor. Just to be clear, too, I will be filing today the amended complaint that was the exhibit to our motion so that -- so that that is tied up. And -- and I don't think -- I was really trying to resolve an issue that the -- Mr. Mulvehill's counsel has raised, but I think we have other remedies if they have an issue.

So I don't really want to address all of the statements. I'd like to just keep this on the issues are before the Court today, and we can -- we can reach those other issues if they become an issue at some other time.

I did have another housekeeping matter that I just need to clarify from the Court. Because Judge Mahan's order says that this -- the cases were consolidated, my assistant is just trying to figure out how to serve documents. And so I can tell you we have some discovery that we're going to put out, some written discovery in Mr. Mulvehill's case.

Should we be serving those items on all of the parties in the *Cornelia* case?

Okay.  And that raises -- so you're nodding your head, saying yes, so I want to make sure that that's clear on the -- on the transcript.

That raises one other issue because we do have some supplemental discovery responses that we are going to serve in the *Mulvehill* case.  And those supplemental responses will include some documents that we are designating confidential pursuant to the protective order that was entered in the *Mulvehill* case.

**THE COURT:**  Understood.

**MS. PETERSON:**  And we actually had two separate protective orders, and there's no cross-agreement, obviously.  And -- and so, my intention at this point would be to serve our written response -- or written supplement in the *Mulvehill* case, refer to those documents that are being produced under the protective order in the *Mulvehill* case, but Mr. Cornelia's counsel would not have those documents and -- because I don't -- we don't have a cross-production here.

That also brings up another question, and that is that in the *Mulvehill* case, we have actually had some discovery requests saying, Hey, produce everything that you have in the *Cornelia* case.  Of course, Mr. Cornelia has produced documents under the protective order in that *Cornelia* case.  And we, in the *Cornelia* protective order, are not permitted to use it for any other purpose, but yet, we have been asked for that information

in the *Mulvehill* case.

So I kind of wanted some direction about how to go about that, because otherwise, I'm envisioning giving everybody redacted copies. And obviously, I wouldn't produce material I received under the protective order from Mr. Cornelia to Mr. Mulvehill, but I would certainly produce documents that I designated as confidential in the *Mulvehill* case. I would produce that to Mr. Mulvehill's counsel, but I would not produce that to Mr. Cornelia's counsel.

**THE COURT:** First, just to confirm what you said, Ms. Peterson, all discovery going forward that is propounded should be copied or served on all parties because it is a consolidated case.

The issue as to confidentiality, I was looking to see if there was an "attorney's eyes only" provision. I have the *Cornelia* case pulled up on my screen here that I'm looking at, not the *Mulvehill* case, but I don't -- oh, I do see an "attorney's eyes only" provision.

To the extent -- I only have ten minutes left before I need to leave because I have a one o'clock with someone else.

So do the parties -- to the extent that there is confidential information produced by Mr. Cornelia or by Mr. Mulvehill, if that is produced to counsel only for the cross -- for Cornelia to Mulvehill's counsel, from Mulvehill to Cornelia's counsel as attorney's eyes only as the first instance

before the parties can discuss whether they can globalize these protective orders, does that resolve the initial issue as to disclosure?  Any objection that it be attorney's eyes only by -- of Cornelia's material to Mulvehill, Mr. Randazza?

MR. RANDAZZA:  (No audible response.)

THE COURT:  Okay.  You're --

MR. RANDAZZA:  No, Your Honor.

THE COURT:  Okay.  And, Ms. Green, Ms. Myers, any objection that in the first instance, anything that is confidential that is produced either to or by Mr. Mulvehill go to Mr. Randazza as attorney's eyes only in the first instance?

MS. GREEN:  No objection, Your Honor.

THE COURT:  Ms. Myers?

MS. MYERS:  No objection.

THE COURT:  All right.  So that resolves it initially, Ms. Peterson.  Then I would say that the parties should sit down and discuss if the confidentiality orders can be globalized in the sense that the same provisions can apply across so that if it's confidential, the parties can see them, as well, so Mr. Mulvehill could see confidential information produced by Cornelia.  Cornelia could see confidential information produced by Mulvehill without further difficulty, but until then, produce it as attorney's eyes only to counsel only for the non-receiving party.  And then if you globalize the agreement, you can do that without a court order, candidly.  But if you want to present it

as a court order, I'll enter it, and it will resolve the issue.

**MS. PETERSON:**  So let me just be clear.  So -- and I'm sorry I sound obtuse.

So if I have material of my client that I was going to produce under attorney's eyes only to Mr. Mulvehill's counsel, are you saying that I should also be producing that to Mr. Cornelia's counsel?

**THE COURT:**  Yes.

**MS. PETERSON:**  Okay.  And -- and so, that -- so in theory, I am producing this information under two protective orders?

And the reason I'm asking is I don't remember if there was a separate designation I had to have in one case versus the other.  I don't want there to be any confusion, so I just want to make sure I understand how I'm supposed to do that.

**THE COURT:**  Sure.  Whatever you're producing as attorney's eyes only goes to all counsel.  And anything that was previously produced separately that the parties have not yet had a chance to discuss with their clients about whether the other client, so whether Mulvehill agrees that Cornelia can look at information, Cornelia agrees that Mulvehill himself can look at information, that is to be shared to the extent you've been -- you've been asked to share that information as attorney's eyes only until the clients themselves agree that a confidential label as opposed to an "attorney's eyes only" label can properly

be applied to that information.

MS. PETERSON:  Okay.  And if you could put that in a minute order or something, Judge, so we can -- that would be great.

THE COURT:  Okay.  I will -- I will endeavor to do that, but I would ask you all to -- I know -- to speak among yourselves -- that's a Saturday Night Live -- talk amongst yourselves and see if you can come to a global agreement about how this should happen and present that as a stipulation, if necessary.  But in the meantime, I will try today, later today, or tomorrow, although I'm in settlement conference tomorrow, to put the discovery piece of this in a minute order.  Otherwise, the transcript of the proceeding is the order of the Court.

If there is any confusion, because this has been a complicated matter and I was trying to simplify it.  I don't know that I did a very good job, but I tried to bring discovery under one umbrella was the goal.  But to the extent there was any confusion, questions, please contact chambers, and we can get on another Zoom hearing and try to answer questions such that you don't have to do a lot of motion practice.  And I will endeavor after doing so to issue minute orders that are clear for everybody to follow.

Thank you for your patience today, and we are -- the transcript of the proceeding, if I didn't say this, is the order of the Court, and we are adjourned.

TRANSCRIBED FROM DIGITAL RECORDING
2:21-cv-01173-JCM-EJY - Monday, November 14, 2022    55

**MS. GREEN:**  Thank you, Your Honor.

**THE COURT:**  Thank you.

**MS. PETERSON:**  Thank you, Your Honor.

(*Proceedings adjourned at 12:25 p.m.*)

--o0o--

I, Paige M. Christian, a court-appointed transcriber, certify that the foregoing is a correct transcript transcribed from the official electronic sound recording of the proceedings in the above-entitled matter.

Date:  November 30, 2022

/s/ Paige M. Christian_____
Paige M. Christian, RPR, CRR, CCR #955
Official Court Reporter
United States District Court
District of Nevada

PAIGE M. CHRISTIAN, RPR, CRR, CCR #955
United States District Court