UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WEALTHY, INC., et al.,

Plaintiff(s),

v.

SPENCER CORNELIA, et al.,

Defendant(s).

Case No. 2:21-CV-1173 JCM (EJY)

ORDER

Presently before the court is plaintiffs Wealthy, Inc. ("Wealthy") and Dale Buczkowski ("Buczkowski") (collectively "plaintiffs")' motion for partial summary judgment. (ECF No. 60). Defendants Spencer Cornelia ("Cornelia"), Cornelia Media, LLC, and Cornelia Education, LLC (collectively "defendants") filed a response (ECF No. 162), to which plaintiffs replied (ECF No. 172).

Also before the court is defendants' special motion to dismiss pursuant to NRS 41.660 (ECF No. 61) consolidated with their motion for summary judgment (ECF No. 62). Plaintiffs filed responses to these motions (ECF Nos. 78 and 79), to which defendants replied (ECF No. 182).

## I. Background

This action arises out of a series of interviews published on YouTube and conducted by Cornelia that plaintiffs perceive as defamatory. Buczkowski is the owner and operator of Wealthy, described in the complaint as a "leading entrepreneurship, finance, business, real-estate and self-improvement company." (ECF No. 1 at 3). Buczkowski operates Wealthy under the

James C. Mahan
U.S. District Judge

name Derek Moneyberg, a federally registered trademark. (*Id.*). Buczkowski has amassed a following of 23,700 subscribers on YouTube, and his videos have garnered over 1.2 million views on the platform. (*Id.*).

Cornelia also maintains a strong social media presence, operating an eponymous YouTube channel with approximately 150,000 subscribers and publishing videos on investing, business, and fitness that have received over 13.8 million views. (*Id.* at 4). Pertinent to this case, Cornelia also published a series of videos entitled "Authentic or Charlatan" in which he claims to expose "fake gurus on social media." (*Id.*).

Between December 2020 and February 2021, defendants produced multiple interviews with another internet personality, John Mulvehill ("Mulvehill"), a dating and self-improvement coach. (*Id.* at 6-7). The statements in the videos, most of which are from Mulvehill, form the basis of plaintiffs' lawsuit. In the videos, plaintiffs allege that Cornelia and Mulvihill published five false assertions about Buczkowski. These assertions are that Buczkowski (1) lied about his educational achievement; (2) laundered money; (3) manufactured and/or sold illegal drugs; (4) framed Mulvehill for his 2013 arrest in Las Vegas, leading to four felony and four misdemeanor charges; and (5) was involved in the death of a 28-year-old woman who was the alleged victim in the arrest of Mulvehill. (*Id.* at 8, 12).

Plaintiffs' complaint includes causes of action for (1) unfair competition and false advertising under the Lanham Act, (2) defamation, (3) intentional infliction of emotional distress, and (4) business disparagement. (*Id.* at 19-22).

Plaintiffs now move the court for partial summary judgment on their defamation claim. (ECF No. 60). Defendants filed a special motion to dismiss under Nevada Revised Statute ("NRS") 41.660, Nevada's statute for strategic lawsuits against public participation ("anti-

SLAPP statute"). (ECF No. 61). In conjunction with their anti-SLAPP motion, defendants filed a motion for summary judgment. (ECF No. 62).

While defendants do not satisfy each individual criterion under Nevada's anti-SLAPP statute, there is no genuine dispute of material fact as to any of plaintiffs' four causes of action. The court denies defendants' special motion to dismiss but grants their motion for summary judgment in its entirety. Such action thereby renders plaintiffs' motion for partial summary judgment on the defamation claim as moot and the court hereby dismisses the case.

**II. Legal Standard**

A. Special motions to dismiss under NRS 41.660

An analysis involving a special motion to dismiss under Nevada's anti-SLAPP statute consists of a two-pronged approach. *See Rosen v. Tarkanian*, 453 P.3d 1220, 1223 (2019). To prevail on an anti-SLAPP motion to dismiss, a defendant must satisfy the first prong through showing "by a preponderance of the evidence that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Id.*; NRS 41.660(1)(a).

The "good faith communication" must be either "truthful" or "made without knowledge of its falsehood" and it must have a "direct connection with an issue of public interest." NRS 41.637(4). If the defendant satisfies this prong, the plaintiff has the burden of satisfying the second prong by demonstrating with *prima facie* evidence a probability of prevailing on his or her claims. *See Rosen*, 453 P.3d at 1223.

B. Motions for summary judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily

have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

## III. Dicussion

### A. Special motion to dismiss and Nevada's anti-SLAPP statute

Defendants seek dismissal of plaintiffs' claims based on Nevada's anti-SLAPP statue, but they fail to satisfy the first prong of statutory analysis. *See Rosen*, 453 P.3d at 1223. Defendants must show, *by a preponderance of the evidence*, that the claim is based upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." *Id.*; NRS 41.660(1)(a) (emphasis added).

The court agrees with defendants that their speech is directly connected to an issue of public concern or interest. Buczkowski is a public figure, as discussed in the court's defamation analysis, *infra*. By its own admission, Wealthy actively markets its courses on various social media channels, including YouTube, Instagram, Facebook, Twitter, LinkedIn, Spotify, and Apple Podcasts. (ECF No. 1 at 3). Wealthy also offers individual training sessions with Buczkowski, with prices starting at $60,000 and often exceeding $75,000. (*Id.*).

Given the amount of money individuals are paying for these services and Buczkowski's growing ubiquity on social media, prospective clients have the right to know about Buczkowski's background and form their own opinions on him, especially if they have qualms about a lack of his altruistic intent. There is no doubt that the public would be interested in Buczkowski's character. *See Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d. 210, 220 (Cal. Ct.

James C. Mahan
U.S. District Judge

App. 2008) (defining an "issue of public interest" as "any issue in which the public is interested.").[1]

Despite defendants' speech directly connecting to an issue of public concern or interest, they fail to meet the preponderance of the evidence standard that their claim is based on a good-faith communication. Under *Rosen*, defendants must demonstrate that "the statements were made in good faith . . . because the gist or sting of the statements were substantively true." 453 P.3d at 440. Defendants fail to do so.

Instead, defendants state that "Cornelia did not know or believe any statement in any of the videos at issue, whether uttered by him or Mulvehill, was false." (ECF No. 61 at 30). Although there is evidence that Cornelia researched Mulvehill's claims and sources, which is sufficient to show there was no actual malice on his part, Cornelia does not provide sufficient proof that he was unaware such statements by Mulvehill concerning Buczkowski could be false.

Defendants thus fail to meet their requisite burden in satisfying the first prong of Nevada's anti-SLAPP statute, and the court must deny their special motion to dismiss. (ECF No. 61). The court now must analyze their motion for summary judgment on each of plaintiffs' four causes of action.

B. Unfair competition and false advertising under the Lanham Act

Defendants move the court to enter summary judgment on plaintiffs' claim for unfair competition and false advertising under the Lanham Act. Under the Lanham Act, a person or business is liable for using promotion and advertising to disparage another entity to obtain business and profit. 15 U.S.C. § 1125. This circuit has defined "promotion" and "advertising"

---

[1] Defendants are correct in stating that Nevada courts have often looked to case law applying California's anti-SLAPP statute, as the statutes are almost identical. (ECF No. 61 at 21); *see Coker v. Sassone*, 432 P.3d 746, 749 n.3 (Nev. 2019) ("California's and Nevada's statutes share a near-identical structure for anti-SLAPP review. Both statutes posit a two-step process for determining how to rule on an anti-SLAPP motion.").

as constituting: (1) commercial speech, (2) by a defendant who is in commercial competition with a plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, that (4) is sufficiently disseminated to the relevant purchasing public. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021).

The court need only analyze the commercial speech element of plaintiff's claim under the Lanham Act. The Ninth Circuit characterizes commercial speech as meeting three criteria: (1) speech that is an advertisement, (2) speech that refers to a particular product, and (3) speech in which the speaker has an economic motivation. *Id.* at 1115-16.

Plaintiffs fail to satisfy the Ninth Circuit's first guidepost regarding commercial speech, as none of the subject videos are advertisements. Plaintiffs aver that defendants utilized their platform on YouTube to advertise their products and services. (ECF No. 79 at 11-12). Specifically, they argue that there was promotion of Cornelia's "house hack expert book" and a "first 1,000 subscribers mentoring program." (*Id.* at 12). Plaintiffs commit a flaw fatal in their argument by citing Cornelia's biographical YouTube information, *not* any of the videos themselves. (ECF No. 79-6 at 2) (emphasis added). Nowhere in the videos with Cornelia and Mulvehill is there any mention of the "house hack expert" mentorship program. The subject of this action is the YouTube videos themselves, not the YouTube channel as a whole.

Moreover, plaintiffs misinterpret the evidence by claiming Cornelia's real estate business was referenced in the first video. (ECF No. 79 at 12). This statement is an exaggeration. It was Mulvehill who, during the interview and unprompted by Cornelia, said to him, "you do have some real estate stuff on the side." (*Id.*). Cornelia simply responded to the statement by saying, "right." (*Id.*).

Cornelia never expounded upon his real estate portfolio in the video when Mulvehill raised the issue, and plaintiffs fail to point to any timestamp in any video in which Cornelia advertised his own services. Plaintiffs cannot cite to a timestamp in which Cornelia advertises his services because he never did so. Cornelia's speech was thus not an advertisement and therefore not commercial speech. There is no genuine issue of material fact, and the court grants defendants' motion for summary judgment as to plaintiffs' claim for unfair competition and false advertising under the Lanham Act.

C. Defamation

Defendants seek dismissal of plaintiffs' cause of action for defamation. To establish a cause of action for defamation in Nevada, a plaintiff must allege: (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Wynn v. Smith*, 16 P.3d 424, 427 (Nev. 2001); *see Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002).

For public figures, there is an additional requirement to bring a defamation claim. Public figures must prove that the alleged defamer acted with actual malice. *See generally New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). A court may find that a defendant acted with actual malice when the defendant made the statement with falsity or *reckless disregard* for the truth. *Id.* at 279-80 (emphasis added).

The central question before the court is whether plaintiffs are public figures. Defendants claim plaintiffs are limited-purpose public figures, defined as people or groups who voluntarily inject themselves or are drawn into a particular public controversy and thereby become public figures for a limited range of issues. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

The court has no apprehension in determining that plaintiffs are, at the very least, limited-purpose public figures. Plaintiffs counter defendants' contention that they plaintiffs are limited-purpose public figures because they claim defendants only cite documents evidencing plaintiffs' pervasive fame notoriety *after* defendants filed their motion for summary judgment. (ECF No. 79 at 3-4).

Plaintiffs' contention that they are not public figures because defendants cites only to evidence filed after the videos were submitted is irrelevant. In their complaint, plaintiffs describe Buczkowski as a public figure. He is the owner and operator of Wealthy, described as a "leading entrepreneurship, finance, business, real-estate and self-improvement company." (ECF No. 1 at 3). Buczkowski also owns a federally registered trademark. (*Id.*). He has amassed a following of 23,700 subscribers on YouTube, and his videos have garnered over 1.2 million views on the platform. (*Id.*).

Plaintiffs cannot "have it both ways." Either they are public figures as they claim in describing the reach of their YouTube channel, or their claims about viewership are mere puffery designed to mislead the court. Taking plaintiffs at their word in their complaint, the court finds that they are public figures.

The court need not analyze each individual element of defamation and can instead determine if plaintiffs acted with actual malice. As stated, *supra*, actual malice may be found only when a statement is made with falsity or reckless disregard for the truth. *Sullivan*, 376 U.S. 254 at 279-80. Reckless disregard requires that a publisher "entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). A publisher does not have to investigate personally, but may rely on the investigation and conclusions of reputable sources. *Reader's Digest Ass'n v. Sup. Ct. of Marin Cnty.*, 690 P.2d 610, 617-18 (Cal. 1984).

James C. Mahan
U.S. District Judge

Here, all of the allegedly defamatory statements were uttered by Mulvehill, not Cornelia. Cornelia was simply interviewing Mulvehill. Thus, plaintiffs' claim is more appropriately directed at Mulvehill. Regardless of this fact, the evidence in the record shows that Cornelia did not act with reckless disregard in conducting his interview with Mulvehill. As described, *infra*, Cornelia published his videos based on reasonable information he received from reliable sources.

For example, in his deposition, Cornelia testified that he received information from Mulvehill, prior to publishing the first or second videos, about the plaintiffs' allegedly unscrupulous business practices, such as not authoring their own content in the self-help videos. (ECF No. 62-3 at 34-35). This information included a video from a former employee of plaintiffs who corroborated claims about plaintiffs' unethical business practices and their using young, unqualified people to write the instructional and promotional material for plaintiffs' courses. (*Id.* at 34-35, 114). Additionally, Cornelia received numerous emails about plaintiffs' character. (*Id.* at 34-35). He never had any information contradicting negative claims about plaintiffs when the videos were published. (*Id.* at 116). Even if Cornelia were mistaken, his conduct is not remotely close to constituting reckless disregard. Thus, defendants did not act with actual malice, and the court grants their motion for summary judgment as plaintiffs' claim for defamation.

By granting this portion of defendants' motion for summary judgment, plaintiffs' motion for partial summary judgment (ECF No. 60) is denied as moot.

D. Intentional infliction of emotional distress

Defendants move the court to grant summary judgment on plaintiffs' claim for intentional infliction of emotional distress. To establish this cause of action for intentional infliction of emotional distress under Nevada law, a plaintiff must establish that: (1) the defendant's conduct

was extreme and outrageous; (2) the defendant either intended or recklessly disregarded the causing of emotional distress; (3) the plaintiff actually suffered severe or extreme emotional distress; and (4) the defendant's conduct actually or proximately caused the distress. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). "Extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

Public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publication such as the one at issue without showing, in addition to the four elements of the claim listed above, that the publication contains a false statement of fact which was made with actual malice. *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988).

In its analysis of plaintiffs' defamation claim, the court has already shown that the statements made in the YouTube videos between Cornelia and Mulvehill were not done so with actual malice. Plaintiffs fail to demonstrate any evidence that they suffered severe emotional distress.

In defendants' interrogatories to plaintiffs, defendants ask them to identify all facts that support the contention that they have suffered damages, including in the form of emotional distress. (ECF No. 62-4 at 21). Plaintiffs answer this interrogatory by claiming they received "reports from their clients and potential clients that they have been contacted on Instagram by accounts with zero posts or followers that repeat the false and defamatory statements." (*Id.* at 22). The answer to this interrogatory does not contain any specific evidence that plaintiffs suffered emotional distress. There is no genuine issue of material fact, and the court grants defendants' motion for summary judgment as to plaintiffs' claim for intentional infliction of emotional distress.

James C. Mahan
U.S. District Judge

E. Business disparagement

Finally, defendants move the court for summary judgment on plaintiffs' claim for business disparagement. The court can analyze this claim succinctly. Nevada courts have consistently held that a claim for business disparagement requires falsity and a higher malice requirement that incorporates the actual malice standard and proof of special damages. *See Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503-04 (Nev. 2009).

Yet again, the crux of this claim hinges on whether defendants acted with actual malice. The court has already concluded that they did not. Plaintiffs further fail to show any proof of special damages. No reasonable jury could find that defendants committed business disparagement towards plaintiffs, and the court thus grants defendants' motion for summary judgment as to this cause of action.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion for partial summary judgment (ECF No. 60) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that defendants' special motion to dismiss (ECF No. 61) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (ECF No. 62) be, and the same hereby is, GRANTED.

The clerk is instructed to enter judgment and close the case.

. . .

. . .

. . .

An order from the court regarding defendant Optimized Lifestyle, LLC's, motion for attorneys' fees (ECF No. 236) is forthcoming.[2]

DATED September 29, 2023.

James C. Mahan
UNITED STATES DISTRICT JUDGE

[2] Optimized Lifestyle, LLC is a defendant in a consolidated case.

James C. Mahan
U.S. District Judge