TAMARA BEATTY PETERSON, ESQ., Bar No. 5218
tpeterson@petersonbaker.com
NIKKI L. BAKER, ESQ., Bar No. 6562
nbaker@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
Telephone: 702.786.1001
Facsimile: 702.786.1002

JEFFREY VOCKRODT, ESQ. *(Admitted Pro Hac Vice)*
jvockrodt@cm.law
CM LAW PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240

*Attorneys for Plaintiffs Wealthy Inc. and Dale Buczkowski*

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WEALTHY INC. and DALE BUCZKOWSKI,

Plaintiffs,

v.

SPENCER CORNELIA, CORNELIA MEDIA LLC, and CORNELIA EDUCATION LLC,

Defendants.

Case No.: 2:21-cv-01173-JCM-EJY

**PLAINTIFFS WEALTHY INC. AND DALE BUCZKOWSKI'S RESPONSE TO SPENCER CORNELIA, CORNELIA MEDIA LLC, AND CORNELIA EDUCATION LLC'S MOTION FOR COSTS AND ATTORNEYS' FEES (ECF NO. 293)**

WEALTHY INC. and DALE BUCZKOWSKI,

Plaintiffs,

v.

JOHN MULVEHILL, JOHN ANTHONY LIFESTYLE, LLC, and OPTIMIZED LIFESTYLE LLC

Defendants.

Consolidated With:
Case No.: 2:22-cv-00740-JCM-EJY

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

Plaintiffs Wealthy Inc. and Dale Buczkowski (collectively, "**Plaintiffs**" or "**Wealthy**"), by and through their counsel of record, the law firms of Peterson Baker, PLLC and CM LAW, PLLC, hereby submit their Response to Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC's Renewed Motion for Costs and Attorneys' fees, filed on April 28, 2026 [ECF No. 293] (the "**Renewed Motion**"). This Response is supported by the Memorandum of Points and Authorities below, the paper and pleadings on file in this case, and any oral argument the Court may wish to hear.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. Introduction

By their Renewed Motion, the Cornelia Defendants seek $645,912.50 in costs and attorneys' fees under 15 U.S.C. § 1117(a), NRS 41.670(1)(a), and NRS 41.670(1)(b), comprising $15,995.00 attributable to Lanham Act work, $71,147.50 attributable to Anti-SLAPP work, $502,762.50 in "inextricably intertwined" time, $26,007.50 in expert-witness fees, and a discretionary $30,000 sanction. *See Renewed Motion* [ECF No. 293]. The Renewed Motion should be denied or substantially reduced on three independent grounds.

First, the fees requested are not reasonable. The Cornelia Defendants themselves magnified the proceedings by withholding responsive WhatsApp communications with co-defendant Mulvehill – information requested in this action but uncovered only recently through an order compelling production in *Wealthy Inc. v. Optimized Lifestyle LLC*, 23-cv-00141-ABJ (D. Wyo.) (the "Wyoming Action"). The withheld record also shows that Cornelia used discovery for purposes wholly unrelated to defending against Plaintiffs' claims — generating YouTube content, obtaining ammunition for collateral proceedings, and aiding a co-defendant. The Cornelia Defendants further inflate the lodestar, improperly bundle fees, and seek substantial non-recoverable categories.

Second, this case is not "exceptional" under the Lanham Act. Merely prevailing at summary judgment does not transform a case into a "rare[]", "exceptional case", *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC,* 2010 WL 8500520, at *3 (N.D. Cal. Sept. 20, 2010), and a claim "is not objectively unreasonable . . . where it could be considered an attempt to extend existing law." *Perfect 10 v. Giganews*, 2015 WL 1746484 at *3 (C.D. Ca. 2015).

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

Finally, the discretionary $30,000 sanction under NRS § 41.670(1)(b) is unwarranted. Defendants' reliance on extraneous "Buczkowski's More Recent Scams" material is improper character evidence unrelated to the claims against the Cornelia Defendants.

The Court should deny the Renewed Motion in full.

## II. Factual and Procedural Background

As detailed in the Complaint, between December 2020 and February 2021, the Cornelia Defendants produced and published multiple video interviews with co-defendant John Mulvehill on their YouTube channel. Plaintiffs alleged that the videos promoted the Cornelia Defendants' competing products and services, and that the videos contained five materially false assertions about Buczkowski: that he (1) lied about his educational achievement, (2) laundered money, (3) manufactured and/or sold illegal drugs, (4) framed a co-defendant for a 2013 arrest leading to felony and misdemeanor charges, and (5) was involved in the death of a 28-year-old woman. Cornelia himself reviewed and edited the videos prior to publication. [ECF No. 1]

Plaintiffs filed their Complaint [ECF No. 1] against Spencer Cornelia, Cornelia Media, LLC, and Cornelia Education, LLC (the "Cornelia Defendants"), stating claims for Unfair Competition and False Advertising under the Lanham Act; Defamation; and others. The Cornelia Defendants did not challenge the sufficiency of the Complaint, filing an Answer on August 13, 2021. [ECF No. 17]. The parties proceeded to discovery and entered their stipulated discovery plan and scheduling order. [ECF No. 20]. On September 30, 2022, the Cornelia Defendants moved for summary judgment on all claims and separately filed a Special Motion to Dismiss under NRS 41.660. [ECF No. 61, 62] This Court granted summary judgment on all claims and separately denied the anti-SLAPP special motion, finding that the Cornelia Defendants failed to satisfy the first-prong good-faith requirement. [ECF No. 247]

Plaintiffs appealed. The Ninth Circuit initially affirmed the summary-judgment rulings and dismissed the anti-SLAPP denial as moot. Case No. 23-16132, 23-3227, 23-3390, 24-159 (9th Cir. Dec. 30, 2025) After the Cornelia Defendants sought panel and en banc rehearing, the Court withdrew its original disposition and, on February 25, 2026, issued a superseding decision that maintained the summary-judgment rulings but reversed the District Court's denial of the anti-

SLAPP motion and granted the motion the District Court had denied — triggering NRS 41.670(1)(a)'s mandatory fee award. Case No. 23-16132, 23-3227, 23-3390, 24-159 (9th Cir. Feb. 25, 2026). On March 16, 2026, the Ninth Circuit denied Plaintiffs' motion for leave to file a petition for rehearing en banc and motion to stay the mandate pending petition for certiorari.

## III. Argument

### A. Cornelia's December 2021 Non-Disclosure of WhatsApp Communications Caused Much of the Burden for Which He Now Seeks to Recover in Fees

Early on in discovery in this case, Plaintiffs sought from the Cornelia Defendants any communications with Mulvehill. By withholding plainly responsive WhatsApp communications with co-defendant Mulvehill, Cornelia himself multiplied the consolidated proceedings.

#### 1. Plaintiffs Squarely Demanded the WhatsApp Thread

In their First Set of Requests for Production of Documents, Plaintiffs sought "any correspondence or communication between or among any of the defendants, on one hand, and John Mulvehill, on the other, concerning the Defamatory Statements." However, Cornelia's December 15, 2021 response asserted only relevance and proportionality objections and produced 37 pages of a WhatsApp Chat with Mr. Mulvehill and 7 pages of email correspondence — without identifying the ongoing WhatsApp thread and without any contemporaneous privilege log. *See Cornelia's Responses to Plaintiffs' First Request to Defendants for Production of Documents Pursuant to FRCP 34,* served December 15, 2021 (the "**December 2021 Responses**"), **Exh. 6** at 422[1]; *see also* COR000007-43, 78-84, **Exh. 1**.

#### 2. The Only Plausible Privilege — Joint Defense / Common Interest — Was Never Asserted, Never Logged, and Ultimately Rejected in Another Matter

The Stipulated Discovery Plan and Scheduling Order [ECF Nos. 19, 20] itself contains no ESI protocol and no provision modifying Rule 26(b)(5), so there is no structural basis in the case-management orders for omitting a log of co-defendant communications. The Cornelia–

[1] The Appendix to the Response is being filed concurrently herewith.



PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

Mulvehill WhatsApp thread was a co-defendant communication, not an attorney–client communication, so the only plausible basis for withholding would have been a joint-defense or common-interest privilege. The December 2021 Responses did not assert such a privilege, and only invoked a general objection textually limited to post-filing attorney–client communications and did not address co-defendant communications. *See Exh. 6* at 419.

The first time Cornelia's counsel asserted joint-defense privilege over the Cornelia–Mulvehill communications on the record was at Mulvehill's February 1, 2023 deposition ("We're going to object on the joint defense privilege"). *Transcript of Deposition of John Mulvehill* ("**Mulvehill Dep**."), **Exh. 5** at 415. That objection independently triggered Rule 26(b)(5)(A) as to Cornelia, who nevertheless failed to serve a privilege log of his own at any point. By contrast, Mulvehill's counsel served a Supplemental Privilege Log on February 7, 2023 identifying 47-plus entries of withheld Cornelia–Mulvehill communications by date, Bates range, description, and basis — a log the Wyoming Court ultimately found inadequate, but whose mere existence highlights Cornelia's complete failure to log. *See Supplemental Privilege Log,* **Exh. 9**. The Wyoming Court ultimately rejected the joint-defense/common-interest theory on its merits, finding that Cornelia "has not been jointly represented by counsel"; that Cornelia and Mulvehill "were at all times represented by separate counsel"; that they pursued separate strategies and were dismissed on different grounds (Cornelia on summary judgment, Mulvehill on personal jurisdiction); and that Cornelia's August 13, 2021 affirmative defense disclaimed any agency relationship with Mulvehill. Order. **Exh. 11,** at 497 n.2.[2] The Wyoming Court found that any claimed protection was therefore both waived and substantively meritless. *Id.* at 504.

**3. The Withholding Was Coordinated, Strategic, and Quantitatively Massive**

Cornelia's response to the third set of requests for production of documents again refused to produce communications with Mulvehill, objecting that Plaintiffs should pursue Mulvehill in the

[2] *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (Federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")



PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

parallel case. *See Responses to Plaintiffs' Third Set of Requests for Production of Documents,* served August 26, 2022 (the "August 2022 Responses") (**Exh. 7**) at 430. Mulvehill did produce WhatsApp communications with Cornelia up until May 2021 – just prior to the very inception of the lawsuit – and identified no further information on a privilege log. *See John Mulvehill's Responses to Plaintiffs' First Set of Requests for Production of Documents,* served December 15, 2022 (**Exh. 8**) and documents produced as JAL000798–912 (**Exh. 2**). The artificial cutoff and lack of any log gave the appearance of a complete production, when in fact hundreds of pages of subsequent responsive Cornelia–Mulvehill communications were being withheld.[3]

The magnitude of the withholding is striking: Cornelia's December 2021 production, *see Exh. 1*, covered only the first 37 pages of the WhatsApp thread, while the full thread — comprising *Exh. 2* (which includes the same first 37 pages of substantive content re-produced by Mulvehill) and *Exh. 3* — spans 353 Bates pages, meaning 316 pages of the thread were never produced by Cornelia at all. By the time of Cornelia's May 11, 2022 deposition, *see Cornelia Dep.* (**Exh. 4**), approximately 201 pages of responsive Cornelia–Mulvehill content had never been produced, and by August 26, 2022 that figure had grown to roughly 262 pages — meaning Cornelia's August 2022 "already produced" representation omitted approximately seven times more responsive WhatsApp content than it had disclosed. On March 21, 2022, Cornelia verified under penalty of perjury, in response to Interrogatory No. 12, *see Cornelia's Responses to Plaintiffs' First Set of Interrogatories* (**Exh. 10**), that he had "no further information regarding [Mulvehill's] whereabouts" beyond knowing Mulvehill lived in Brazil; the withheld WhatsApp record, *see Exh. 3*, which Plaintiffs could not access until December 2025, proves that statement was materially false because Cornelia was in continuous WhatsApp and email contact with Mulvehill, knew his number and email, and tracked his movements in real time. At his May 11, 2022 deposition, Cornelia minimized his Mulvehill communications channels, *see Exh. 4* at 404-405, repeatedly invoked lack of recall on

[3] Plaintiffs first became aware of post-May 2021 withholding at Mulvehill's February 1, 2023 deposition (**Exh. 5**), which prompted the February 7, 2023 Supplemental Privilege Log (**Exh. 9**). The log's service at the close of fact discovery left no practical opportunity to test the privilege within the existing schedule, and after the Court denied leave to amend [ECF No. 144] and dismissed all claims, **Wyoming became the only available forum.**



PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

substantive Mulvehill topics, see *Exh. 4* at 407-411, and initially denied any WhatsApp communication with witness Rohit Dan before correcting himself, *see Exh. 4* at 406 — all while contemporaneously WhatsApp-messaging Mulvehill the day before and during deposition prep.

The contemporaneous record also includes consciousness-of-concealment evidence. On March 31, 2022, Mulvehill messaged: "shocked to see our email/whatsapp convos. that's nice," and Cornelia replied: "Yea I was like how the f**k did he get access that easily to our entire convo. … I don't remember sending those over". *See Exh. 3*, at 291. Cornelia's contemporaneous statement that "I'm going to delete these messages just in case we have to share in lawsuit", *see Exh. 3*, at 271 — confirms deliberate concealment.

**4. The Withholding Caused the Following Avoidable Burdens**

**a. Unnecessary litigation over Mulvehill's personal jurisdiction.**

The WhatsApp thread (**Exh. 3**) contains direct evidence of coordinated activity between Cornelia (a Nevada-based YouTuber) and Mulvehill bearing on Mulvehill's purposeful availment of Nevada. On August 14, 2022, Mulvehill asked: "how do we prove he is not a resident of NV," and Cornelia responded with a four-step deposition script, *see Exh. 3*, at 332, then directed the next day, "We just need to verify his Chicago address". *See Exh. 3*, at 337. Cornelia had already identified the residency angle as a deposition target ("[The residency angle] may be a good thing to go after in your deposition of Derek", *see Exh. 3*, at 330, and the thread reflects his direct contact with Mulvehill's counsel and post-hearing report-backs ("Marc and Alex said it went as well as we needed." *See Exh. 3*, at 316. The Ninth Circuit ultimately reversed in part, dismissed in part, affirmed in part, and remanded; the appellate burden is traceable to the WhatsApp non-disclosure.

**b. The Google/YouTube subpoena and motion to quash.**

Plaintiffs were forced to subpoena Google to establish the channel of communication between Cornelia and Mulvehill, and to litigate Defendants' motion to quash — work that would have been unnecessary had the WhatsApp thread been disclosed. The Cornelia Billing Records include entries stating "subpoena to Google", "analysis of subpoena", "motion to quash" and "hearing on Mulvehill motion to quash." *See Exhibit 6 to Renewed Motion*, ECF No. 293-6 at 10-11 and 25.

**c. The Sixth Motion to Extend Discovery [ECF No. 44].**

Because Plaintiffs lacked the WhatsApp record, Cornelia framed the residency/Huerta investigation as an "extraordinary and unforeseen circumstance" that "has only recently become contested" warranting an extension of all case deadlines. [ECF 44 at 5, 11]. The chats reveal, however, that the residency theory was pre-planned for collateral tax-fraud purposes: as early as March 16, 2022, months before residency was raised in any court filing, Cornelia and Mulvehill were openly discussing it as a tax-evasion vehicle (Cornelia: "Really curious to see if we can get him to prove his residence." / "Illinois has state income tax and high property taxes so not sure why he'd claim ownership there."; Mulvehill: "oh dude yea this would be for tax evasion right." / "I'd love to see his tax returns." *See Exh. 3*, at 283-284. The same theme recurs throughout August 2022. *See*, *e.g*., "If he lists 275 Glen Way, we have him 100% on tax fraud", *see Exh. 3*, at 345; "Would be huge to gain access to his tax returns", *see Exh. 3*, at 346. The Cornelia Defendants never articulated how disproving Plaintiff Buczkowski's Nevada residency could help them in this litigation; although they suggested it could bear on diversity jurisdiction if the federal claim were dismissed, proving non-residency would have provided only an additional basis for jurisdiction of this Court — laying bare Cornelia's ulterior motive to use this litigation to gin up tax-fraud charges against Buczkowski.

**d. The Hague Convention misrepresentation to the Court.**

In ECF No. 44, filed August 29, 2022, and ECF No. 90, filed November 3, 2022, Cornelia's counsel represented to the Court that Mulvehill was effectively unreachable — that "any subpoena directed to Mulvehill would take months to process through the Hague Service Convention process" — and obtained discovery extensions and a summary-judgment briefing stay on the strength of those representations. Contemporaneously, on August 24, 2022, Cornelia messaged Mulvehill directly: "Marc is wanting you to accept deposition. For you to be deposed by Marc Randazza." See Exh. 3, at 369, and the next day Mulvehill relayed his counsel's admonishment that "Marc needs to go through me for any of this. Marc knows you're represented by counsel." See Exh. 3, at 370. Randazza nevertheless personally billed 0.80 of an hour on August 25, 2022 for "Conference call re deposition". *See Exhibit 6 to Renewed Motion*, ECF No. 293-6 at 32. The contemporaneous



PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

WhatsApp record demonstrates that the Hague Convention representation was contradicted by counsel's own conduct, and fees obtained on the strength of that representation — including extensions of discovery, the summary-judgment briefing stay, and all related motion practice — cannot be shifted to Plaintiffs.

**e. The fraudulent-transfer and creation of OL as determined by the Wyoming summary judgment proceeding.**

The withheld thread contains Cornelia's contemporaneous coaching of Mulvehill on LLC bankruptcy and digital-asset transfer to defeat any judgment, including his "purposefully lose and force him to spend years and money chasing you" framing. *See Exh. 3,* at 311-313; *see also* Section III.B.5 *infra*. Had Cornelia produced or properly logged the thread in his December 2021 Responses, Plaintiffs could have moved to amend the Mulvehill/John Anthony Lifestyle ("JAL") complaint to add a fraudulent-transfer claim against Optimized Lifestyle ("OL")/JAL years earlier — at a stage when it could have been litigated efficiently in Nevada — instead of being forced to file the Wyoming action and obtain summary judgment in February 2026. *See Exh. 12*. On May 15, 2022 — the same day Cornelia counseled Mulvehill on LLC bankruptcy and digital-asset transfer — Cornelia's lead counsel billed a one-hour "Call with JM", *see Exhibit 6 to Renewed Motion*, ECF No. 293-6 at 24. The billing record's consistent use of "client"/"Cornelia" for Cornelia communications and "mulvehill counsel" for communications with Mulvehill's lawyer suggests that "Call with JM" is a direct attorney-to-co-defendant call, and the next day's separate one-hour "Confer with mulvehill counsel" entry, *see id*., suggests the substance of the JM call was carried into Mulvehill's lawyer's office the following day. This sequence supports an inference that Cornelia's counsel had contemporaneous knowledge of, and may have participated in, the judgment-frustration discussion memorialized in WhatsApp earlier that same day. At minimum, the contemporaneous billing entry confirms the WhatsApp content was the subject of attorney time on the very day the messages were sent — time that is non-recoverable because it was not "reasonably incurred" defending against Plaintiffs' claims.

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

#### 5. The Fees are not Reasonable

Fees attributable to (i) the Mulvehill personal-jurisdiction litigation and appeal, (ii) the Google subpoena fight, (iii) the Sixth Motion to Extend Discovery, (iv) all extensions and motion practice obtained on the Hague Convention representation, (v) the Wyoming fraudulent-transfer summary judgment proceeding were burdens Cornelia created — and they cannot be shifted to Plaintiffs under 15 U.S.C. § 1117(a) or NRS 41.670.

### B. Cornelia Used Discovery for Purposes Unrelated to the Defense of Plaintiffs' Claims

Under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), the Court may consider a party's litigation conduct and motivation as part of the totality of the circumstances. The WhatsApp record, *see* Exh. 3, establishes that Cornelia treated the litigation itself as a retaliatory and monetized enterprise — conduct that defeats the equitable showing Defendants must make to obtain an exceptional-case fee award. Indeed, none of the categories below represent fees that were "reasonably incurred".

#### 1. Cornelia Used the Litigation to Obtain Content for His YouTube Channel

Cornelia treated the litigation itself as a content engine. The withheld WhatsApp thread reflects that he openly stated he wanted the case to drag out for view counts, *see* Exh. 3 at 238 ("What's funny is the longer this drags out, the more views the inevitable video will get lmao"); pre-planned a "clown video" upon dismissal, *see* **Exh. 3** at 238 ("Once my case gets dismissed, I'm making a clown video on him … It'll get 5x more views than our video"); and framed the entire enterprise as content-warfare, *see* **Exh. 3** at 390 ("We can use media to punish — in the form of views and attention"). He recorded depositions for direct video use, *see* **Exh. 3** at 386 ("Yes I plan on screen recording. … Carlos' deposition tomorrow is going to be very telling"); timed video releases around discovery events, *see id.*, ("Just need to wait until Carlos' deposition. I won't release until I know what he said"); and produced a multi-video series sourced from discovery, *see* **Exh. 3** at 395 ("Because he sued, I found all this s**t about him and the series will eclipse 2mm views by the time it's done"). He drafted titles tied directly to material his counsel placed on the docket,

*compare* **Exh. 3** at 391 ("Next video will be 'This Influencer Sued Me Because I Made Him Fat") with ECF No. 44 at 6, where counsel put Buczkowski's "fat" deposition testimony—and a post-deposition YouTube screengrab of him—on the public record just six weeks earlier, handing Cornelia the very framing and visuals he then repackaged into video content.

### 2. Cornelia Used the Litigation to Obtain Ammunition for Use in Other Proceedings

Cornelia filed an Illinois tax-fraud report against Plaintiffs, *see* Exh. 3 at 332 ("I filled out the tax fraud form on Illinois website.") and Exh. 3 at 342 ("Submitted documents to Illinois department of revenue today. Will arrive Thursday"); framed the residency investigation as a tax-evasion theory months before any litigation event made residency relevant, and hoped for personal "whistleblower" rewards, *see* Exh. 3 at 347 ("What would be amazing is if there's some whistle blower type rewards if he's caught committing tax fraud"). He also stated he would "contact the Nevada real estate division" to "[n]otify them of him being complicit in tax fraud". *See* Exh. 3 at 385. The "list of criminal stuff" included FBI referrals for "death threats" and a "drug-network" investigation, *see* Exh. 3 at 353; and Mulvehill told Cornelia that the defense team was "putting [a] discovery request for irs tax records. they will deny and we will compel." *See* Exh. 3, at 352.

### 3. Cornelia Sought to Aid a Co-Defendant's Defense Rather Than Cornelia's Own

Cornelia coached Mulvehill on residency questions and addresses to obtain in deposition, *see* Exh. 3 at 332 ("Hopefully you ask these first and if he supplies 275 Glen Way Incline Village NV as his address, then we're golden"), scripted deposition tactics for content value, and pushed for Buczkowski residency exhibits to be filed in support of Mulvehill's jurisdictional motion. *See* **Exh. 3** at 304 (Cornelia to Mulvehill re upcoming deposition: "Hopefully it'll be a rug pull and you'll have content for days haha"; asking whether he could "add some" questions to counsel's deposition outline); *id.* at 384 and 386 ("I won't release until I know what he said" and I'll include his video deposition in mine"); *id.* at 386 ("Yes I plan on screen recording"); *id.* at 390 ("We can use media to punish — in the form of views and attention"); *id.* at 398 (timing video releases around the litigation because opposing counsel "can't really do anything about it"). The Ninth Circuit



PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

ultimately reversed the dismissal of the complaint against Mulvehill on the grounds of the lack of personal jurisdiction, confirming that the residency theory was legally untenable as deployed. As a result, time billed on the residence of the Plaintiffs was not "reasonably incurred" defending the Cornelia Defendants and should be excluded.

**4. Cornelia Sought to Coordinate Cross-Case Defense Material With Mulvehill Outside Permitted Channels**

Cornelia treated the litigation as a vehicle for cross-defendant coordination on substantive defense material, including (i) keeping Mulvehill apprised in real time of Randazza's decision to retain a damages-rebuttal expert, *see* Exh. 3 at 254; (ii) sharing a granular cost breakdown of his own defense, *see* Exh. 3 at 258; (iii) offering his Hoffman expert rebuttal report directly to Mulvehill as a $22,000 cost-sharing substitute, *see* **Exh. 3** at 310 (addressed further in Section III.H); and (iv) framing case consolidation itself as a cost-and-discovery-sharing arrangement, *see* Exh. 3 at 310. The cross-case coordination prompted the Court's November 14, 2022 order directing pre-consolidation document exchanges only on an attorneys'-eyes-only basis — additional motion practice that would not have been required absent Cornelia's persistent efforts to use the litigation as a joint cross-defendant platform. Time devoted to facilitating these cross-case exchanges was not "reasonably incurred" defending the Cornelia Defendants and should be excluded.

**5. Cornelia Sought to Counsel a Co-Defendant on Frustrating Judgment Collection**

The same withheld thread contains Cornelia's contemporaneous coaching of Mulvehill on LLC bankruptcy and digital-asset transfer to defeat any Plaintiffs' judgment, *see* Exh. 3 at 311-313, and Cornelia's "purposefully lose and force him to spend years and money chasing you" framing is itself an admission of intent to weaponize the litigation process for collection-frustration purposes.

**C. Cornelia Used the Court Record as a Defamation Shield, and Related Fees Are Not Reasonable**

Cornelia explained his strategy about the litigation in his own words: "Throw in as much s**t on public record as possible so when we make videos about him we can discuss it with no issues of future litigation." *See* Exh. 3 at 287. Earlier iterations include "He'd be buried", *see* Exh.

3 at 181; "I want to use the video as a way to really damage him without repercussion", *see* Exh. 3 at 183; and "there's no repercussions." *See* Exh. 3 at 321. The strategy is applied to specific evidence: as to the chart of Plaintiffs' course sales, *see* Exh. 3 at 295 ("Would love for this s**t to be on public record"; and inversely to material Cornelia did not want filed, *see* Exh. 3 at 326 ("I'm going to delete these messages just in case we have to share in lawsuit").

Cornelia's counsel apparently made drafting choices based upon Cornelia's strategy:

**1. The "fat / man boobs" material in ECF No. 44.**

The Sixth Motion to Extend Discovery devoted multiple pages to Buczkowski's body-fat testimony and embedded a YouTube screenshot, framed on the rationale that "Buczkowski made statements about his weight an issue during his deposition," and tied that testimony back to the "man boobs" reference in Cornelia's video. ECF 44. The deposition excerpts pressed Buczkowski on whether he would call Randazza "obese" and whether he owns an "InBody scale," with the full transcript attached as Exhibit 1 to ECF No. 44. Within weeks, Cornelia announced that his "Next video will be 'This Influencer Sued Me Because I Made Him Fat.'" *See* Exh. 3, at 391.

**2. The Huerta material in ECF No. 44.**

The same motion extensively discussed Carlos Huerta's criminal background and arrest beyond what was needed for a discovery extension, and Cornelia later used Huerta-related material for his Nevada Real Estate Division complaint and channel content. *See* Exh. 3 at 355 (Cornelia: "I can also contact the real estate division of Nevada and verify Carlos' home address"; "He could lose his brokers license"); *id.* at 385 ("I'll contact the Nevada real estate division though.... Notify them of him being complicit in tax fraud"); *id.* at 341 ("Going to make interesting content when this is over tho hahahaha"); *id.* at 384 ("I'll include his video deposition in mine.... Carlos' deposition tomorrow is going to be very telling"); *id.* at 393-394 (touting that the resulting Moneyberg video was "closing in on 680k views").

**3. The course-sales chart and customer-information AEO dispute.**

The Renewed Motion criticizes Plaintiffs for insisting that any discussion of customers occur under the protective order's highest confidentiality tier. *See* ECF 45-1 (Randazza Decl.) ¶¶ 11–14. The withheld WhatsApp record proves Plaintiffs' confidentiality concerns were not



PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

pretextual but precisely correct. On April 27, 2022, Cornelia told Mulvehill he "wish[ed] [he] could share the chart showing his course sales"; when asked whether the chart was public, he answered "I don't believe so" but added that "[i]f this gets filed with my motion to dismiss, then yes" and "I really hope it does." *See* Exh. 3 at 299. That is a contemporaneous admission that Cornelia (i) wanted Plaintiffs' customer/sales data for his YouTube content, (ii) understood the confidentiality designation was the only barrier, and (iii) was actively hoping his counsel's filing choices would strip the designation. The August 15, 2022 thread is corroborative. *See* Exh. 3 at 340 ("He also doesn't want to unveil his $250k clients lmao"). Plaintiffs' AEO insistence was not obstructionism; the appetite for Plaintiffs' customer information was content-driven, not defense-driven.

**4. ECF No. 293 repeats the pattern.**

The Renewed Motion devotes an entire Section 2.2 to extraneous post-judgment "scam" material (the "BJJ scam," etc.) that has no bearing on the reasonableness of any fee award. It suggests that this material, too, is inserted for content.

**D. The Cornelia Defendants Fail to Carry Their Burden of Proof on the Reasonableness of the Fees Requests**

Defendants have failed to meet their burden of proving that the attorneys' fees they seek are reasonable. *See Diamond v. John Martin Co.*, 753 F.2d 1465, 1467 (9th Cir. 1985) (stating that "the burden of proof is on the party seeking the fee award").

**1. The Fee Spreadsheet is Replete with Material that is Non-Compensable**

The Fee Spreadsheet is replete with material that is non-compensable. First, the Court should not award fees representing purely clerical or secretarial tasks. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10. The Cornelia Defendants offer a litany of clerical or secretarial tasks that have nothing to do with factual investigation, discovery, or case development. This includes[4] tasks such as **saving documents to their file**, *see, e.g.*, ECF No. 293-6 at 3 ("Save the order of Pro hac vice being granted to Jeffrey Vockrodt to file; advise attorneys"; ECF No. 293-6 at 12 ("Receive . . . Documents via USB drive, and save them to the file"); ECF No. 293-6 at 13 ("retrieve files from

[4] These are only some examples of the Cornelia Defendants' attempt to recover clerical fees in their Renewal Motion and are not exhaustive.

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

the Google Link provided by Mr. Cornelia, and save them to the file" ); ECF No. 293-6 at 41 ("Receive the filed Stipulation to Extend Time as to the Opposition to Defendants' Special Motion to Dismiss, and save it to the file"); **formatting documents**, *see, e.g.*, ECF No. 293-6 at 6 ("Format Defendants' First Set of Interrogatories to Plaintiffs"); ECF No. 293-6 at 6 ("format Defendants First Set of Admissions to Plaintiffs"); ECF No. 293-6 at 16 ("Formatted for service, and submitted to attorney for approval of service"); ECF No. 293-6 at 17 ("Prepped and served"); **and placing items on a calendar**, *see*, *e.g*., ECF No. 293-6 at 6 ("attention to calendar"); ECF No. 293-6 at 9 ("calendaring of expert call"); ECF No. 293-6 at 25 ("analyze for deadlines to calendar"); The Court should deny the Renewed Motion as to any clerical or secretarial tasks.

Second, the Court should not award fees that are not related to the litigation of this case. *See Davis v. City and County of San Francisco*, 976 F.2d 1536, 1558 (9th Cir. 1992) (vacated in part on other grounds) (remanding to district court to deduct hours spent on unrelated matters). The Cornelia Defendants offer various non-legal tasks, such as addressing client payment issues, *see*, e.g., ECF No. 293-6 at 3 ("attention to client accounting, deposit of trust, trust deposit memorandum and confer with MJR"); and tasks related to people not even identified with this case. *See, e.g.*, ECF No. 293-6 at 42 ("Factual research re: Julien Blanc controversy").

Third, various entries are vague, and the Court cannot find that such tasks are reasonable. *See, e.g.*, ECF No. 293-6 at 17 ("attention to expert call"); ECF No. 293-6 at 96 ("internal organization of documents").

Fourth, courts generally do not compensate for travel time, or planning for travel. *See, e.g., Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 710 (3d Cir. 2005), as amended (Nov. 10, 2005); *Guckenberger v. Boston Univ*., 8 F. Supp.2d 91, 106 (D. Mass. 1998). The spreadsheet is replete with entries in this regard. *See, e.g*., ECF No. 293-6 at 28 ("Travel to and from Buczkowski deposition"); ECF No. 293-6 at 44 ("travel to and from hearing on MTC reasonable depo dates"); ECF No. 293-6 at 55 ("Travel to and from hearing on Mulvehill motion for protective order"); ECF No. 293-6 at 56 ("Travel to and from Wealthy Inc. 30(b)(6) deposition"); ECF No. 293-6 at 24 ("Return travel planning from deposition for MJR, confer with MJR and flight booking, calendaring of same and memos to MJR").

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

Fifth, courts generally do not compensate for redundant billing, such as when two attorneys bill for the same task. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398–99 (9th Cir. 1992) (vacating the district court's determination regarding the reasonableness of plaintiffs' proposed discounted lodestar, including its findings related to billing reductions to compensate for overbilling or duplication). The matter involved five attorneys and six paralegals on a single defamation/Lanham Act case, with pervasive intra-firm conferences and redundant review of the same drafts, and Slack-channel monitoring billed at $1,000/hour. None of these requested fees should be permitted.

Sixth, LR 54-14 requires "a reasonable itemization and description of the work performed." Multiple entries in Defendants' billing records, *see Exhibit 6 to Renewed Motion*, ECF No. 293-6, lump several discrete tasks into a single time block without allocation, defeating any meaningful reasonableness review — for example, Shepard's February 27, 2023 entry "Review of additional depo transcripts. Notation of portions to cite in opp. to partial MSJ and reply ISO Anti-SLAPP motion" billed 2.50 hours at $450 across multiple motions without allocation. [ECF No. 293-6 at 72]. Numerous entries contain only ellipses, blanks, or stub descriptions that prevent any reasonableness review (e.g., the February 11, 2023 Randazza entry (no description, 0.20 hr, $180.00) [ECF No. 293-6 at 59; and Shepard's October 04, 2023 entry "Phone call with MJR re:" (0.20 hr, $140.00)). [ECF No. 293-6 at 72]. Defendants concede the spreadsheet was marked for "privilege redactions" on April 27, 2026, see ECF No. 293-6 at 109, but the resulting entries fail LR 54-14(a) because they do not describe the work performed.

**2. The Cornelia Defendants Fail to Apportion Their Requested Fees**

"It is well-established law that a party entitled to attorney's fees as a prevailing party on a particular claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any 'related claims.'" *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997).

As to fees claimed pursuant to the Lanham Act, "[o]nly Lanham Act claims are compensable" and parties "may not recover attorneys' fees under the Lanham Act unless the non-Lanham Act claims are so intertwined it is impossible" to separate them. *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000), overruled on other grounds by *SunEarth, Inc. v. Sun Earth Solar*

*Power Co*., 839 F.3d 1179 (9th Cir. 2016). In reviewing such claims, the court must consider "whether the legal and factual basis are substantial". *Gracie v. Semaphore Ent. Grp.*, 52 F. App'x 43 (9th Cir. 2002). In this case, the Cornelia Defendants do not carry their burden in establishing that the legal and factual basis are sufficiently identical and the Court should deny them on that basis.

The Cornelia Defendants fail to distinguish in their billing spreadsheet or their Motion on Fees what work was done in connection with the Lanham Act claim. Previously, the Cornelia Defendants claimed that 629.8 of their then-total 668.1 hours expended were in connection with the Lanham Act. *See Renewed Motion,* ECF No. 251 at 16. Now, however, it appears that the Cornelia Defendants only assert that 27.5 hours are directly attributable to the Lanham Act. *See Renewed Motion*, ECF 293-5 at 3. Defendants seek $502,762.50 as "inextricably intertwined" with both Anti-SLAPP and Lanham Act work.

The Lanham Act and Nevada's anti-SLAPP fee-shifting statute cannot both be invoked to recover the same intertwined hours absent a showing the "exceptional case" standard has been met. Congress calibrated Lanham Act fee-shifting to authorize recovery only in "exceptional cases," 15 U.S.C. § 1117(a), and the Supreme Court has confirmed that this standard is a deliberate, demanding limit on fee-shifting in trademark and false-advertising cases. *See Octane Fitness,* 572 U.S. at 553-54. Allowing a prevailing defendant to recover those same hours under NRS 41.670(1)(a)—which contains no exceptional-case limitation—on an "intertwined" theory would let state law supply a fee award Congress declined to authorize, eroding the federal balance *Octane Fitness* preserves. NRS 41.670(1)(a) only authorizes fees for the state-law claims subject to the special motion, and Lanham Act work and Lanham Act appellate work must be excluded from the Anti-SLAPP recovery.

Similarly, Defendants' billing records intermix Cornelia-matter and Mulvehill-matter time entries, and entries reflecting direct attorney communications with co-defendant John Mulvehill — including the May 15, 2022 "Call with JM", *see Exhibit 6 to Renewed Motion*, ECF No. 293-6 at 24); the May 16, 2022 "Confer with mulvehill counsel", *id.*; the August 15, 2022 "Prepare for and participate in call with Mulvehill counsel", *id.* at 29; the August 31, 2022 "Confer with John



PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

Mulvehill counsel, review file after call," *id*. at 34; the September 1, 2022 "analysis of items for John Mulvehill declaration … outlining elements for declaration," *id*. at 34; and the October 13, 2022 "Post deposition call with Counsel for Mulvehill", *id.* at 41 — were not "reasonably incurred" defending against Plaintiffs' claims and should be excluded.

**3. The Lodestar is Improperly Inflated**

Rates of $1,000/hour for Mr. Randazza, $750/hour for Wolman and Green, and $700/hour for Shepard exceed the prevailing Las Vegas market, and mid-litigation rate increases (e.g., Shepard from $450 to $700) further inflate the lodestar. Indeed, Mr. Randazza's Declaration does not establish a prevailing Las Vegas market rate, and even admits that no court has adjudicated Mr. Randazza's rate as reasonable. *See Declaration of Marc Randazza*, ECF 293-5 at ¶19. Defendants admit a 25% client discount on "all fees in connection with District Court work". *See Declaration of Marc Randazza*, ECF 293-5 at ¶41. Nonetheless, the Cornelia Defendants are seeking "lodestar fees at RLG's customary rates". *Id.* Mr. Cornelia stated on April 28, 2022 that "Randazza is $625/hr after my 25% discount." *See* Exh. 3, at 300. To the extent that the Cornelia Defendants are seeking attorneys' fees for a greater amount than the discounted rate they were actually charged, they provide no authority to allow this, and the Court should deny the request.

**E. The Lanham Act Claim Was Not "Exceptional" Under 15 U.S.C. § 1117(a)**

The Lanham Act fee statute is not merely a prevailing-party statute, and a federal court is not obligated to award fees simply because one party prevailed. 15 U.S.C. *§ 1117(a); see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health* & Hum. Res., 532 U.S. 598 (2001). The statute is not designed to award fees as a penalty or to "punish a party for losing." *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020); *see Octane Fitness,* 572 U.S. at 548.

Rather, §1117(a) reflects Congress's intent "to abrogate the American Rule in a narrow range of cases and grant district courts the **discretion** in **rare, extraordinary** cases." *Express Homebuyers USA v. WBH Mktg*, 343 F. Supp. 3d 562, 565 (E.D. Va. 2018). An "exceptional" case is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated," *Octane Fitness*, 572 U.S.

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

at 554, and even an exceptional case may not warrant fees in the court's discretion under the totality of the circumstances. *Id.*

Fee awards under the Lanham Act remain the exception rather than the rule, and Defendants' theory is largely a policy argument.[5] The *Octane Fitness* inquiry asks whether the case stands out from others either with respect to (1) the substantive strength of the losing party's litigating position or (2) the unreasonable manner in which the case was litigated. 572 U.S. at 554. Neither prong is satisfied here.

**1. Plaintiffs' Litigating Position Was Not Substantively Weak**

A claim is objectively unreasonable only where the proponent "should have known from the outset that its chances of success in th[e] case were slim to none." *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). Plaintiffs' position cleared that low bar, particularly on the contested commercial-speech question. Plaintiffs advanced a colorable theory that the challenged videos crossed into commercial speech because they were hosted on the same Cornelia YouTube channel that promoted Cornelia's competing House Hack Expert e-book and YouTube-growth materials sold through Patreon — making the channel itself the promotional vehicle for a competing product — and Cornelia confirmed under oath that he published House Hacking content on the same channel and offered the House Hack Expert e-book for sale. The Court rejected that theory on the merits, but rejection on summary judgment is not the same as objective unreasonableness; the Court's "fatal flaw" finding went to the absence of in-video promotion, not to the broader question whether platform-level commercial activity could supply the missing commercial-speech element — a question on which Defendants themselves acknowledged unsettled Ninth Circuit law on the commercial-competition prong. *See, e.g.*, *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1120 (9th Cir. 2021); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

Defendants' own briefing below underscores the point: ECF No. 62 devoted only a single short paragraph to the "particular product" prong (§ 4.1.1.2) and expressly declined to brief the

---

[5] Defendants' own numbers concede that only $15,995 is "specifically attributable" to Lanham Act work, with $502,762.50 claimed as "intertwined".

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

commercial-competition element at all, citing *Lexmark* and *Ariix*, and never squarely engaging Plaintiffs' channel-as-promotional-vehicle theory, leaving Plaintiffs without a fully developed adversarial record to respond to on summary judgment. The commercial context at issue — promotion and monetization through a YouTube creator's channel that simultaneously hosts critical commentary and sells the creator's own competing products — is a relatively novel one with no Ninth Circuit or Supreme Court authority directly on point at the time. That asymmetry cannot now be repackaged as Plaintiffs' unreasonableness; the *Octane Fitness* inquiry asks whether the losing party's position was so weak that no reasonable litigant would have pressed it, and it does not reward a prevailing party that left a contested element unbriefed and then relied on appellate elaboration to manufacture exceptionality after the fact. Defendants' Renewed Motion criticizes Plaintiffs for raising arguments "waived by not raising them below" [ECF No. 293 at § 4.1.1] — but that critique cuts both ways, and Defendants' own appellate development of the commercial-speech analysis cannot retroactively render Plaintiffs' district-court position objectively unreasonable. At minimum, even if any Lanham Act fees were awarded, the Court should exclude time spent on commercial-speech analysis and appellate work that was not fairly presented in Defendants' summary judgment briefing.

Defendants' contention that Plaintiffs should have abandoned the Lanham Act claim by Cornelia's May 11, 2022 deposition cannot be squared with the discovery record. As detailed in Section III.A, approximately 201 pages of the Cornelia–Mulvehill thread were still being withheld without a privilege log as of that deposition, and the withheld material includes Cornelia's own contemporaneous acknowledgment that the commercial-competition theory Defendants now treat as obviously meritless was a real exposure. On June 22, 2021, immediately after recognizing that Plaintiffs' "main claim is that I brought you on to ruin Derek's reputation," Cornelia wrote: "Us both having courses to sell doesn't help." *See* Exh. 3 at 174. A prevailing party cannot manufacture objective unreasonableness by suppressing the opposing party's own admissions and then faulting Plaintiffs for not folding before those admissions surfaced.

To the extent any of Cornelia's post-takedown statements are relied upon in this Opposition, they are offered for two narrow purposes only: (i) as evidence bearing on Cornelia's

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

continued-publication state of mind during the December 2020–June 9, 2021 window the videos remained live, and (ii) as evidence of post-suit litigation conduct relevant to the *Octane Fitness* totality analysis. Plaintiffs do not rely on post-publication animus statements as direct proof of actual malice at the moment of original publication.

**2. The Manner of Litigation Was Not Unreasonable**

The second *Octane Fitness* prong likewise does not support an exceptional-case finding. To the extent Defendants point to discovery friction, that friction was mutual and was substantially driven by Cornelia's own conduct — not Plaintiffs'. A case in which both sides engaged in aggressive discovery conduct is run-of-the-mill, not an *Octane Fitness* outlier. More fundamentally, as detailed in Section III.B above, Cornelia used the discovery process for purposes wholly unrelated to defending Plaintiffs' claims — generating YouTube content, gathering ammunition for collateral tax-fraud and regulatory referrals, coaching his co-defendant on personal-jurisdiction tactics and judgment-frustration mechanics, and coordinating cross-case defense material outside permitted channels. And as detailed in Section III.C, Cornelia and his counsel used the court record itself as a defamation shield, weaponizing public filings for use in his YouTube content. Under *SunEarth*'s totality-of-the-circumstances framework, these equitable considerations weigh decisively against — not in favor of — an exceptional-case finding, and no interim sanctions, Rule 11 finding, or judicial admonishments support the contrary conclusion. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (district courts apply "equitable discretion" under the totality of the circumstances").

**F. The Discretionary $30,000 NRS 41.670(1)(b) Sanction Should Be Denied**

The NRS 41.670(1)(b) award is discretionary. Cornelia's contemporaneous WhatsApp record disqualifies the equities he must show: the "litigation record as defamation shield" admissions; YouTube content-monetization admissions; tax-fraud and regulatory referral admissions; witness-coaching for a co-defendant; and judgment-evasion counseling. The motion's reliance on extraneous "Buczkowski's More Recent Scams" material is improper character evidence, and joint representation undermines a per-defendant award because the three Cornelia entities filed a single motion through a single firm without distinct showings of harm per entity.

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

The spreadsheet [ECF No. 293-6] also seeks fees-on-fees for time spent preparing the very fee motion now under review (e.g., 04/02–04/27/2026 entries) presented in bulk without allocation between Lanham Act, Anti-SLAPP, and "INTW" categories Defendants concede were only retroactively assigned on 04/26/2026, and reflects unjustified mid-litigation rate increases (Shepard from $450 to $700 to $750; Randazza from $800 to $900 to $1,000) inconsistent with LR 54-14(b)'s "customary fee" requirement. The clerical-work and lump-billing deficiencies addressed in Section III.D.1 apply equally here.

**G. The Court Should Not Consider the Extraneous Section 2.2**

Section 2.2 (pp. 4–6) is untethered to any fee inquiry pursuant to LR 54-14, as it addresses (i) Buczkowski's claimed BJJ black belt, (ii) MMA-community criticism of Buczkowski (citing nine YouTube/Instagram/blog sources), and (iii) Buczkowski's alleged threat of a defamation suit against Sean Strickland — none of which occurred in this case or involves Plaintiffs' litigation conduct before this Court. Defendants' supporting "exhibits" are largely YouTube and Instagram hyperlinks, not authenticated record evidence; the Shepard authenticating declaration [ECF No. 293-11] confirms that counsel merely visited the public URLs and printed screenshots on April 27, 2026 — the day before the Renewed Motion was filed. Section 2.2 is the sole predicate for Defendants' Section 4.3 request for an additional $30,000 sanction under NRS 41.670(1)(b) — a statute that authorizes an award "of up to $10,000" per defendant in a successful Anti-SLAPP case but does not transform a fee motion into a vehicle for litigating collateral controversies. The Court should decline to consider the entire Section 2.2 as immaterial, impertinent, and scandalous matter inserted to inflame the Court's discretion.

**H. Expert Witness Fees ($26,007.50) Are Not Recoverable**

Expert fees are not recoverable as "costs" under 15 U.S.C. § 1117(a). Further, NRS 41.670 does not clearly authorize expert fees beyond taxable costs. For those reasons, the Court should decline to award the expert witness fees.

Independently, the WhatsApp record, *see* Exh. 3, shows Cornelia treated his Hoffman rebuttal expert as a shared cross-defendant resource, disclosing the engagement and its budget to Mulvehill in real time and offering Mulvehill direct use of the report on the express rationale that

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001

it would "save you $22k". *See* Exh. 3 at 311. Expert work pitched to a co-defendant as a $22,000 cost-avoidance benefit was not "reasonably incurred" solely to defend the Cornelia Defendants and cannot be shifted in full to Plaintiffs.

**IV. Conclusion**

For the foregoing reasons, the Court should deny the Renewed Motion in its entirety. Alternatively, any award should be limited to Anti-SLAPP-attributable, properly documented, market-rate work, with the exclusion of all of the items highlighted in this Response.

DATED: May 12, 2026.

PETERSON BAKER, PLLC

*/s/ Tamara Beatty Peterson*

TAMARA BEATTY PETERSON, ESQ., Bar No. 5218
tpeterson@petersonbaker.com
PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101

JEFFREY VOCKRODT, ESQ. *(Admitted Pro Hac Vice)*
jvockrodt@cm.law
CM LAW, PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, TX 75240

*Attorneys for Plaintiffs Wealthy Inc. and Dale Buczkowski*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2026, I electronically filed the foregoing **PLAINTIFFS WEALTHY INC. AND DALE BUCZKOWSKI'S RESPONSE TO SPENCER CORNELIA, CORNELIA MEDIA LLC, AND CORNELIA EDUCATION LLC'S MOTION FOR COSTS AND ATTORNEYS' FEES (ECF NO. 293)** with the Clerk of the United States District of Nevada using the CM/ECF system, which sends notice to all counsel of record in the above-entitled action, as listed below:

MARC J. RANDAZZA, ESQ.
mjr@randazza.com
RONALD D. GREEN, JR., ESQ.
rdg@randazza.com
ALEX J. SHEPARD, ESQ.
ajs@randazza.com
RANDAZZA LEGAL GROUP, PLLC
8991 West Flamingo Rd. Suite B
Las Vegas, NV 89147
*Attorneys for Defendants Spencer Cornelia, Cornelia Media LLC, and Cornelia Education LLC*

TYLER WATSON, ESQ.
tjwatson@sjwlawfirm.com
L. RENEE GREEN, ESQ.
rgreen@sjwlawfirm.com
MARTA DUNNING, ESQ.
mdunning@sjwlawfirm.com
SCHNITZER JOHNSON & WATSON, CHTD.
8985 So. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
*Attorneys for Defendants John Anthony Lifestyle, LLC and John Mulvehill*

JAMES A. KOHL, ESQ.
jak@h2law.com
JOANNA M. MYERS, ESQ
jmm@h2law.com
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
*Attorneys for Defendant Optimized Lifestyle LLC*

*/s/ Julia L. Melnar*
On behalf of Peterson Baker, PLLC

PETERSON BAKER, PLLC
701 S. 7th Street
Las Vegas, NV 89101
702.786.1001